Reed N. Smith (VA BN 77334)
Kimberlee Wood Colby (DC BN 358024)
(seeking admission *pro hac vice*)
CENTER FOR LAW & RELIGIOUS FREEDOM
8001 Braddock Road, Suite 302
Springfield, VA 22151
703-894-1011 tel / 703-642-1075 fax
rsmith@clsnet.org / kcolby@clsnet.org

Stephen C. Seto (CA SBN 175458)
Steven N.H. Wood (CA SBN 161291)
Christopher J. Schweickert (CA SBN 225942)
SETO WOOD & SCHWEICKERT LLP
1470 Maria Lane, Suite 300
Walnut Creek, CA 94596
925-938-6100 tel / 925-262-2318 fax
sseto@wcjuris.com / cjs@wcjuris.com

*Attorneys for Plaintiffs*

# UNITED STATATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DOE on behalf of his minor daughter JANE DOE, JESSICA ROE, and FELLOWSHIP OF CHRISTIAN ATHLETES, an Oklahoma corporation, | CASE NO. 5:20-cv-2798 |
| | JUDGE: |
| Plaintiffs, | COMPLAINT FOR PRELIMINARY INJUNCTION, PERMANENT INJUNCTION, DECLARATORY RELIEF AND DAMAGES |
| vs. | |
| SAN JOSE UNIFIED SCHOOL DISTRICT BOARD OF EDUCATION, in its official capacity, NANCY ALBARRÁN, in her official and personal capacity, HERB ESPIRITU, in his official and personal capacity, and PETER GLASSER, in his official and personal capacity. | DEMAND FOR JURY TRIAL |
| Defendants. | |

Plaintiffs, JOHN DOE, on behalf of his minor daughter, JANE DOE, JESSICA ROE, and FELLOWSHIP OF CHRISTIAN ATHLETES (collectively, "Plaintiffs") allege the following against Defendants, SAN JOSE UNIFIED SCHOOL DISTRICT BOARD OF EDUCATION, in its official capacity, NANCY ALBARRÁN, in her official and personal capacity, HERB ESPIRITU, in his official and personal capacity, and PETER GLASSER, in his official and personal capacity (collectively "Defendants"), and in support thereof, state as follows:

## PRELIMINARY STATEMENT

1.      Jane Doe, Jessica Roe, and the Fellowship of Christian Athletes ("FCA") (collectively, "Plaintiffs") bring this action due to the unlawful and unconstitutional religious discrimination by San Jose Unified School District ("the District") and its officials and employees in violation of the Equal Access Act ("EAA") and First Amendment.  The District has revoked recognition of student groups affiliated with FCA, taking away benefits previously enjoyed by the Student FCA Chapters and that continue to be enjoyed by other noncurriculum-related student groups, and has knowingly allowed and facilitated harassment of FCA students, including Roe and Doe, by District faculty and other students because of their religious beliefs and speech.

***FCA is an international religious organization that promotes integrity, serving, teamwork, and excellence.***

2.      FCA is an international religious ministry with recognized student groups on hundreds of public university and high school campuses across the country. Students have organized student FCA chapters at three high school campuses within the District for many years without incident: Pioneer High School ("Pioneer"), Willow Glen High School ("Willow Glen"), and Leland High School ("Leland") (collectively, the "Student FCA Chapters").  FCA and the Student FCA Chapters invite all students to attend and participate in its meetings.

1        3.     FCA adheres to and expresses a core set of religious beliefs.  These

2    beliefs are found primarily in the FCA Statement of Faith. Student members do not

3    need to agree with FCA's core religious beliefs, but FCA's student leaders must

4    affirm their agreement with these core religious beliefs and try to live consistent with

5    those beliefs.

6           ***The District has revoked recognition of the Student FCA Chapters***

7           ***because of their religious beliefs and speech.***

8        4.     The District has recognized numerous noncurriculum-related student

9    groups in its secondary schools, each of which triggers the District's duty to comply

10   with the EAA. For example, in the 2019-2020 academic year, over 50 noncurriculum-

11   related student groups are recognized at Pioneer High School alone including, but not

12   limited to, the following: Bachelor Nation; Black Student Union; Chess Club;

13   Communism Club; Dream Club; Dungeons and Dragons; Frisbee Club; Gender

14   Sexuality Association; Harry Potter Club; Interact Club; K-Pop Club; Key Club;

15   Latinx Club; Multicultural Club; Pacific Islander Club; Persian Club; PHS Ski and

16   Ride; Ping Pong Club; Politics Club; Shrek Club; Simply Cards; Tetris Club; and The

17   Satanic Temple Club.   (See ¶ 48 for a full list of noncurriculum-related student

18   groups at Pioneer.) The Key Club, Interact Club, and Chess Club are classic examples

19   of student groups that automatically trigger the EAA's requirement that a religious

20   student group be recognized. A true and correct copy of the list of student

21   organizations from the Pioneer website (as well as Leland and Willow Glen) is

22   attached as Exhibit A.

23       5.     On April 23, 2019, Peter Glasser, a teacher at Pioneer, posted a copy of

24   FCA's Statement of Faith and Sexual Purity Statement in his classroom with the

25   caption, "I am deeply saddened that a club on Pioneer's campus asks its members to

26   affirm these statements.  How do you feel?"  Students affiliated with the Pioneer

27   Student FCA Chapter were students in Mr. Glasser's classes at this time.

28

1
2
3
4
5
6
7
8
9
10
11
12
13



*Mr. Glasser's Whiteboard*

6.      Despite complaints by the Pioneer FCA students to Mr. Glasser and to Pioneer Principal Herb Espiritu, Mr. Glasser's display remained posted in his classroom for a week.

7.      District officials not only allowed Mr. Glasser to leave this hostile message posted, they adopted and expanded upon Mr. Glasser's statements.  Despite FCA having existed on campus for years without incident, on May 2, 2019, no more than two weeks after Mr. Glasser posted his statements, Principal Espiritu informed the student leaders of the Pioneer FCA club that the Pioneer Student FCA Chapter would no longer be recognized on campus.

8.      Soon afterward, District officials informed FCA student leaders at Leland and Willow Glen that schools in the District would no longer recognize the Student FCA Chapters. Officials at Willow Glen informed FCA student leaders that the school would recognize their religious student club on the condition they disassociated with FCA.

1    9.    The District has violated and is violating the EAA and the First

2    Amendment through its revocation and continued denial of club recognition and its

3    associated benefits to the Student FCA Chapters because the District disfavors their

4    religious beliefs and speech.

5    ***The District has allowed and facilitated harassment of FCA students***

6    ***by faculty and other students.***

7    10.    In addition, the District has targeted the FCA students for negative

8    treatment due to its disfavor of their religious beliefs and speech.  The District has

9    adopted a practice of allowing and facilitating harassment of students affiliated with

10   FCA.  Shortly after the District revoked recognition of the Student FCA Chapters,

11   Mr. Glasser and Principal Espiritu discussed strategies specifically intended to

12   prevent the Student FCA Chapters from existing in the District. District officials,

13   including Principal Espiritu, have also coordinated with students who oppose FCA's

14   religious beliefs in an effort to prevent the Student FCA Chapters from meeting at all

15   on campus.

16   11.    District officials' coordination with students includes granting

17   recognition to The Satanic Temple Club, knowing that it was founded by students

18   who are opposed to the Student FCA Chapters' continued presence on campus.  Mr.

19   Glasser also coordinated with Satanic Temple Club students about their intention to

20   harass the Student FCA Chapter.

21   12.    The Satanic Temple Club formed for the first time at Pioneer at the

22   beginning of the 2019-2020 academic year. The District granted The Satanic Temple

23   Club's application for recognition while denying the Pioneer Student FCA Chapter's

24   application for recognition.  The Satanic Temple Club's application for recognition

25   as an official student organization at Pioneer indicates that a primary purpose of the

26   club is to "protest."  The Satanic Temple Club asked for permission to gather at the

27   same time as the Pioneer Student FCA Chapter, which the District granted.

28

13.     Shortly after the first Pioneer Student FCA Chapter meeting of the academic year, students affiliated with The Satanic Temple Club publicly announced their intent to demonstrate immediately outside of the Pioneer Student FCA Chapter meetings because of their disagreement with FCA's religious beliefs.   Despite requests from the FCA students and their parents to move the demonstration to another location that would not subject FCA students to direct harassment, the District did not do so.

14.     District officials allowed these demonstrations to occur immediately outside, and at the same time as, the FCA students' meetings despite the District officials' and employees' expectation that the demonstrations would intimidate and harass the FCA students.  Mr. Glasser acknowledged that the situation violated the FCA students' "sense of humanity and safety."    Principal Espiritu acknowledged that singling out the FCA students because of their religious beliefs could subject the FCA students to undue harassment.   Nonetheless, the District made no effort to protect the FCA students from harassment, for example, by requiring the students to keep a certain distance from those walking into the Student FCA Chapters or requiring the protesting students to gather elsewhere or at a different time.

15.     The protesting students' first organized attempt to harass and intimidate FCA students occurred on October 23, when they gathered outside of the Pioneer FCA meeting with signs disparaging the FCA students' religious beliefs, including "HATRED IS NOT A RELIGIOUS BELIEF."  The protesting students yelled at the FCA students as they entered their meeting and remained directly outside their meeting space during their meeting. Despite the FCA students' reasonable requests, the District not only refused to take any action to mitigate the harassment, it threatened to penalize the FCA students if they did not acquiesce in the protesting students' harassment.

16.     On November 6, 2019, student reporters for the school newspaper entered the FCA meeting and took hundreds of pictures of the approximately 20

students attending the meeting. When the FCA students complained to Principal Espiritu, he did nothing to stop this harassing and intimidating behavior. Instead, Principal Espiritu told the FCA student leaders that if they did not allow pictures to be taken during their meetings, they would not be allowed to have their individual pictures in the school yearbook.

17.    On December 4, 2019, faculty at Pioneer encouraged the protesting students to harass the students who were attending the FCA meeting by entering the room during their meeting. School Resource Officer Rick Granado intervened to keep the protesting students from further harassing the FCA students at their meeting.  On information and belief, neither the faculty nor students involved have been disciplined for their attempts to harass the FCA students before, during, and after their meetings.  Instead, the harassment of FCA students has continued unabated regularly since this event.

18.    Discrimination against FCA and its students by the District and its officials demonstrates animus towards its religious message.  Not only have District officials and employees refused to recognize FCA, they have openly disparaged FCA's religious beliefs and have allowed and encouraged other students to harass and intimidate FCA students immediately outside of FCA meetings for the purpose of harassing FCA students, in violation of its own written policy (but in accord with accepted District practices) and California law.

19.    The District's actions evince its open hostility toward FCA and its religious values.  Superintendent Albarrán was specifically informed of the District's discriminatory acts against the Student FCA Chapters and approved the District's continued discrimination.  This hostility has led the District and Defendants to illegally and unconstitutionally target FCA students and student leaders for discrimination and harassment.  The Court should order the District to restore full recognition to the Student FCA Chapters as required by the EAA and the United

States Constitution, and to protect the FCA students from further harassment and intimidation at the hands of District officials, employees, and students.

## **PARTIES AND VENUE**

20.     John Doe is domiciled in California and is the father of Jane Doe.  John Doe brings claims solely on behalf of Jane Doe, his minor daughter. Jane Doe is a student in the District who actively participates in one of the Student FCA Chapters. John and Jane Doe are domiciled in California.

21.     Jessica Roe is a student in the District who actively participates in one of the Student FCA Chapters.  Jessica Roe is domiciled in California.

22.     John and Jane Doe and Jessica Roe bring this suit against all Defendants in their official capacities and against Superintendent Albarrán, Principal Espiritu, and Mr. Glasser in their individual capacities.

23.     Fellowship of Christian Athletes is a religious nonprofit corporation incorporated in Oklahoma and whose principal place of business is in Missouri.  FCA brings this suit on behalf of itself and its student representatives and members in the District.     FCA has been recognized by the Internal Revenue Service as an organization described in section 501(c)(3) of the Internal Revenue Code.   FCA brings this suit against all Defendants in their official capacities only.

24.     San Jose Unified School District Board of Education is the governing body of a school district within the state of California.  The District lies entirely within the jurisdiction of this court. Its executive office is at 855 Lenzen Ave., San Jose, CA 95126.

25.     Nancy Albarrán is domiciled in California and is the District's Superintendent and chief executive officer. Ms. Albarrán is sued in her official and personal capacity.

26.     Herb Espiritu is domiciled in California and the principal of Pioneer High School.  Mr. Espiritu is sued in his official and personal capacity.

27.    Peter Glasser is domiciled in California and a teacher at Pioneer High School.  He is sued in his official and personal capacity.

28.    All Defendants are persons acting under the color of state law.  42 U.S.C. § 1983.

29.    Venue is proper in this court because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred within the jurisdiction of this Court.  28 U.S.C. § 1391.  Additionally, all Defendants are domiciled or located within the Northern District of California.  *Id.*

## JURISDICTION

30.    This court has jurisdiction over this matter because Plaintiffs assert causes of action, including civil rights causes of action, arising under federal statutes and the U.S. Constitution.  28 U.S.C. §§ 1331, 1343.

31.    This court has supplemental jurisdiction over Plaintiffs' state law claims, which are related to Plaintiffs' claims arising under federal law.  28 U.S.C. § 1367.

32.    This court has authority to issue the declaratory and injunctive relief sought herein.  28 U.S.C. §§ 2201 and 2202.

## FACTUAL BACKGROUND

### *FCA is an international religious organization.*

33.    FCA was founded in 1954 as an international Christian ministry with the mission "to lead every coach and athlete into a growing relationship with Jesus Christ and His Church."  https://www.fca.org/aboutus/who-we-are/vision-mission.

34.    FCA has recognized student organizations on college, high school, and middle school campuses across the country.  Today, FCA has over 14,000 active chapters in 84 countries.  Many of these are on public university and high school campuses across the United States.

35.    FCA's organizational values include "demonstrat[ing] steadfast commitment to Jesus Christ and His Word through Integrity, Serving, Teamwork, and Excellence."  https://www.fca.org/aboutus/who-we-are/vision-mission.

36.     FCA has no membership requirements and welcomes anyone to participate.  With respect to leadership, FCA requires only that student leaders agree and live in accordance with its core religious beliefs and religious standards as expressed in the Student Leadership Application.  Any student who applies for a leadership position will be considered for leadership.

37.     As part of its ministry, FCA performs charitable works nationwide.  For example, FCA and volunteers invested $250,000 to develop a community center in inner-city Baltimore to provide disadvantaged students a safe place to gather, study, and play.        https://www.wmar2news.com/news/region/baltimore-city/new-park-heights-community-center-ties-together-work-and-worship.  FCA gatherings across the country participate in humanitarian causes, such as food banks and Operation Christmas Child, a ministry that provides Christmas gifts to children internationally.

38.     FCA also performs charitable works in the Bay Area.  The Bay Area FCA and its students have been involved in numerous charitable works, including Operation Christmas Child, providing sports camps for underprivileged children in the Bay Area, and distributing sports equipment to underprivileged children in the Dominican Republic and Haiti.

***Like many other religious organizations, FCA has a core set of beliefs that it exercises and expresses through community, including its chapter meetings.***

39.     FCA has a statement of faith ("Statement of Faith") that sets forth the core religious beliefs that FCA exercises and expresses as a faith community.  All FCA representatives, including staff, volunteers, and student leaders, are required to affirm the FCA Statement of Faith.

40.     A true and correct copy of the FCA Statement of Faith is nd on page 6 of the FCA Playbook, attached as Exhibit B.  The Statement of Faith includes core tenets of FCA's religious beliefs.  Each item in the Statement of Faith references biblical passages from which the item is drawn.

41.     For example, the first item in the Statement of Faith is "[w]e believe the Bible to be the only inspired, trustworthy and true, without error, Word of God. (2 Timothy 3:16-17)."

42.     The fifth item in the Statement of Faith is "We believe in the present ministry of the Holy Spirit, who lives within and guides Christians so they are enabled to live godly lives." (John 14:15-26; John 16:5-16; Ephesians 1:13-14)."

43.     The seventh item in the Statement of Faith is "We believe in the spiritual unity of believers in our Lord Jesus Christ, that all believers are members of His body, the Church.  (Philippians 2:1-4)."

44.     The eighth item in the FCA Statement of Faith is "We believe God's design for sexual intimacy is to be expressed only within the context of marriage. God instituted marriage between one man and one woman as the foundation of the family and the basic structure of human society.  For this reason, we believe that marriage is exclusively the union of one man and one woman. (Genesis 2:24, Matthew 19:5-6; Mark 10:6-9; Romans 1:26-27, 1 Corinthians 6:9)."

45.     FCA chapters meet regularly to advance the religious mission of FCA. One of the primary purposes of these meetings is to transmit and reinforce the religious beliefs of FCA as stated in the FCA Statement of Faith.

***The District expresses open hostility to FCA's religious beliefs.***

46.     Prior to the events described herein, the FCA Student Chapters met without incident for years at Pioneer, Willow Glen, and Leland, which are secondary schools within the District that receive federal financial assistance.  All acts by employees or officials of the District and its secondary schools as alleged herein were performed under color of law and pursuant to the policies, practice, and customs of the District and its secondary schools or were adopted by a final policymaker for the District or his or her delegate.

47.     Pioneer recognizes approximately 51 noncurriculum-related student groups, each one of which triggers the requirements of the EAA. Leland recognizes

approximately 70 noncurriculum-related student groups, and Willow Glen recognizes approximately 35 noncurriculum-related student groups,  each one of which triggers the requirements of the EAA.

48.    Examples of noncurriculum-related student groups that the District recognizes at Pioneer include: Almaden Homework Club (helping elementary students after school); Art Club (celebrating creativity and art); Bachelor Nation (discussing the "Bachelor"  television series); Baking Society (raising money for charity); BC2M ("Bring Change to Mind," raising awareness on mental health); Best Buddies (building friendships with those with disabilities); Black and Blue Crew ("amping up crowd" at sports events); Book Club (spreading the joy of reading); BSU ("Black Student Union," bringing black students together); Chess Club (teaching students chess); Communism Club (discussing ideas of Communism); Cycling Club (meeting up with other cyclists); Dream Club (discussing dreams and psychological theories); Dungeons and Dragons (playing "Dungeons and Dragons"); Ecstatic Club (learning new dance skills); Flora and Fauna (spreading awareness on environmental issues); Folklorico (sharing traditional dance with the school); Frisbee Club (playing Frisbee); Gifts for Teens (collecting items for homeless persons); Girls Learn Club (increasing awareness on gender discrimination); Girls Who Code (closing gender gap in tech); Green Team (helping clean up the environment); Gender Sexuality Association (LGBTQ+ advocacy); Harry Potter Club (discussing Harry Potter); Interact Club (international organization service club); K-Pop Club (discussing Korean culture); Key Club (giving back to community through service); Latinx Club (sharing cultural activities); Make a Difference Club (spreading awareness of world problems); Mermaids Club (dancing and exploring self-expression); Multicultural Club (learning about different cultures); Mustangs Handball (playing handball); Noteworthy Notes (expressing musical interest); Pacific Islander Club (discussing Pacific Islander culture); Persian Club (talking about Persian culture): PHS Ski and Ride (going skiing and snowboarding); Ping Pong Club (playing ping pong); Pioneers

for Christ (supporting one another learning about Christ); Politics Club (talking about politics); Positive Balance (anti-stress safe space for students); Pre-Med Society (students who are interested in the medical field); Radio Club (allowing students with own radio show); Save our Seas (fundraising for a business, "4Ocean,"which cleans up the oceans); Shrek Club (talking about Shrek and Dreamworks); Simply Cards (playing cards); Smash Club (playing Super Smash Brothers); Spikeball Club (playing spikeball); Sports Medicine club (students interested in sports medicine); Student Action Committee (encouraging activism in a positive way); Tech Deck club (having fun with tech decks); Tetris Club (playing Tetris); UNICEF (fundraising for children); and The Satanic Temple  Club (practicing the Seven Tenets of the Satanic Temple Club).

49.     On or about April 23, 2019, Peter Glasser, a teacher at Pioneer, used his classroom to express hostility to the religious beliefs of FCA.  On that date, Mr. Glasser put the FCA Statement of Faith and Sexual Purity Statement on the classroom whiteboard.  Under these statements, Mr. Glasser wrote, "I am deeply saddened that a club on Pioneer's campus asks its members to affirm these statements.  How do you feel?"

50.     Mr. Glasser's statements were specifically aimed at the religious beliefs of FCA and its student leaders. Some FCA leaders and members, including Roe, were students in Mr. Glasser's classes during the week that his hostility toward their religious beliefs was displayed on the classroom whiteboard.  Mr. Glasser left this display up in his classroom for at least a week despite concerns expressed by some of his students, including students who were FCA leaders and members.

51.     Despite complaints by FCA student leaders and other students to Principal Espiritu and Mr. Glasser about the display and despite the violation of District policy, no District employee or officer required Mr. Glasser to take down his display or disciplined him.  This was because District officials and administrators at the District and Pioneer share Mr. Glasser's hostility toward FCA's religious views.

*Pioneer and the District adopted and expanded Mr. Glasser's hostile treatment of the FCA students due to their religious beliefs.*

52.    Not only did the District refuse to discipline Mr. Glasser or order him to take down his display, the District and its officers adopted, both formally and in practice, Mr. Glasser's hostile view toward the religious views of the Student FCA Chapters.  Mr. Glasser coordinated with Principal Espiritu and other District officials to find justifications for the District to revoke recognition of the Student FCA Chapters.

53.    On May 2, 2019, less than two weeks after Mr. Glasser posted his disparagement of FCA's religious beliefs in his classroom, Principal Espiritu told student leaders at Pioneer's Student FCA Chapter that FCA would no longer be a recognized student group at Pioneer.  District officials made this decision without any prior discussion with the FCA students.  The decision to derecognize FCA was accompanied by a statement that the District "does not sponsor programs and activities with discriminatory practices."  Neither Principal Espiritu nor any District official identified any discriminatory practices by the Student FCA Chapters.  At the same time, District officials informed FCA student leaders at Leland and Willow Glen that neither the District nor their respective high schools would recognize them.

54.    The denial of recognition results in the loss of numerous benefits associated with recognition, including:  access to faculty advisors; inclusion in the school yearbook; access to Associated Student Body ("ASB") funds; and other benefits.

55.    The District has targeted the Student FCA Chapters specifically for their religious beliefs.  District officials told students at Willow Glen that they could regain recognition of their religious group by forming a new group not associated with FCA. District officials told a member of the faculty at Leland that the Leland Student FCA Chapter would not be recognized if it continued to require its leaders to approve the FCA Statement of Faith. The FCA students at Leland were told they would only be

approved as an interest group, not as a club. Interest groups do not receive the benefits associated with club recognition, such as access to ASB funds.

56.     Although District officials recognized that the Student FCA Chapters have a right to campus access under the EAA and other laws, District officials and employees, including Mr. Glasser and Principal Espiritu, coordinated to find ways to remove the Student FCA Chapters from the District high schools entirely.

57.     Roe and Doe applied for club recognition at Pioneer as a Student FCA Chapter for the 2019-20 school year.   Their application was denied.   Michelle Mayhew, the Pioneer Activities Director, and the ASB president signed the denial of the Pioneer Student FCA Chapter application.   Principal Espiritu and Mr. Glasser specifically took actions to ensure that the Pioneer Student FCA Chapter would not be recognized. This denial was adopted by Superintendent Albarrán or her delegate. For example, pursuant to District BP 3452, the principal of each school, Principal Espiritu in this instance,  is delegated responsibility for the distribution of club funds.

58.     The Student FCA Chapters were recognized student groups for a number of years and continue to meet all criteria to be a recognized student group. Defendants derecognized the Student FCA Chapters because of the content and viewpoint of their religious beliefs and speech.  Because the Student FCA Chapters are not recognized as student clubs by the District, they do not have the previously identified benefits granted to recognized student clubs.

***The District has approved of and facilitated attempts to harass and intimidate FCA students.***

59.     Not only have the District and its high schools revoked and denied recognition to the Student FCA Chapters, the school has approved and facilitated harassment of FCA students by faculty and other students.

60.     By way of example, District BP 3515.2 specifies that the "Superintendent or designee shall provide for the prompt removal from school premises of any

individual who disrupts or threatens to disrupt normal school operations, threatens the health and safety of students or staff, or causes property damage."

61.    Similarly, California Educational Code § 48900(r)(1) defines bullying as "any severe or pervasive physical or verbal act or conduct . . . that has or can be reasonably predicted to have the effect of one or more of the following: (d) causing a reasonable pupil to experience substantial interference with his or her ability to participate in or benefit from the services, activities, or privileges provided by a school."

62.    Despite these policies, the District has allowed faculty and students to harass and bully the students wishing to attend the Pioneer Student FCA Chapter meetings, before, during, and after their meetings.  District officials and employees understood that the planned harassment would likely intimidate the FCA students. FCA students expressed concerns to Principal Espiritu. These concerns were also expressed in letters written by legal counsel to Principal Espiritu.

63.    Following the District's decision to revoke its recognition of the Student FCA Chapters, Principal Espiritu spoke with students opposed to FCA about their concern over FCA continuing to meet at Pioneer even as an unrecognized student group. At least some of these students subsequently formed The Satanic Temple Club at Pioneer. The District approved recognition of The Satanic Temple Club and granted its request to meet at the same time as the derecognized Student FCA Chapter met at Pioneer despite knowing that these students were planning to protest against the FCA students' meetings.

64.    Principal Espiritu and other District officials, including Superintendent Albarrán, have allowed some Pioneer students to harass and intimidate the FCA students with impunity. On September 16, 2019, students associated with The Satanic Temple Club passed out flyers announcing the intent to gather directly outside of the meeting space for the Pioneer Student FCA Chapter's meeting in order to denounce the FCA students' religious beliefs.   When Principal Espiritu was asked to intervene

to prevent harassment of the FCA students, he initially indicated that any demonstrations would be moved to an area away from the FCA meetings, but ultimately refused to take any preventative actions.

65.     District officials expected these protests to intimidate and harass FCA students.  Mr. Glasser and Principal Espiritu each understood that singling out the Student FCA Chapters would subject FCA students to harassment.  Nonetheless, the District took no effort to prevent the harassment, for example, by maintaining a buffer zone between the hostile protesting students and those students attending the FCA meetings.

66.     On October 23, 2019, Pioneer students attempted to harass, intimidate, and prevent Pioneer FCA students from meeting.   District officials, including Principal Espiritu, were aware of the students' plans but did nothing to inform the FCA student leaders or to stop the students' harassing and intimidating behavior. The protesting students yelled at the FCA students as they were entering their meeting and held signs disparaging their religious beliefs.  District officials knew such harassment would likely deter some Pioneer students from participating in FCA meetings but allowed the harassment and intimidation to proceed.

67.     On November 6, 2019, student reporters from the school newspaper, *The Pony Express*, which has published editorials vilifying the Student FCA Chapters' religious beliefs, entered the Pioneer Student FCA Chapter's meeting in a manner calculated to harass and intimidate the FCA students.  In the thirty-minute meeting, the school newspaper's reporters took more than 300 pictures, standing only a few feet from, and putting the camera into, the face of each student as he or she spoke. When the Pioneer administration received complaints about the student reporters' behavior, Principal Espiritu told FCA students that they would have no presence in the yearbook, including their own individual photos, if they did not allow the students acting on behalf of the school newspaper to take pictures at the FCA students' meetings.

68.     On December 4, 2019, protesting students, with the knowledge and approval of District officials, attempted to harass the FCA students by intruding into the classroom while they were meeting.  At least one member of the faculty was actively involved in this harassment and encouraged students to enter the meeting. Only the intervention of the school resource officer prevented further harassment.

69.     Though the intruding students were prohibited from entering due to the officer's actions, they and faculty remained outside of the meeting room with the intent to harass and bully the FCA students from holding or attending future meetings. This attempt caused emotional distress for FCA members.

70.     In February of this year, Principal Espiritu and Assistant Principal Amy Hannah threatened to punish Jane Doe and Roe and other FCA students at Pioneer for taking pictures of students harassing them, despite also telling the FCA students that they would be punished for refusing to be photographed by students harassing them.

71.     Although specific incidents are described here in detail, similar harassment of students in the Pioneer FCA Chapter, which includes Roe and Doe, occurs nearly every FCA meeting.

72.     Unfortunately, FCA students have not only been harassed by other students.  Faculty within the district have also openly disparaged their religious beliefs and participated in the harassment of FCA.

73.     As previously noted, Mr. Glasser wrote remarks disparaging FCA's religious beliefs on the whiteboard in his classroom and then left them there for a week. Mr. Glasser encouraged Pioneer students to pursue derecognition of the Student FCA Chapter and denial of its application to be a recognized student group in the 2019-2020 academic year. When a Stanford athlete came to speak to the Pioneer Student FCA Chapter on September 25, Mr. Glasser met the athlete at the desk where outside visitors sign-in and attempted to dissuade him from speaking to the Student FCA Chapter, calling FCA a discriminatory group.

74.    In addition, at least one other faculty member has encouraged and participated in demonstrations aimed at disparaging FCA's religious beliefs and harassing the FCA students before, during, and after their meetings.  The teacher also actively encouraged students to harass the FCA students as they entered, attended, and left their meetings.

75.    The actions of students and faculty hostile to FCA, as described above, at a minimum, were reasonably predicted to harass, intimidate, and bully the FCA students from meeting at Pioneer.  In contrast, Principal Espiritu and Mr. Glasser noted that the FCA students acted maturely with respect to the District's disparagement of their religious beliefs.

76.    Nonetheless, on information and belief, the District has taken no action to discipline any student or faculty member for their attempts to harass and intimidate the students who wish to participate in the FCA students' meetings.

**_The District Recognizes One or More Noncurriculum-Related Student Groups that Trigger the Requirements of the Equal Access Act._**

77.    Pioneer, Willow Glen, and Leland are public secondary schools that receive federal financial assistance and maintain a limited open forum for noncurriculum-related student groups to meet. These schools are subject to the authority and control of the District.

78.    Pioneer, Willow Glen, and Leland recognize numerous noncurriculum-related student groups and allow them to meet.  Pioneer recognizes over 50 noncurriculum-related student groups, including Key Club, Interact Club, and Chess Club, which are quintessential groups that trigger the EAA's requirement that a religious student group be recognized and given the benefits afforded other noncurriculum-related student groups meeting at the school. The recognized noncurriculum-related student groups at Pioneer are listed in ¶ 48.

79.    Leland recognizes approximately 70 noncurriculum-related student groups, including Chess Club, Gender Sexuality Alliance/Gay Straight Alliance, and

Key Club, which are quintessential groups that trigger the EAA's requirement that a religious student group be recognized and given the benefits afforded other noncurriculum-related student groups meeting at the school.

80.     Examples of noncurriculum-related student groups that the District recognizes at Leland include:  2050 (fundraising for the Environmental Defense Fund); 4K Dance (focusing on K-Pop); Acts of Random Kindness (performing random acts of kindness); Advocates for Disabled Adolescents through Projects and Toys ("ADAPT") (learning about genetic diseases and fundraising for a children's hospital); AI Club (teaching AI technology); Amnesty International Club (writing letters and petitions about human rights); Anime Club (spreading appreciation for Japanese culture); Art Club (participating in fun art-related activities); Aviation Club (learning about aviation); Bare Necessities (collecting hygiene products for homeless shelters); Bioinformatics Club (exploring biology and computer science); Black Student Union (students of color sharing their school experiences); Bridge Club (playing bridge); Calligraphy Club (lettering and calligraphy); CAN Club (assisting local food bank); Card Games Club (playing card games); Charger Pals (building relationships with special needs students); Chargers for the Cure (promoting healthy living); Chess Club (playing chess); Cinema Club (discussing American film); Code-matics Club (exploring math and computer science); Codementary (gathering passionate coders); Creation Club (making unconventional art); Economics Club (discussing economics); Entourage (student cheering section); Future Business Leaders of America (preparing for business careers); Finance Club (educating about personal and global economies); Game Club (playing games); Game Design and Programming Club (developing games); Games Club of Leland (playing games); Gaming to Give (raising money for non-profits); Girls Who Code (closing the gender gap in engineering); Glee Club (performing music); Gender Sexuality Alliance/Gay Straight Alliance ("GSA") (discussing LGBTQ+ history and personal and social issues); Handcrafted Club (crafting); Helping Hands (fundraising for Iranian

orphanages); Hockey Club (discussing hockey); Indian Heritage Club (promoting Indian culture); International Club (exploring different cultures); Journey Around the World (fundraising for Cambodian school); Key Club (providing service, building character, and developing leadership); Ladki Love (fundraising for Indian children's education); Leland American Red Cross (teaching community disaster preparedness); Leland Bring Change to mind ("BC2M") (ending stigma around mental health); Leland Girl Up (fundraising for girls' education in third world countries); Leland Junior State of America (discussing politics); Leland Medical Club (pursuing medical careers); Leland Oceanic Preservation Club (educating about the oceans); Leland Robotics 604 (competing in robotics competitions); Leland STEM Club (inspiring younger students); Leland Women (creating empowered women on campus); Linguistics Club (informing about linguistics); Liberty in North Korea ("LINK") (fundraising for North Korean refugees); Machine Learning and Hackathon Club (teaching basic algorithms); Make A Wish (fundraising for the Make A Wish Foundation); Math Club (participating in extracurricular math competitions); Meditation and Stress-Reduction Club (practicing stress-reduction); Model United Nations (preparing for model UN conferences); Music Club (playing music and performing community service); National Honor Society (recognizing students for scholarship, character, leadership, and service); Origami Club (folding origami); Physics Club (preparing for physics competitions and tutoring other students); Podcast Club (producing podcasts); Psychology and Neuroscience Club (exploring psychology and neuroscience); Quiz Bowl (playing trivia); Save the Children (fundraising and petitioning for national organization); Senior Women (helping persons in need in the community); Students for the Environment (hosting environmental community service projects); Students Rebuild (combining art and philanthropy to make a difference in the community and globally); Table  Tennis (playing table tennis); and Youth Conservative Forum (exposing students to conservative ideas).

81.     Willow Glen recognizes over 30 noncurriculum-related student groups, including Democratic Socialists of America, Key Club, and Interact Club, which are quintessential groups that trigger the EAA's requirement that a religious student group be recognized and given the benefits afforded other noncurriculum-related student groups meeting at the school.

82.     Examples of noncurriculum-related student groups that the District recognizes at Willow Glen include:  Anime Club; Art Club; Black Student Body; Book Club; Buddies Club; Christian Club; Clean Wave Club; Democratic Socialists of America; Doki Literature Club (video game); Drama Club; Dubs Only (spirit club); FIDM Club ("Fashion Institute of Design and Merchandising Fashion Club"); Fighting Game Club; Film Club; French Club; Frisbee Club; Hack Club; Hacky Sack Club (playing footbag game); Hiking Club; Ice Hockey; Interact; Invisible Issues Club; Jewish Culture Club; Key Club; Latino Club and Dreamers; Model United Nations Club; National Honor Society; Plus Club; Recycling Club; Robotics Club; Showcase Club; Spikeball Club; Tabletop Club; The Environmental Protection Club; Thespian Club; and True Crime Club.

83.     District officials have denied and continue to deny recognition and its associated benefits to the Student FCA Chapters in clear violation of the EAA.

***The District recognizes student groups that trigger the FCA students'***
***First Amendment right to meet to express their religious viewpoints.***

84.     District officials recognize noncurriculum-related student groups at Pioneer, Willow Glen, Leland, and other public secondary schools within the District that trigger the EAA's requirement that the District recognize the Student FCA Chapters. Many of these same student groups are organized for purposes of discussing certain viewpoints that separately and independently trigger the FCA students' constitutional right to meet. The District revoked recognition of the Student FCA Chapters because it hopes to stifle viewpoints espoused by the Student FCA Chapters.

85.     For example, the District recognizes other student groups that discuss religious or atheistic ideas and values, including The Satanic Temple Club, Pioneers for Christ, and Communism Club at Pioneer, the Muslim Club and Shekinah Christian Club at Leland, and the Jewish Cultural Club and Christian Club at Willow Glen. The Student FCA Chapters discuss religious ideas and values from a specific religious viewpoint.

86.     The District recognizes student groups that discuss issues regarding sexuality, such as the Gender Sexuality Association (Pioneer), Gay Straight Alliance (Leland), and Sexuality and Gender Acceptance Club (Willow Glen).  The Student FCA Chapters discuss issues regarding sexuality from a specific religious viewpoint.

87.     The District recognizes numerous student groups that discuss ways to serve others in the community, including but not limited to: Almaden Homework Club (tutoring elementary students); Baking Society (fundraising for charity); BC2M (raising awareness regarding mental health); Best Buddies (friendships with persons with disabilities); Castillero Math Tutoring (tutoring middle school students); Gifts for Teens (collecting items for homeless persons); Green Team (cleaning up the environment); Interact Club (an international service club); Key Club (giving back to the community through service); Make a Difference Club (spreading awareness of world problems); Positive Balance (providing an anti-stress, safe space for students); Save our Seas (fundraising for ocean clean-up); Student Action Committee (encouraging activism in a positive way); and UNICEF (fundraising for children). The Student FCA Chapters discuss issues regarding how to serve others and their community from a specific religious viewpoint.

88.     The District recognizes student groups that are based on the specific identity promoted by those groups, including: BSU (Black Students Union); Girls Learn Club (increasing awareness on gender discrimination); Girls Who Code (closing gender gap in tech); K-Pop Club (discussing Korean culture); Latinx Club (sharing cultural activities); Pacific Islander Club (discussing Pacific Islander

culture); and Persian Club (talking about Persian culture).  The Student FCA Chapters discuss issues of identity and affinity from a religious viewpoint.

89.     The District recognizes student groups that meet to discuss books they have read, such as the Book Club, which exists to spread the joy of reading, and Harry Potter Club, which meets to discuss the Harry Potter book series. Student FCA Chapters encourage students to read and discuss the Bible, the best-selling book of all time, from a religious viewpoint.

90.     To the extent that the District relies on its nondiscrimination policy, such reliance is pretextual. The District does not apply its nondiscrimination policies uniformly. The District recognizes, supports, and even sponsors student groups and activities that deny membership or leadership opportunities on the basis of students' belonging to enumerated classes.  For example, the District and Pioneer sponsor and support numerous single-sex athletic teams.   For example, Pioneer has Boys' Wrestling teams, separate Girls' & Boys' Basketball teams, and Girls' Softball teams. On information and belief, these teams discriminate on the basis of sex and gender identity.

91.     Similarly, the District has approved applications for numerous noncurriculum-related student groups that have expressed gender, religious, or racial membership or leadership requirements in their applications. For example, Pioneer has recognized the "Big Sister/Little Sister" club, whose purpose is to "help freshmen learn the school better and get advice from senior girls."  Similarly, the Black Student Association's purpose is "to bring black students together to strive for academic excellence and promote positive images and defy stereotypes and to bring more cultural and social events for black students to Pioneer."

92.     On information and belief, officials within the District have advocated to officials in other school districts that they not recognize FCA because of its religious beliefs.

93.    The District's actions, including its refusal to recognize FCA and its approval and acceding to student and faculty harassment toward FCA and its students, have caused emotional distress to FCA students, including Jane Doe and Roe.

***FCA student leaders lead religious activities at their meetings and express the group's religious message.***

94.    Students interested in becoming FCA student leaders submit a student leadership application.  These student leadership applications are based on FCA's model student leadership application, although minor variations may be made by FCA regional staffs.   The Bay Area FCA Student Leader Application includes the FCA Statement of Faith and FCA Student Leadership Statement.  It also references FCA's Sexual Purity Statement.  These statements lay out the core religious beliefs of FCA and the qualifications expected of student leaders.  A true and correct copy of the Bay Area student leadership application is attached as Exhibit C.

95.    In addition to asking whether student leadership applicants agree with the Statement of Faith, the Bay Area FCA student leadership application asks applicants to include relevant information about their Christian faith, including when they first believed in Jesus, what it means to be a Christian, and why people go to Heaven.

96.    Each student leadership application asks whether the student agrees to conform to FCA's Student Leadership Statement, which sets out requirements that student leaders are expected to fulfill and states that student leaders are expected to conduct themselves according to a higher standard.   The Student Leadership Statement provides as follows:

> Just as "captains" are held to a higher standard for their team, FCA Student Leaders are held to a higher biblical standard of biblical lifestyle and conduct.

> God desires all of His heart. Paul the Apostle instructed young Timothy to live similarly in 1 Timothy 4:12 (NLT): "Do not let anyone think less of you because you are young.

Be an example to all believers in what you say, in the way you live, in your love, your faith, and your purity."

FCA Student Leaders are not always perfect examples, but they do their best to live and conduct themselves in accordance with biblical values and instruction in order to glorify God. If there are questions about what God says regarding how we live our lives, FCA encourages student leaders to look to the Bible as their Playbook and speak to a FCA adult volunteer or staff member if there are further questions.

97.    The Bay Area FCA student leadership application further states that "Each FCA representatives [*sic*] shall affirm their agreement with FCA's Christian beliefs and shall not subscribe to or promote any religious beliefs inconsistent with these beliefs."   Additionally, "FCA Representatives shall at all times (both during working and non-working hours) endeavor to conduct themselves in a manner that affirms biblical standards of conduct in accordance with FCA's Christian beliefs. Such conduct standards include FCA's Youth Protection Policy and Sexual Purity Statement."

98.    Each FCA student leader must be "ready, willing and able to participate and contribute to distinctly Christian activities such as worship and prayer services."

99.    FCA student leaders agree to abide by FCA's Sexual Purity Policy.  That policy asks student leaders to abstain from any sexual acts outside of a marriage consistent with FCA's religious beliefs.   The Sexual Purity Policy affirms that "[w]hile upholding God's standard of holiness, FCA strongly affirms God's love & redemptive power in the individual who chooses to follow Him. FCA's desire is to encourage individuals to trust in Jesus & turn away from any impure lifestyle."

100.   The Student FCA Chapters' ability to express their Christian beliefs would be significantly impaired if they were not allowed to require their leaders to share their core religious beliefs and values.  For example, because the Student FCA Chapters are student-led, the student leaders choose the speakers, religious activities, and religious message of each meeting.

101.   FCA student leaders serve as ministers for FCA.  The FCA Huddle Playbook ("Playbook") describes each FCA student club as a ministry.  A true and correct copy of the Playbook is attached as Exhibit D.  The Playbook further indicates that "As ambassadors of Jesus Christ, we are positioned as ministers of the Gospel to the world."  *See* Exhibit D at 2.

102.   As stated in the Playbook, "FCA is a Christian community *that is led by* those who serve FCA's mission as its representatives, including all of FCA's directors, officers, employees, *and volunteer leaders*, each of whom is an integral part of the community (and are described in this Manual as 'FCA Representatives')." Exh. D at 7 (emphasis added).

103.   All FCA student leaders "must contribute to FCA's Christian character and mission" and are expected to "[u]se personal gifts and talents to help plan and implement FCA ministry . . . including leading Bible Study Workouts."  *Id*. at 9.

104.   Within FCA, the title "student leader" designates a ministerial role.  For example, FCA student leaders must apply for their positions and are selected for their ability to demonstrate FCA's religious beliefs in word and conduct.  FCA student leaders "are held to a higher standard of biblical lifestyle and conduct."  *Id*. at 58.

105.   FCA Student Leaders apply for leadership positions, commit to being held to a higher standard of biblical conduct, and typically lead their clubs in prayer and Bible study.

***The District's discrimination against the Student FCA Chapters is intentional and pursuant to the policies, practices, and customs of the District.***

106.   All of the discriminatory and unlawful acts taken by officials, employees, and staff of the District, Pioneer, Willow Glen, and Leland, as alleged herein, were pursuant to the policies, practices, and customs of the District and acting under color of law.  This includes actions that were performed by, approved by, or adopted by

Superintendent Albarrán as the District's chief executive officer or her delegate or other final policymaker.

107.   When Principal Espiritu informed the FCA student leaders that the Student FCA Chapters would no longer be recognized at Pioneer, his email cited District policies.  FCA student leaders for all Student FCA chapters within the District were informed at or near this time that the District would not recognize a Student FCA Chapter at any school because of instructions from the District.

108.   Additionally, the Superintendent of the District, who is chiefly responsible for interpreting and executing District policy, was informed in writing about the revocation of FCA's recognition as a student club and subsequent denial of its recognition for the 2019-2020 academic year.  Superintendent Albarrán was expressly informed that the District's decision to derecognize the Student FCA Chapters violates federal law and the United States Constitution but continued to approve of, and allow discrimination against, the Student FCA Chapters.

109.   Pursuant to BP 2120 of District Policies and Regulations, Ms. Albarrán, Superintendent of the District, is "the chief executive officer and educational leader of the district."  Her edicts or acts may be fairly said to represent official policy for the District.  All events described herein occurred with her knowledge and approval or the knowledge and approval of her designee, either through prior knowledge and assent or through adoption of the actions taken by District employees.

110.   The Superintendent has taken no action to correct this revocation and rejection despite being informed of its illegality.  The Superintendent has adopted the denial of FCA recognition as consistent with and compelled by District policy, practice, and custom.

111.   Defendants' actions were taken pursuant to official policy, as evidenced, among other things by Principal Espiritu's citations to District policy and the District's refusal to correct its actions and recognize FCA even after the illegality of its decisions was pointed out.

112.   All actions as alleged herein as performed by Principal Espiritu were performed as the Superintendent's designee or with the approval of the Superintendent.  For example, pursuant to District BP 3452, the principal of each school is delegated responsibility for the distribution of club funds.

113.   All actions of district officials as alleged herein were made with the approval of Superintendent Albarrán or a person to whom she has delegated authority or other final policymaker, or pursuant to District policies, including without limitation BP 0410 and BP 5145.3.   To the extent not expressly performed by Superintendent Albarrán, all actions by District officials alleged herein were made, approved, or adopted by Superintendent Albarrán, her delegate, or another final policymaker for the District.

114.   Roe, Doe, and FCA have been directly affected by the events described herein and have suffered mental anguish, including fear, anxiety, and loss of sleep. Roe and Doe have also been deprived of rights granted them under the Equal Access Act, the United States Constitution, and other federal law, as well as the California Constitution and California law.

115.   Pursuant to District Policy BP 0410,

> The Governing Board is committed to equal opportunity for all individuals in district programs and activities. District programs, and activities, and practices shall be free from discrimination based on gender, gender identity and expression, race, color, religion, ancestry, national origin, immigration status, ethnic group, pregnancy, marital or parental status, physical or mental disability, sexual orientation or the perception of one or more of such characteristics. The Board shall promote programs which ensure that any discriminatory practices are eliminated in all district activities.

> Any school employee who observes an incident of discrimination, harassment, intimidation, or bullying or to whom such an incident is reported shall report the incident to the Coordinator or principal, whether or not the victim files a complaint.

116.   Pursuant to District Policy 5145.3:

> All district programs and activities within a school under the jurisdiction of the superintendent of the school district shall be free from discrimination, including harassment, with respect to the actual or perceived ethnic group, religion, gender, gender identity, gender expression, color, race, ancestry, national origin, and physical or mental disability, age or sexual orientation. The Governing Board desires to provide a safe school environment that allows all students equal access to District programs and activities regardless of actual or perceived ethnicity, religion, gender, gender identity, gender expression, color, race, ancestry, national origin, physical or mental disability, sexual orientation, or any other classification protected by law.

## CONDITIONS PRECEDENT

117.   All conditions precedent have occurred, been performed, or were waived.

118.   For all requests for declaratory relief asserted herein, a case and controversy exists because Defendants have denied and continue to deny Plaintiffs' rights, privileges, and immunities secured under the United States Constitution, federal law, and California State law.

119.   All actions performed by Defendants as alleged herein were malicious, oppressive, and in reckless disregard for Plaintiffs' rights.

120.   To the extent required by law, Plaintiffs have exhausted all administrative remedies by alerting the District of the nature of their complaints through correspondence, including correspondence on July 2, 2019 and January 14, 2020.  The District has not timely responded to Plaintiffs' correspondence and the relief requested therein is deemed denied by law.

### FIRST CAUSE OF ACTION
### 42 U.S.C. § 1983
### Equal Access Act 20 U.S.C. §§ 4071 *et seq*.

121.   Paragraphs 1-120 are incorporated here by reference as if fully written herein.

122.   The Equal Access Act, 20 U.S.C. §§ 4071-4074, makes it unlawful for "any public secondary school which receives Federal financial assistance and which has a limited open forum to deny equal access or a fair opportunity to, or discriminate against, any students who wish to conduct a meeting within that limited open forum on the basis of the religious, political, philosophical, or other content of the speech at such meetings."  § 4071(a).

123.   Pioneer, Willow Glen, and Leland are public secondary schools that receive federal financial assistance and are within the jurisdiction and control of the District.

124.   Pioneer, Willow Glen, and Leland each allow noncurriculum-related student groups to meet during noninstructional time and thereby maintain a limited open forum as that term is defined within the EAA.

125.   Defendants, acting pursuant to the policies, practices, and customs of the District, have revoked and continue to deny recognition of FCA student groups on their campuses, thereby "deny[ing] equal access or a fair opportunity to, or discriminat[ing] against," the FCA students on the basis of the religious content of their speech.  This denial of recognition relegates the FCA students to second-class status and denies them access to other resources that are granted to student groups recognized as clubs.

126.   Defendants have denied and continue "to deny equal access or a fair opportunity to, or discriminate against" Plaintiffs' right to meet as a recognized student group because of the religious content of their speech.

127.   District officials recognize they are bound by the EAA's requirements but nonetheless withdrew recognition from the Student FCA Chapters and subsequently refused to recognize them as clubs despite the EAA's requirements. The rights of religious and other noncurriculum-related student groups to meet and enjoy all the other benefits of recognition are well-established in the law, including *Board of Education v. Mergens,* 496 U.S. 226 (1990), and *Prince v. Jacoby*, 303 F.3d

1074, 1086 (9th Cir. 2003) ("The School District discriminates against Prince and the World Changers by denying them equal access to [ASB] funds.").

128.   Defendants' actions were taken pursuant to official policy, as evidenced, among other things by Principal Espiritu's citations to District policy and the District's refusal to correct its actions and recognize FCA even after the illegality of its decisions was pointed out.

129.   Defendants' actions, taken under color of state law, have denied Plaintiffs rights and privileges secured under the EAA.

130.   Plaintiffs Doe and Roe have suffered mental anguish due to Defendants' unlawful actions and seek to recover damages.

131.   Plaintiffs seek a declaration that Defendants' actions violate the EAA and injunctive relief prohibiting future acts in violation of the EAA.   Without such declaratory and injunctive relief, Defendants will continue to be irreparably harmed.

## SECOND CAUSE OF ACTION
### 42 U.S.C § 1983
### U.S. Const., amend. I, Free Speech Clause
### Viewpoint Discrimination

132.   Paragraphs 1-131 are incorporated by reference as if fully set out herein.

133.   Governments "must not discriminate against speech on the basis of viewpoint."   *Good News Club v. Milford Central Sch.*, 533 U.S. 98, 106 (2001); *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829 (1995) ("Viewpoint discrimination is thus an egregious form of content discrimination. The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction."); *Lamb's Chapel v. Center Moriches Union Sch. Dist.*, 508 U.S. 384 (1993).

134.   District officials at Pioneer, Leland, and Willow Glen, acting under the policies, practices, and customs of the District, recognize and grant benefits to

numerous student groups that meet to discuss a variety of topics discussed, including religion, sexuality, books, and serving others and the community. *See, e.g.*, ¶¶ 48, 80, 82, 84-89, *supra*. Yet, these schools have refused to recognize the Student FCA Chapters because of their religious viewpoints on these topics. The Student FCA Chapters, whose meetings are initiated and led by student leaders, are being denied recognition and its accompanying benefits that the school allows to other student groups because of its disapproval of the Student FCA Chapters' religious beliefs as expressed in their religious viewpoints.

135. The District also discriminates against the Student FCA Chapters' viewpoint because it does not apply its nondiscrimination policies uniformly. The District recognizes, supports, and even sponsors student groups and other activities that deny membership or leadership opportunities on the basis of students' belonging to an enumerated class.

136. The District also discriminates against Plaintiffs by knowingly and intentionally allowing students and faculty to harass and bully them for the purposes of chilling their speech. The District's refusal to act is intended to allow a "heckler's veto" on FCA students' speech.

137. Defendants' actions were taken pursuant to official policy, as evidenced, among other things by Principal Espiritu's citations to District policy and the District's refusal to correct its actions and recognize FCA even after the illegality of its decisions was pointed out.

138. Defendants' actions, taken under color of state law, have denied Plaintiffs rights and privileges secured under the U.S. Constitution's First Amendment as applied to the states through the 14th Amendment.

139. Plaintiffs Doe and Roe have suffered mental anguish due to Defendants' unlawful actions and seek to recover damages.

1    140.   Plaintiffs seek a declaration that Defendants' actions violate the First

2    Amendment and injunctive relief prohibiting future acts.  Without such declaratory

3    and injunctive relief, Defendants will continue to be irreparably harmed.

4
5
                              **THIRD CAUSE OF ACTION**
                                 **42 U.S.C. § 1983**
6                        **U.S. Const., amend. I, Free Speech Clause**
7                          <u>**Right of Expressive Association**</u>

8    141.   Paragraphs 1-140 are incorporated by reference as if fully set out herein.

9    142.   Meetings of the Student FCA Chapters, which are initiated and led by

10   student leaders, are a means of transmitting a system of religious beliefs and values

11   and are expressive by nature.  *See Boy Scouts of America v. Dale*, 530 U.S. 640, 649-

12   50 (2000).

13   143.   Plaintiff FCA, though its members and leaders, and Plaintiffs Roe and

14   Doe as student leaders within FCA, desire to associate together in ways that express

15   their Christian faith and the religious beliefs set forth in FCA's statements and

16   governing documents.

17   144.   Plaintiffs' meetings are intended to  instill, examine, and reinforce their

18   religious beliefs as expressed in FCA's governing documents and statements of core

19   religious beliefs and, therefore, are inherently expressive of their shared religious

20   beliefs.

21   145.   Because Plaintiffs' meetings are intended to express religious messages

22   and religious viewpoints, the Student FCA Chapter leaders must agree with FCA's

23   core religious beliefs.

24   146.   Defendants have violated Plaintiffs' right of expressive association by

25   denying recognition and its accompanying benefits to Plaintiffs because of the core

26   religious beliefs with which their leaders are required to agree.

27   147.   By penalizing the Student FCA Chapters for requiring their leaders to

28   affirm their core religious beliefs, as expressed in FCA's statements of its core

religious beliefs and other governance documents, Defendants have interfered with Plaintiffs' ability to choose their leaders and have unlawfully impaired Plaintiffs' message. *Dale*, 530 U.S. 640.

148.   Defendants' actions were taken pursuant to official policy, as evidenced, among other things by Principal Espiritu's citations to District policy and the District's refusal to correct its actions and recognize FCA even after the illegality of its decisions was pointed out.

149.   Defendants' actions, taken under color of state law, have denied Plaintiffs rights and privileges secured under the U.S. Constitution's First Amendment as applied to the states in the Fourteenth Amendment.

150.   Plaintiffs Doe and Roe have suffered mental anguish due to Defendants' unlawful actions and seek to recover damages.

151.   Plaintiffs seek a declaration that Defendants' actions violate the First Amendment and injunctive relief prohibiting future acts.  Without such declaratory and injunctive relief, Defendants will continue to be irreparably harmed.

## FOURTH CAUSE OF ACTION
### 42 U.S.C. § 1983
### U.S. Const., amend. I, Religion Clauses
### <u>Denial of Generally Available Benefits</u>

152.   Paragraphs 1-151 are incorporated by reference herein as if fully written herein.

153.   Under the Free Exercise Clause, "[d]enying a generally available benefit solely on account of religious identity imposes a penalty on the free exercise of religion that can be justified only by a state interest 'of the highest order.'" *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2019 (2017) (quoting *McDaniel v. Paty*, 435 U.S. 618, 628 (1978)).

154.   Recognition and all its accompanying benefits are generally available benefits for which Plaintiffs qualify within the District.   Plaintiffs qualify for

recognition and its attendant benefits. Nonetheless Defendants have denied Plaintiffs these generally available benefits because of their religious identity.

155.  Defendants have targeted Plaintiffs for disparate treatment, including lack of club recognition and its attendant benefits, because of their religious beliefs.

156.  Defendants' actions were taken pursuant to official policy, as evidenced, among other things by Principal Espiritu's citations to District policy and the District's refusal to correct its actions and recognize FCA even after the illegality of its decisions was pointed out.

157.  Defendants' actions, taken under color of state law, have denied Plaintiffs rights and privileges secured under the U.S. Constitution's First Amendment as applied to the states in the Fourteenth Amendment.

158.  Plaintiffs Doe and Roe have suffered mental anguish due to Defendants' unlawful actions and seek to recover damages.

159.  Plaintiffs seek a declaration that Defendants' actions violate the First Amendment and injunctive relief prohibiting future acts.  Without such declaratory and injunctive relief, Defendants will continue to be irreparably harmed.

### FIFTH CAUSE OF ACTION
### 42 U.S.C. § 1983
### U.S. Const., amend. I, Religion Clauses
### Targeting of Religious Beliefs

160.  Paragraphs 1-159 are incorporated by reference herein as if fully written herein.

161.  Under the Free Exercise Clause, "a law targeting religious beliefs as such is never permissible." *Trinity Lutheran*, 137 S. Ct. at 2024 n.4; *Church of the Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 533 (1993).

162.  Under the First Amendment, the government "cannot impose regulations that are hostile to the religious beliefs of affected citizens and cannot act in a manner that passes judgment upon or presupposes the illegitimacy of religious beliefs and

practices." *Masterpiece Cakeshop, Ltd. v. Colorado Civ. Rights Comm'n*, 138 S. Ct. 1719, 1731 (2018).

163.   Additionally, government hostility toward religion violates the Establishment Clause.  *See Catholic League for Religious & Civil Rights v. City & County of San Francisco*, 624 F.3d 1043 (9th Cir. 2010).

164.   Defendants have expressly stated or adopted views hostile to the religious faith of FCA and its student leaders and acted pursuant to such hostile views.  These views include statements that FCA's religious beliefs are shameful and hateful.

165.   In accordance with these views, Defendants have targeted Plaintiffs for disparate treatment, including lack of recognition and its attendant benefits, as well as knowingly allowing or encouraging faculty and other students at the school to harass Plaintiffs for their religious beliefs despite having written policies against harassment.

166.   Defendants grant club recognition to other student groups despite those groups' exclusion of members or leaders based on classes enumerated in the District's nondiscrimination policies.

167.   Defendants' actions reflect animus toward Plaintiffs' religious beliefs.

168.   Defendants' actions were taken pursuant to official policy, as evidenced, among other things by Principal Espiritu's citations to District policy, coordination with students hostile to FCA's religious values, and refusal to require Mr. Glasser to take down his display disparaging FCA's religious values.

169.   Defendants' actions, taken under color of state law, have denied Plaintiffs rights and privileges secured under the U.S. Constitution's First Amendment as applied to the states in the Fourteenth Amendment.

170.   Plaintiffs Doe and Roe have suffered mental anguish due to Defendants' unlawful actions and seek to recover damages.

171.   Plaintiffs seek a declaration that Defendants' actions violate the First Amendment and injunctive relief prohibiting future acts.  Without such declaratory and injunctive relief, Defendants will continue to be irreparably harmed.

### SIXTH CAUSE OF ACTION
### 42 U.S.C. § 1983
### U.S. Const. amend. I – Religion Clauses
### Ministerial Exception & Internal Autonomy

172.   Paragraphs 1-171 are incorporated by reference herein as if fully written herein.

173.    Under the Religion Clauses of the First Amendment, "it is impermissible for the government to contradict a church's determination of who can act as its ministers."  *Hosanna-Tabor Evangelical Lutheran Church & School v. EEOC*, 565 U.S. 171, 185 (2012).

174.   Ministers include "those who serve in positions of leadership, those who perform important functions in worship services and in the performance of religious ceremonies and rituals, and those who are entrusted with teaching and conveying the tenets of the faith to the next generation."  *Id.* at 200 (Alito, J., concurring).

175.   Similarly, religious organizations have the "power to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine." *Kedroff v. Saint Nicholas Cathedral of Russian Orthodox Church in N. Am.*, 344 U.S. 94, 116 (1952).

176.   FCA is an international Christian ministry that includes student leaders within its leadership structure.

177.   At a minimum, FCA student leaders have titles denoting leadership, hold themselves out as FCA leaders, and perform distinctly religious functions, including leading Student FCA Chapter meetings in prayer, worship, and Bible study.

178.   FCA student leaders are the primary way in which FCA fulfills its religious mission on public school campuses. FCA leaders must agree with FCA's

religious beliefs, including agreement with its statement of core religious beliefs and other governing documents, in order to express the religious message and live in accordance with those beliefs.

179.   By denying club recognition to FCA because of its religious beliefs, including its leadership requirements, Defendants interfere with Plaintiffs' First Amendment rights to select their religious leaders.

180.   To the extent Defendants have denied recognition to Plaintiffs due to their religious leadership criteria, Defendants impermissibly entangle themselves with Plaintiffs' religious beliefs and internal religious affairs.

181.   Defendants' actions were taken pursuant to official policy, as evidenced, among other things by Principal Espiritu's citations to District policy and the District's refusal to correct its actions and recognize FCA even after the illegality of its decisions was pointed out.

182.   Defendants' actions, taken under color of state law, have denied Plaintiffs rights and privileges secured under the U.S. Constitution's First Amendment as applied to the states in the Fourteenth Amendment.

183.    Plaintiffs Doe and Roe have suffered mental anguish due to Defendants' unlawful actions as described herein and seek to recover damages for the same.

184.   All Plaintiffs seek a declaration that Defendants' actions violate the First Amendment and injunctive relief prohibiting future acts.  Without such declaratory and injunctive relief, Defendants will continue to be irreparably harmed.

**SEVENTH CAUSE OF ACTION**
**42 U.S.C. § 1983**
**U.S. Const., amend. I – Religion Clauses**
**Denominational Discrimination**

185.   Paragraphs 1-184 are incorporated by reference as if fully set out herein.

186.   As the Supreme Court held in *Larson v. Valente*, "[t]he clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another." 456 U.S. 228, 244 (1982).

187.   Defendants officially recognize a number of religious or atheistic student groups, including a Muslim Club and Shekinah Christian Club at Leland, The Satanic Temple Club, Pioneers for Christ, and the Communism Club at Pioneer, and Jewish Cultural Club and Christian Club at Willow Glen, and give them various benefits of recognition that are not given the Student FCA Chapters.  Defendants will not recognize Student FCA Chapters because it disagrees with their religious beliefs.

188.   District officials have indicated they would grant full recognition to the Student FCA Chapters if they agree to change their religious beliefs and affirmations. Officials at Willow Glen told students that the District would  recognize a new religious student club as long as it was not associated with FCA.

189.   Defendants' actions were taken pursuant to official policy, as evidenced, among other things by Principal Espiritu's citations to District policy and the District's refusal to correct its actions and recognize FCA even after the illegality of its decisions was pointed out.

190.   Defendants' actions, taken under color of state law, have denied Plaintiffs rights and privileges secured under the U.S. Constitution's First Amendment as applied to the states in the Fourteenth Amendment.

191.   Plaintiffs Doe and Roe have suffered mental anguish due to Defendants' unlawful actions as described herein and seek to recover damages for the same.

192.   All Plaintiffs seek a declaration that Defendants' actions violate the First Amendment and injunctive relief prohibiting future acts.  Without such declaratory and injunctive relief, Defendants will continue to be irreparably harmed.

1
2
3
4

### EIGHTH CAUSE OF ACTION
### 42 U.S.C § 1983
### U.S. Const., amend. I – Religion Clauses
### <u>Government Hostility Toward Religion</u>

5
6
    193.   Plaintiffs incorporate Paragraphs 1 - 192 by reference as if fully set forth herein.

7
8
9
    194.   The First Amendment forbids an official purpose to disapprove of a particular religion or of religion in general. *See Catholic League for Religious & Civil Rights v. City & Cty. of San Francisco,* 624 F.3d 1043, 1054 (9th Cir. 2010).

10
11
12
13
14
15
16
17
18
19
20
    195.   Mr. Glasser, while in his capacity as a teacher, displayed a message specifically targeted at FCA's religious beliefs and expressed disapproval of FCA's religious beliefs.   Mr. Glasser posted these statements on the whiteboard in his classroom. Mr. Glasser's message disapproving FCA's religious beliefs was highly visible to his students during classes for a week. FCA students were in his classes. Mr. Glasser spoke as a government employee, and any reasonable person would have understood Mr. Glasser to be speaking as a government employee for purposes of the Establishment Clause.  *See Kennedy v. Bremerton Sch. Dist.*, 869 F. 3d 813, 827 (9th Cir. 2017) (noting that teachers are necessarily government speakers when they speak at school in the presence of students in a capacity one might reasonably view as official).

21
22
23
24
25
    196.   The District adopted Mr. Glasser's hostility towards FCA's religious beliefs.  As a result, the District revoked recognition of the Student FCA Chapters due to its disfavor of their religious beliefs.  On multiple occasions, District officials indicated that they would grant the FCA students recognition if they disavowed FCA's religious beliefs.

26
27
28
    197.   Mr. Glasser and Principal Espiritu openly discussed strategies to remove the Student FCA Chapters from the District entirely because of their hostility towards

the religious beliefs of the Student FCA Chapters and the students who affirm those beliefs.

198.   Defendants' actions were taken pursuant to official policy, as evidenced, among other things by Principal Espiritu's citations to District policy, coordination with students hostile to FCA's religious values, and refusal to require Mr. Glasser to take down his display disparaging FCA's religious values.

199.   Defendants' actions, taken under color of state law, have denied Plaintiffs rights and privileges secured under the U.S. Constitution's First Amendment as applied to the states in the Fourteenth Amendment.

200.   Plaintiffs Doe and Roe have suffered mental anguish due to Defendants' unlawful actions as described herein and seek to recover damages for the same.

201.   All Plaintiffs seek a declaration that Defendants' actions violate the First Amendment and injunctive relief prohibiting future acts.  Without such declaratory and injunctive relief, Defendants will continue to be irreparably harmed.

### NINTH CAUSE OF ACTION
### 42 U.S.C § 1983
### U.S. Const., amend. XIV – Equal Protection
### <u>Denial of Equal Protection</u>

202.   Paragraphs 1 - 201 are incorporated here by reference as if fully set out herein.

203.   Defendants have penalized the Student FCA Chapters because of their religious beliefs by denying them recognition and its attendant benefits because of their religious beliefs while granting recognition and its attendant benefits to other similarly situated student organizations.

204.   The District's refusal to protect the legal right of the FCA students to meet as a recognized student organization with all the benefits attendant on recognition while according other student organizations their legal right to meet as

recognized student organizations with all the benefits attendant on recognition violates the Equal Protection Clause of the Fourteenth Amendment.

205.   Plaintiffs Doe and Roe have suffered mental anguish due to Defendants' unlawful actions and seek to recover damages.

206.   All Plaintiffs seek a declaration that Defendants' actions violate the First Amendment and injunctive relief prohibiting future acts.  Without such declaratory and injunctive relief, Defendants will continue to be irreparably harmed.

### TENTH CAUSE OF ACTION
### Violation of Art. I, § 2 – Constitution of California

207.   Paragraphs 1- 206 are incorporated by reference as if fully set out herein.

208.   The California Constitution provides that "[e]very person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press."

209.   Defendants' actions, as set forth herein, violate Plaintiffs' speech rights as set forth in Article I, Section 2 of the California Constitution.

210.   Plaintiffs Doe and Roe have suffered mental anguish due to Defendants' unlawful actions as described herein and seek to recover damages for the same.

211.   Plaintiffs seek a declaration that Defendants' actions abridge Plaintiffs' rights under the California Constitution and injunctive relief prohibiting future acts. Without such declaratory and injunctive relief, Defendants will continue to be irreparably harmed.

### ELEVENTH CAUSE OF ACTION
### Violation of Art. I, § 4 – California Constitution

212.   Plaintiffs incorporate paragraphs 1-211 herein by reference.

213.   The California Constitution provides that "[f]ree exercise and enjoyment of religion without discrimination or preference are guaranteed. This liberty of

conscience does not excuse acts that are licentious or inconsistent with the peace or safety of the State. The Legislature shall make no law respecting an establishment of religion."

214.   Defendant's actions, as set forth herein, violate Plaintiffs' religious rights as set forth in Article I, Section 4 of the California Constitution.

215.   Plaintiffs Doe and Roe have suffered mental anguish due to Defendants' unlawful actions as described herein and seek to recover damages for the same.

216.   Plaintiffs seek a declaration that Defendants' actions abridge Plaintiffs' rights under the California Constitution and injunctive relief prohibiting future acts. Without such declaratory and injunctive relief, Defendants will continue to be irreparably harmed.

**TWELFTH CAUSE OF ACTION**
**California Education Code section 200 *et seq.***
**(brought by Doe and Roe only)**

217.   Plaintiffs incorporate Paragraphs 1 - 216 by reference as if fully stated herein.

218.   California Educational Code § 200 *et seq*. provides for a private right of action for intentional discrimination on the basis of religion.

219.   A plaintiff may maintain an action for monetary damages against a school district when alleging severe, pervasive, and offensive harassment that effectively deprives the student of the right of equal access to educational benefits and opportunities.

220.   The District and its officials, including Defendants, had actual knowledge of the harassment and responded with deliberate indifference. *Donovan v. Poway Unified Sch. Dist.*, 167 Cal. App.4th 567, 603-09 (2008).

221.   Students and faculty bullied and harassed Doe and Roe and Pioneer FCA students by yelling at them, disparaging their religious beliefs, and harassing the

Pioneer FCA students before, during, and after their meetings.  This bullying and harassment caused severe mental anguish to Doe and Roe.

222.   The District had control over the students and faculty harassing Doe and Roe, as well as of the campus of Pioneer High School, where the harassment occurred.  The District and Defendants had authority and a duty to take corrective action to end the discrimination and harassment but failed to do so and ignored (and even facilitated) many instances of student-on-student harassment.

223.   The District's deliberate indifference to its students' and faculty's harassment of Doe and Roe deprived them of equal access to educational benefits and opportunities.

## THIRTEENTH CAUSE OF ACTION
### Negligence
### (brought by Doe and Roe only)

224.   Paragraphs 1 - 223 are incorporated by reference as if fully stated herein.

225.   Under the California Tort Claims Act, the District is vicariously liable for injuries proximately caused by negligence of school personnel responsible for student supervision. Cal. Gov. Code § 815.2 (a).

226.   Defendants had a duty to supervise students on the premises of Pioneer High School. Cal. Ed. Code § 44807. The standard of care imposed upon school personnel in carrying out the duty to supervise students is identical to that required in the performance of their other duties, i.e., that degree of care which a person of ordinary prudence, charged with comparable duties, would exercise under the same circumstances; either a total lack of supervision or ineffective supervision may constitute a lack of ordinary care on the part of those responsible for student supervision. *Hoff v. Vacaville Unified School Dist*., 19 Cal.4th 925 (1998).

227.   The breach of duty by District officials to supervise the students who have harassed Pioneer FCA students caused Roe and Doe severe mental anguish.

228.   As a proximate result of Defendants' negligent acts, Plaintiffs have incurred damages as alleged heretofore.

## FOURTEENTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress
### (brought by Doe and Roe Only)

229.   Plaintiffs incorporate Paragraphs 1-228 by reference as if fully stated herein.

230.   The actions of Defendants as alleged herein were outrageous, malicious, and intended to inflict emotional distress and humiliation on Roe and Doe.

231.   As a proximate result of Defendants' intentional acts and failures to act, Plaintiffs have suffered mental anguish and other damages as alleged herein.

## DEMAND FOR JURY TRIAL

Plaintiffs demand that the Court set this matter for trial before a jury of their peers.

///

///

///

1

2                          **PRAYER FOR RELIEF**

3          Wherefore, Plaintiffs request that the Court:

4          a.      Set this matter on its docket and schedule it for trial in front of a jury of

5   Plaintiffs' peers;

6          b.      Declare that the Equal Access Act, First and Fourteenth Amendments to

7   the United States Constitution, and California Constitution require Defendants to

8   cease withholding club recognition and all its attendant benefits due to Plaintiffs'

9   religious beliefs, including but not limited to religious leadership requirements;

10         c.      Issue a preliminary injunction during the trial prohibiting Defendants

11  from denying Plaintiffs recognition as a recognized student group because of

12  Plaintiffs' religious beliefs, including but not limited to religious leadership

13  requirements, and enjoining Defendants from allowing students and faculty to harass

14  students in the Student FCA Chapters because of their religious beliefs and/or the

15  FCA students' exercise of their federal statutory or constitutional right to meet to

16  express those religious beliefs;

17         d.      Issue a permanent injunction prohibiting Defendants from denying

18  Plaintiffs recognition as a recognized student group because of Plaintiffs' religious

19  beliefs, including but not limited to religious leadership  requirements, and enjoining

20  Defendants from allowing students and faculty to harass students in the Student FCA

21  Chapters because of their religious beliefs and/or the FCA students' exercise of their

22  federal statutory or constitutional right to meet to express those religious beliefs;

23         e.      Award Plaintiffs such compensatory, punitive, and nominal damages to

24  which they are entitled for the infringement of their rights under federal and

25  California law,

26         f.      Award Plaintiffs the costs of this action and reasonable attorney's fees;

27  and

28

COMPLAINT
CASE NO.: 5:20-cv-2798          [00097019.1]

1  g.      Award all such other relief to which Plaintiffs are entitled in law or in
2  equity.

3

4  Respectfully Submitted,

5
6  Dated: April 22, 2020           CENTER FOR LAW & RELIGIOUS
                                   FREEDOM
7
                                   By: _____/s/_____
8                                  Reed N. Smith (VA SBN 77334)
                                   Kimberlee Wood Colby (DC BN 358024)
9                                  (seeking admission *pro hac vice*)
                                   8001 Braddock Road, Suite 302
10                                 703-642-1101 tel / 703-642-1075 fax
                                   rsmith@clsnet.org / kcolby@clsnet.org
11
                                   SETO WOOD & SCHWEICKERT LLP
12
                                   By: _____/s/_____
13                                 Stephen C. Seto (CA SBN 175458)
14                                 Steven N.H. Wood (CA SBN 161291)
                                   Christopher J. Schweickert (CA SBN 225942)
15                                 1470 Maria Lane, Suite 300
                                   Walnut Creek, CA 94596
16                                 925-938-6100 tel / 925-262-2318 fax
                                   sseto@wcjuris.com / cjs@wcjuris.com
17
18                                 *Attorneys for Plaintiffs*
                                   John Doe, on behalf of his minor daughter
19                                 Jane Doe, Jessica Roe, and Fellowship of
                                   Christian Athletes
20
21
22
23
24
25
26
27
28