1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

JESSICA ROE, et al.,

        Plaintiffs,

    v.

SAN JOSE UNIFIED SCHOOL DISTRICT
BOARD, et al.,

        Defendants.

Case No. 20-CV-02798-LHK

**ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO
DISMISS**

Re: Dkt. No. 25

      The Fellowship of Christian Athletes ("FCA") and two of its pseudonymous former

student members (collectively, "Plaintiffs") allege that the San Jose Unified School District and its

officials (collectively, "Defendants") discriminated against FCA's religious viewpoint and

unlawfully derecognized FCA's student groups. Plaintiffs specifically claim that Defendants

violated the Equal Access Act, 20 U.S.C. §§ 4071 *et seq*., and various overlapping rights under the

First Amendment and Fourteenth Amendment. Before the Court is Defendants' motion to dismiss

Plaintiffs' first amended complaint. ECF No. 25. Having considered the parties' submissions; the

relevant law; and the record in this case, the Court GRANTS IN PART and DENIES IN PART

Defendants' motion to dismiss.[1]

## I.      BACKGROUND

### A.  Factual Background

Plaintiffs are FCA—an international religious ministry with student groups nationwide—and two pseudonymous high school students who were members of FCA but have since graduated. First Am. Compl. ("FAC") ¶ 2, ECF No. 14. One pseudonymous former student, "Jane Doe," brings suit through her pseudonymous father, "John Doe." FAC ¶ 21. The other pseudonymous former student is "Jessica Roe." FAC ¶ 22. FCA adheres to a set of religious beliefs, which are found primarily in FCA's Statement of Faith and Sexual Purity Statement. *Id.* ¶ 95. "FCA's student leaders must affirm their agreement with these core religious beliefs and try to live consistent with those beliefs." *Id.* ¶ 3. However, FCA alleges that it "invite[s] all students to attend[,] participate in its meetings[,]" and be non-leadership members even if these students disagree with FCA's religious beliefs. *Id.* ¶¶ 2–3.

Defendants are the San Jose Unified School District Board of Education ("the District"); Superintendent Nancy Albarrán; Principal Herb Espiritu of Pioneer High School ("Pioneer"); and Peter Glasser, a teacher at Pioneer. FAC at 1. The District is sued only in its official capacity. FAC at 2. All Defendants other than the District ("individual Defendants") are sued in both their official and personal capacities. *Id.*

Below, the Court recounts Plaintiffs' allegations. Specifically, Plaintiffs allege that (1) the District derecognized FCA student groups; and (2) used the District's nondiscrimination policies as pretext for viewpoint discrimination. The Court then summarizes developments that occurred after the incidents alleged in the FAC. Notably, the COVID-19 pandemic has temporarily closed the District's schools, and Plaintiffs Doe and Roe have graduated high school.

---

[1] Defendants' motion to dismiss contains a notice of motion paginated separately from the supporting points and authorities. ECF No. 51. Civil Local Rule 7-2(b) provides that the notice of motion and points and authorities must be contained in one document with the same pagination.

Case No. 20-CV-02798-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

**1. The derecognition of FCA's student clubs given FCA's Sexual Purity Statement and the District's nondiscrimination policies**

Plaintiffs allege that "[t]he District has revoked recognition of the Student FCA Chapters because of their religious beliefs and speech." FAC at 3. Specifically, Plaintiffs allege that on April 23, 2019, Glasser "posted a copy of FCA's Statement of Faith and Sexual Purity Statement in his classroom with the caption, 'I am deeply saddened that a club on Pioneer's campus asks its members to affirm these statements. How do you feel?'" FAC ¶ 5.

The Sexual Purity Statement requires FCA student leaders to affirm that they will not "be[] involved in a lifestyle that does not conform to the FCA's Sexual Purity Statement." ECF No. 25-3 (2018–19 FCA Student Leader Application).[2] The Sexual Purity Statement describes "impure lifestyle[s]" as including "sex outside of marriage and homosexual acts." *Id.* at 1. The Sexual Purity Statement specifically provides:

> God desires His children to lead pure lives of holiness. The Bible is clear in teaching on sexual sin including sex outside of marriage and homosexual acts. *Neither heterosexual sex outside of marriage nor any homosexual act* constitute an alternative lifestyle acceptable to God.
>
> While upholding God's standard of holiness, FCA strongly affirms God's love and redemptive power in the individual who chooses to follow Him. FCA's desire is to encourage individuals to trust in Jesus and turn away from any impure lifestyle.
>
> 1. Will you conform to the FCA's Sexual Purity Policy? _____ Yes _____ No
>
> 2. Have you, or will you at this time commit to living a drug, alcohol and tobacco-free life? _____ Yes _____ No

---

[2] The Court considers FCA's Sexual Purity Statement as incorporated by reference. Courts may consider materials referenced in the complaint under the incorporation by reference doctrine, even if a plaintiff failed to attach those materials to the complaint. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). Here, the FAC repeatedly references the Sexual Purity Statement. *E.g.,* FAC ¶¶ 5, 50, 95, 98, 100. Defendants have attached the Sexual Purity Statement by filing a version of FCA's student leadership application that includes the Sexual Purity Statement. ECF No. 25-2 at 9. Although Plaintiffs object that the attached application was not used in the District during the relevant time, Plaintiffs "do not dispute the contents of the 'Sexual Purity Statement,' or that it bars individuals who engage in homosexual conduct." Reply at 9 n.4; *see* Opp'n at 25 (limited objection). Thus, the Court incorporates by reference the Sexual Purity Statement.

> As an officer, I will be accountable to the other officers, Huddle Coach(es) and FCA staff. I understand that *if I am found being involved in a lifestyle that does not conform to the FCA's Sexual Purity Statement*, or break my commitment to living a drug-, alcohol- and tobacco-free life, that *it means that I will need to step down from my leadership position* with the Fellowship of Christian Athletes. This does not mean that I am a bad person and that the FCA does not love me and want me involved; this is in order to protect the integrity of the ministry and to protect the ones to which we are ministering.

*Id.* (emphasis added). In sum, under the Sexual Purity Statement, FCA student leaders must "step down from [their] leadership position" if they engage in extramarital sex or "homosexual acts." Glasser displayed the Sexual Purity Statement in his classroom for a week. FAC ¶ 6.

On May 2, 2019, Principal Espiritu informed the student leaders of Pioneer's FCA club that the high school would no longer recognize the club. FAC ¶ 7. To explain his decision, Espiritu met with two FCA student leaders, praised their "patien[ce] and understanding throughout this process," and memorialized their conversation in an email to the students. ECF No. 25-1 (May 2, 2019 email). Espiritu cited the District's nondiscrimination policies as the basis for derecognizing the club. Espiritu summarized the policies as barring discrimination based on "sexual orientation," among other characteristics. Espiritu wrote:

> San José Unified requires all of its programs and activities to be free from discrimination based on gender, gender identity and expression, race, color, religion, ancestry, national origin, immigration status, ethnic group, pregnancy, marital or parental status, physical or mental disability, sexual orientation or the perception of one or more of such characteristics.

ECF No. 25-1. According to Plaintiffs, the specific nondiscrimination policies at issue are District Policy BP 0410 and District Policy 5145.3. FAC ¶ 114. These policies also list "sexual orientation" as a protected characteristic. Policy BP 0410 provides:

> The Governing Board is committed to equal opportunity for all individuals in district programs and activities. District programs, and activities, and practices *shall be free from discrimination based on* gender, gender identity and expression, race, color, religion, ancestry, national origin, immigration status, ethnic group, pregnancy, marital or parental status, physical or mental disability, *sexual orientation* or the perception of one or more of such characteristics. The Board

United States District Court
Northern District of California

shall promote programs which ensure that any discriminatory practices are eliminated in all district activities.

Any school employee who observes an incident of discrimination, harassment, intimidation, or bullying or to whom such an incident is reported shall report the incident to the Coordinator or principal, whether or not the victim files a complaint.

FAC ¶ 116 (emphasis added). Policy 5145.3 similarly provides:

All district programs and activities within a school under the jurisdiction of the superintendent of the school district *shall be free from discrimination*, including harassment, with respect to the actual or perceived ethnic group, religion, gender, gender identity, gender expression, color, race, ancestry, national origin, and physical or mental disability, age or *sexual orientation*.

The Governing Board desires to provide a safe school environment that allows all students *equal access to District programs and activities regardless of* actual or perceived ethnicity, religion, gender, gender identity, gender expression, color, race, ancestry, national origin, physical or mental disability, *sexual orientation*, or any other classification protected by law.

*Id.* ¶ 117 (emphasis added).

"Soon after[]" the FCA leaders' meeting with Espiritu, "District officials informed FCA student leaders at Leland [High School] and Willow Glen [High School] that schools in the District would no longer recognize the Student FCA Chapters." *Id.* ¶ 8. FCA's derecognition denied FCA student clubs certain benefits. These benefits included access to faculty advisors and Associated Student Body ("ASB") funds. *Id.* ¶ 55.

### 2. Nondiscrimination policies were allegedly pretext for discrimination, as evidenced by the District's recognition of other clubs and alleged harassment of FCA

Though the District cited its nondiscrimination policies in derecognizing FCA, Plaintiffs allege that the policies were "pretextual." FAC ¶ 91. Specifically, the District allegedly exempts student groups from its nondiscrimination policies "on an individualized basis." *Id.* Plaintiffs allege that "[t]he District recognizes, supports, and even sponsors student groups and activities that deny membership or leadership opportunities on the basis of students' belonging to enumerated classes. For example, the District and Pioneer sponsor and support numerous single-sex athletic teams." *Id.* Similarly, Plaintiffs allege that "the District has approved applications for

numerous noncurriculum-related student groups that have expressed gender, religious, or racial

membership or leadership requirements in their applications." *Id.* ¶ 92. As examples, Plaintiffs cite

the Big Sister/Little Sister club and the Black Student Union. *Id.*

Plaintiffs further allege that "[t]he District has approved of and facilitated attempts to

harass and intimidate FCA students." FAC at 16. Specifically, Plaintiffs allege that students and

two teachers at Pioneer have protested FCA and called FCA a discriminatory group.

As to alleged harassment from students, Plaintiffs claim that after the District derecognized

FCA, some students still opposed "FCA continuing to meet at Pioneer even as an unrecognized

student group." FAC ¶ 64. These students formed the Satanic Temple Club at Pioneer, which the

District then recognized. *Id.* ¶ 64.

On September 16, 2019, "students associated with the Satanic Temple Club passed out

flyers announcing the intent to gather directly outside of the meeting space for the Pioneer Student

FCA Chapter's meeting in order to denounce the FCA students' religious beliefs." *Id.* ¶ 65. On

October 23, 2019, "[t]he protesting students yelled at the FCA students as they were entering their

meeting and held signs disparaging their religious beliefs." *Id.* ¶ 67. Defendants allegedly did not

regulate the protest. *Id.* ¶¶ 65–67.

In addition, Plaintiffs complain that on November 6, 2019, student reporters from the

school newspaper entered the Pioneer FCA meeting "in a manner calculated to harass" FCA

students. *Id.* ¶ 68. During the 30-minute meeting, Plaintiffs allege that the student reporters took

hundreds of close-up photos of FCA students as they spoke. When FCA students complained to

Espiritu, Espiritu allegedly responded that FCA students "would have no presence in the yearbook

. . . if they did not allow the [student reporters] to take pictures at the FCA students' meetings." *Id.*

As for alleged harassment from teachers, Plaintiffs name Glasser (the teacher who posted

FCA's Sexual Purity Statement in his classroom) and an unnamed faculty member. FAC ¶ 73.

Plaintiffs allege that Glasser not only disparaged FCA in his classroom, but also tried to dissuade a

visiting athlete from speaking to Pioneer's FCA Chapter. FAC ¶ 74. The unnamed faculty member,

for his or her part, "encouraged and participated in demonstrations" against FCA. *Id.* ¶ 75.

Case No. 20-CV-02798-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

### 3. The District stops in-person instruction given the pandemic, and Plaintiffs Doe and Roe graduate Pioneer High School in June 2020.

In March 2020, the District stopped in-person instruction given the COVID-19 pandemic. McGee Decl. ¶ 8, ECF No. 42. Despite the pause in in-person instruction, "some student groups have continued to function during distance learning in a remote fashion." *Id.* ¶ 10. For instance, some students at Willow Glen and Pioneer high schools have organized "an online 'club rush' where student groups could be listed." *Id.* Moreover, some student groups have requested ASB funds, although that funding is currently frozen. *Id.*

The District "is making plans for an eventual reopening, but it cannot know with any certainty if and when it will reopen for this 2020–2021 school year." *Id.* ¶ 8.

In June 2020, Plaintiffs Jane Doe and Jessica Roe graduated Pioneer High School. McMahon Decl. ¶ 2, ECF No. 25-2.

### B. Procedural History

On April 22, 2020, Plaintiffs filed suit. ECF No. 1. On May 19, 2020, Plaintiffs filed the operative First Amended Complaint ("FAC"). ECF No. 14. The FAC pleads 12 related claims alleging violations of Plaintiffs' rights to free speech, free expressive association, free exercise, and equal protection. Specifically, Plaintiffs claim that Defendants (1) violated the Equal Access Act, 20 U.S.C. §§ 4071 *et seq.*; (2) committed viewpoint discrimination; (3) violated Plaintiffs' right of expressive association; (4) violated Plaintiffs' right to free exercise of religion and generally available benefits; (5) targeted Plaintiffs' religious beliefs; (6) violated FCA's internal autonomy; (7) committed denominational discrimination; (8) demonstrated hostility toward religion; (9) denied Plaintiffs equal protection of the laws under the Fourteenth Amendment; (10) compelled Plaintiffs' speech; (11) imposed unconstitutional conditions on benefits; and (12) retaliated against Plaintiffs' exercise of constitutional rights. FAC ¶¶ 122–238 (listing 12 claims).

All 12 claims are brought under 42 U.S.C. § 1983's private right of action. *Id.* All claims pray for injunctive relief, declaratory relief, and damages. *Id.* ¶¶ 131–32, 140–41, 153–54, 161–62, 173–74, 186–87, 194–95, 203–04, 210–11, 219–20, 227–28, 237–38; *id.* at 50 (prayer for relief).

United States District Court
Northern District of California

1    On August 10, 2020, Defendants filed the instant motion to dismiss. ECF No. 25 ("Mot.").

2  On September 8, 2020, Plaintiffs filed their opposition to the motion to dismiss. ECF No. 30

3  ("Opp'n"). On September 22, 2020, Defendants filed their reply supporting the motion to dismiss.

4  ECF No. 31 ("Reply").

5    Three related administrative motions followed. First, on December 2, 2020, Defendants

6  moved for leave to file supplemental evidence supporting their motion to dismiss. ECF No. 42.

7  Plaintiffs filed their opposition to this motion on December 7, 2020. ECF No. 45.

8    Second, on December 2, 2020, Plaintiffs also moved to file supplemental evidence

9  supporting their opposition to the motion to dismiss. ECF No. 43. Defendants have not filed a

10  response to this motion by Plaintiffs.[3]

11    Lastly, on December 11, 2020, Plaintiffs moved for leave to use pseudonyms for Plaintiffs

12  "Doe" and "Roe." ECF No. 46; *see also* ECF No. 3 (previous *ex parte* motion for same). On

13  December 15, 2020, Defendants filed their opposition to pseudonyms and asked the Court to

14  dismiss the FAC for failing to comply with Federal Rule of Civil Procedure 10(a). ECF No. 47.

15  **II.    LEGAL STANDARD**

16    **A.  Motion to Dismiss Under Rule 12(b)(1)**

17    A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) tests whether the

18  court has subject matter jurisdiction. Although lack of "statutory standing" requires dismissal for

19  failure to state a claim under Rule 12(b)(6), lack of Article III standing requires dismissal for want

20

---

21  [3] The two motions for leave to file supplemental evidence ask the Court to take judicial notice of
22  public documents pertaining to the District's school closures and student groups. ECF Nos. 42, 45.
23  The Court may take judicial notice of matters that are either "generally known within the trial
court's territorial jurisdiction" or "can be accurately and readily determined from sources whose
24  accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "Matters of public record" are
proper subjects of judicial notice. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001),
25  *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).
Thus, the Court GRANTS the two motions for leave to file supplemental evidence, ECF Nos. 42
26  and 43. However, to the extent any facts in documents subject to judicial notice are subject to
27  reasonable dispute, the Court will not take judicial notice of those facts. *Id.*

28

United States District Court
Northern District of California

of subject matter jurisdiction under Rule 12(b)(1). *See Nw. Requirements Utilities v. F.E.R.C.*, 798 F.3d 796, 808 (9th Cir. 2015) ("Unlike Article III standing, however, 'statutory standing' does not implicate our subject-matter jurisdiction." (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014))); *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). A Rule 12(b)(1) jurisdictional attack may be factual or facial. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

"[I]n a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id*. In resolving such an attack, unlike with a motion to dismiss under Rule 12(b)(6), a court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.* Moreover, the court "need not presume the truthfulness of the plaintiff's allegations." *Id.* Once the defendant has moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of establishing the court's jurisdiction. *See Chandler v. State Farm Mut. Auto Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

"In a facial attack," on the other hand, "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039. The court "resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

**B. Motion to Dismiss Under Rule 12(b)(6)**

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). The United States Supreme Court has held that Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content

Case No. 20-CV-02798-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

1    that allows the court to draw the reasonable inference that the defendant is liable for the

2    misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not

3    akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has

4    acted unlawfully." *Id*. (internal quotation marks omitted). For purposes of ruling on a Rule

5    12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s]

6    the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire &*

7    *Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The Court, however, need not "assume the

8    truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v.*

9    *Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (internal quotation marks omitted).

10    Additionally, mere "conclusory allegations of law and unwarranted inferences are insufficient to

11    defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

12    **C.  Leave to Amend**

13        If a court determines that a complaint should be dismissed, it must then decide whether to

14    grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend

15    "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule

16    15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v.*

17    *Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks

18    omitted). When dismissing a complaint for failure to state a claim, "a district court should grant

19    leave to amend even if no request to amend the pleading was made, unless it determines that the

20    pleading could not possibly be cured by the allegation of other facts." *Id*. at 1130 (internal

21    quotation marks omitted).

22        Accordingly, leave to amend generally shall be denied only if allowing amendment would

23    unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has

24    acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008). At the

25    same time, a court is justified in denying leave to amend when a plaintiff "repeated[ly] fail[s] to

26    cure deficiencies by amendments previously allowed." *See Carvalho v. Equifax Info. Servs., LLC*,

27    629 F.3d 876, 892 (9th Cir. 2010). Indeed, a "district court's discretion to deny leave to amend is

28

Case No. 20-CV-02798-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

1  particularly broad where plaintiff has previously amended the complaint." *Cafasso, U.S. ex rel. v.*

2  *Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011) (quotation marks omitted).

3  **D.  Standard for Allowing Party to Proceed Under Pseudonym**

4  "The normal presumption in litigation is that parties must use their real names." *Doe v.*

5  *Kamehameha Sch./Bernice Pauahi Bishop Estate*, 596 F.3d 1036, 1042 (9th Cir. 2010). However,

6  Ninth Circuit precedent "allow[s] parties to use pseudonyms in the 'unusual case' when

7  nondisclosure of the party's identity 'is necessary . . . to protect a person from harassment, injury,

8  ridicule or personal embarrassment.'" *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058,

9  1067–68 (9th Cir. 2000) (quoting *United States v. Doe*, 655 F.2d 920, 922 n.1 (9th Cir. 1981)).

10  Courts balance "the need for anonymity against the general presumption that parties' identities are

11  public information and the risk of unfairness to the opposing party." *Id.* at 1068 (citations omitted).

12  Courts applying this balancing test have recognized three situations allowing a plaintiff to proceed

13  anonymously: (1) when identification creates a risk of retaliatory physical or mental harm; (2)

14  when anonymity is necessary to preserve privacy in a matter of sensitive and highly personal

15  nature; and (3) when the anonymous party is compelled to admit his or her intention to engage in

16  illegal conduct, thereby risking criminal prosecution. *Id.* (internal quotation marks and citations

17  omitted).

18  **III.   DISCUSSION**

19  Plaintiffs are the Fellowship of Christian Athletes ("FCA") and two pseudonymous high

20  school students ("Doe" and "Roe") who were members of FCA but have since graduated.

21  Plaintiffs' First Amended Complaint ("FAC") pleads 12 related claims alleging violations of

22  Plaintiffs' rights to free speech, free expressive association, free exercise, and equal protection

23  under the Equal Access Act ("EAA"), 20 U.S.C. §§ 4071–74, and the First and Fourteenth

24  Amendments. *See* FAC at 31–49. All 12 claims are brought under 42 U.S.C. § 1983's private right

25  of action. All 12 claims pray for injunctive relief, declaratory relief, and damages.

26  Defendants are the San Jose Unified School District Board of Education ("the District");

27  Superintendent Nancy Albarrán; Principal Herb Espiritu of Pioneer High School ("Pioneer"); and

28
Case No. 20-CV-02798-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

Peter Glasser, a teacher at Pioneer. FAC at 1. The District is sued only in its official capacity. FAC at 2. All Defendants other than the District ("individual Defendants") are sued in both their official and personal capacities. *Id.*

Defendants move to dismiss the FAC on six grounds. First, Defendants argue that the FAC violates Federal Rule of Civil Procedure 10(a) by failing to disclose the identities of Plaintiffs Doe and Roe. Second, Defendants argue that the Court lacks jurisdiction over Plaintiffs' claims for prospective relief. Third, Defendants argue that in their official capacities, they are not "persons" subject to suit under 42 U.S.C. § 1983. Fourth, Defendants argue that under the Eleventh Amendment, Defendants are immune from suit in their official capacities. Fifth, Defendants argue that Plaintiffs fail to adequately allege that Defendants broke the law—and that regardless, the individual Defendants are entitled to qualified immunity. Lastly, Defendants argue that the Coverdell Teacher Protection Act, 20 U.S.C. § 7941 *et seq.*, shields the individual Defendants from damages.

The Court addresses each argument for dismissal in turn. Ultimately, the Court dismisses certain claims with leave to amend and certain claims with prejudice. Specifically, the Court (1) dismisses with leave to amend the FAC for violating Federal Rule of Civil Procedure 10(a) by failing to disclose the identities of Doe and Roe; (2) dismisses with prejudice all of Doe and Roe's claims for prospective relief for lack of jurisdiction; (3) dismisses with leave to amend all of FCA's claims for prospective relief for lack of jurisdiction; and (4) dismisses with prejudice all of Plaintiffs' monetary claims against Defendants in Defendants' official capacities. The Court need not address Defendants' fourth argument (Eleventh Amendment immunity) because none of the official-capacity claims withstand Defendants' first three arguments. Lastly, under binding Ninth Circuit precedent, Defendants' nondiscrimination policies are facially valid. However, Plaintiffs adequately allege as-applied monetary claims against individual Defendants in their personal capacities.

United States District Court
Northern District of California

Case No. 20-CV-02798-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

### A. The FAC violates Federal Rule of Civil Procedure 10(a) by failing to disclose the identities of pseudonymous Plaintiffs.

Defendants argue that the FAC should be dismissed because Plaintiffs Doe and Roe cannot proceed pseudonymously. ECF No. 47 at 6. Plaintiffs respond that pseudonyms are warranted because Doe and Roe "have a reasonable fear of both social stigma and physical harm." ECF No. 46 at 3. The Court agrees with Defendants.

As a general matter, "[a] district court has discretion in deciding whether to permit a party to proceed anonymously." *Advanced Textile*, 214 F.3d at 1067, 1068. The Court must balance the party's need for anonymity with the prejudice to the opposing party and the public's interest in knowing the party's identity. *Id.* at 1068. "In general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006).

Here, Plaintiffs fail to provide "compelling reasons" for proceeding pseudonymously. *Id.* Specifically, Plaintiffs fail to show that this is an "'unusual case' when nondisclosure of the party's identity 'is necessary . . . to protect a person from harassment, injury, ridicule or personal embarrassment.'" *Does I thru XXIII*, 214 F.3d at 1067–68 (quoting *Doe*, 655 F.2d at 922 n.1). Plaintiffs instead cite alleged harassment at their high school that ended when Doe and Roe graduated in June 2020, if not sooner. *See* ECF No. 46 at 3 (citing Roe Decl. ¶¶ 6–7 & Exhs. A & B, ECF No. 46-2; Doe Decl. ¶¶ 6–7 & Exhs. A & B, ECF No. 46-3).

Moreover, the exhibits that purportedly describe "just one of many incidents of personal attacks" instead describe a peaceful protest. Exhs. A & B (same in both declarations). The exhibits comprise a December 9, 2019 article in Pioneer's student newspaper. The article states that on December 4, 2019, "over twenty protesters gathered outside the [building] during the Wednesday FCA meeting, holding pro-LGBTQ signs." Exh. B. Principal Espirtu banned the protestors from "go[ing] in to protest," but allowed them to "go in and observe the meeting." *Id.* The article then mentions a protest organizer and an FCA member. The organizer states that protestors were "quiet

13

United States District Court
Northern District of California

United States District Court
Northern District of California

1    and peaceful . . . They simply stood still and held signs promoting love and acceptance." *Id.* Then,

2    the FCA member reportedly states that "ultimately . . . the protests *will not affect* the group's

3    meetings." *Id.* (emphasis added). Thus, the 13-month-old incident Plaintiffs cite fails to show that

4    "nondisclosure of [Doe and Roe's] identity 'is necessary . . . to protect a person from harassment,

5    injury, ridicule or personal embarrassment.'" *Does I thru XXIII*, 214 F.3d at 1067–68 (quoting

6    *Doe*, 655 F.2d at 922 n.1).

7         Nor do Plaintiffs plausibly allege future harassment. Plaintiffs' allegations are instead

8    vague and conclusory. Doe and Roe assert, for example, that "[they] fear that if [their] identit[ies]

9    became public, [they] would experience ostracism, harassment and threats from people in [their]

10   community." Roe Decl. ¶ 4; Doe Decl. ¶¶ 4 (same). Yet Doe and Roe do not aver any actual threat

11   or any specific people who would pose a threat. At most, Doe and Roe show that many in their

12   community disagree with their beliefs. Community disagreement and any resulting

13   "embarrassment or economic harm is not enough" to support a pseudonymous lawsuit. *Doe v.*

14   *Rostker*, 89 F.R.D. 158, 161-62 (N.D. Cal. 1981); *see also Doe v. NFL Enterprises*, LLC, No. 17-

15   CV-004960-WHA, 2017 WL 697420, at *2 (N.D. Cal. Feb. 22, 2017) (collecting cases denying

16   plaintiffs leave to proceed pseudonymously).

17        Doe and Roe have thus "cite[d] no actual threat of any harm against [them] *specifically*."

18   *NFL Enterprises*, 2017 WL 697420, at *2 (emphasis in original). Rather, like the pseudonymous

19   plaintiff in *NFL Enterprises*, Doe and Roe resort to citing harassment faced by others in far-flung

20   circumstances. For instance, Doe and Roe cite reports from 2008 that "the mayor of Fresno and a

21   prominent pastor received threats to their safety due to their support of Proposition 8." ECF No.

22   46 at 4 (citing Smith Decl. ¶ 4 & Exh. A, ECF No. 46-1). These reports are unavailing. If Plaintiffs

23   could proceed pseudonymously based on threats made over 12 years ago to different people in a

24   different location in different circumstances unrelated to this case, the "public's common law right

25   of access to judicial proceedings" would be a dead letter. *Does I thru XXIII*, 214 F.3d at 1068.

26        In addition, to the extent Doe and Roe risk embarrassment, Plaintiffs' own actions are

27   increasing that risk by boosting the profile of the instant case. Plaintiffs' counsel has advertised the

28
                                                    14

instant case on their website for months. Levine Decl. ¶ 11, ECF No. 47-1 (citing Christian Legal

Society, *Fellowship of Christian Athletes and San Jose Unified School District*,

https://www.christianlegalsociety.org/fcasjusd). Plaintiffs' counsel has also published on their

website a January 14, 2020 letter from Plaintiffs' counsel to Superintendent Albarrán about the

instant case. *Id.* These consistent efforts to generate publicity undermine Plaintiffs' assertion that

Doe and Roe need anonymity. Indeed, despite this publicity and the pendency of this case since

April 22, 2020, Plaintiffs have not filed declarations alleging ongoing harm that would support a

pseudonymous lawsuit. *Id.* In sum, the Court finds that Doe and Roe's fears of harm are indefinite

and unreasonable.

The Court further finds that pseudonymity has prejudiced and would continue to prejudice

Defendants. Specifically, Doe and Roe's pseudonymity impedes Defendants' ability to defend

themselves in this lawsuit. As Defendants aver, "Plaintiffs have still not revealed their identities to

Defendants, causing Defendants to have to guess in their motion to dismiss as to Plaintiffs'

identities." ECF No. 47 at 4 (citing Levine Decl. ¶ 3). This required guesswork may require the

parties and the Court to expend time and resources on disputes that are not present in the instant

case. For instance, without knowing Doe and Roe's identities, Defendants did not know for certain

whether Doe and Roe had graduated high school and thereby mooted their claims for prospective

relief. *See* Section B, *infra*. Thus, Defendants' motion to dismiss argument that Doe and Roe had

graduated from high school could only be supported "[u]pon information and belief," not actual

knowledge. McMahon Decl. ¶ 2. Only Plaintiffs' failure to dispute this fact in Plaintiffs'

opposition to the motion to dismiss has confirmed that Doe and Roe have in fact graduated.

Plaintiffs' anonymity also prejudices Defendants' response to Plaintiffs' monetary claims.

Without knowing who Doe and Roe are, Defendants cannot duly assess the magnitude of

Plaintiffs' alleged damages. This lack of information not only hampers Defendants' litigation of

the merits, but also attempts at mediation and settlement. ECF No. 47 at 5.

Accordingly, the Court DENIES Plaintiffs' motion to proceed pseudonymously and

dismisses the FAC as defective under Federal Rule of Civil Procedure 10(a). *See* Fed. R. Civ. P.

15

10(a) ("The title of the complaint must name all the parties . . . ."); *Kamehameha Sch./Bernice Pauahi Bishop Estate*, 596 F.3d at 1042, 1046 (affirming similar dismissal under Rule 10(a) with prejudice). However, the Court grants Plaintiffs leave to amend because allowing amendment would not unduly prejudice the opposing party, cause undue delay, or be futile. *See Leadsinger*, 512 F.3d at 532.

Below, the Court identifies several deficiencies in the FAC that must be cured by amendment and deficiencies for which amendment would be futile.

**B. The Court lacks jurisdiction to adjudicate Plaintiffs' claims for prospective relief.**

Plaintiffs seek prospective declaratory and injunctive relief ("prospective relief") in addition to damages. Defendants argue that the Court lacks jurisdiction to grant prospective relief. Defendants make two arguments against jurisdiction. First, that the graduation of Plaintiffs Doe and Roe moots their claims for prospective relief. Mot. at 2. Second, the pause in in-person instruction caused by the COVID-19 pandemic moots all Plaintiffs' claims for prospective relief. *Id.*

The Court agrees with Defendants' first argument. The Court need not reach Defendants' second argument, however, because the FAC has another jurisdictional defect: it fails to plead FCA's organizational standing. Thus, Doe and Roe's claims for prospective relief are moot, and the remaining Plaintiff, FCA, has failed to adequately allege standing for prospective relief. Thus, the Court lacks jurisdiction to adjudicate all Plaintiffs' claims for prospective relief. Below, the Court addresses the two jurisdictional defects in turn.

**1. Plaintiffs Doe and Roe's claims for prospective relief are moot.**

Given that the FAC fails to disclose the identities of Plaintiffs Doe and Roe, Defendants' motion to dismiss avers "[u]pon information and belief" that Doe and Roe have graduated. McMahon Decl. ¶ 2. Plaintiffs' opposition does not dispute that Doe and Roe have graduated. *See* Opp'n at 3–7 (discussing standing and ripeness). Defendants thus argue that Doe and Roe's claims for prospective relief are moot. Mot. at 2. Similarly, Plaintiffs do not argue otherwise.

Accordingly, the Court agrees with Defendants that Doe and Roe's claims for prospective

16

Case No. 20-CV-02798-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

relief are moot. "It is well-settled that once a student graduates, he no longer has a live case or controversy justifying declaratory and injunctive relief against a school's action or policy." *Cole v. Oroville Union High Sch. Dist.*, 228 F.3d 1092, 1098 (9th Cir. 2000); *accord, e.g.*, *Doe v. Madison Sch. Dist. No. 321*, 177 F.3d 789, 798 (9th Cir. 1999) (en banc) ("A student's graduation moots claims for declaratory and injunctive relief, but it does not moot claims for monetary damages."). Here, because Plaintiffs Doe and Roe graduated in June 2020, they cannot seek the declaratory or injunctive relief detailed in the FAC. *See* FAC at 50 (prayer for relief); McMahon Decl. ¶ 2 (District official averring that Doe and Roe graduated).

Thus, the Court dismisses Doe and Roe's claims for prospective relief. Moreover, the Court does so with prejudice. A district court may exercise "its 'particularly broad' discretion [to] deny[] leave to amend" where amendment "(1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 845 (9th Cir. 2020) (quoting *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006)). Here, amendment would be futile because "[i]t is well-settled that once a student graduates, he no longer has a live case or controversy justifying declaratory and injunctive relief against a school's action or policy." *Cole*, 228 F.3d at 1098.

**2. The FAC has fails to plead FCA's organizational standing for prospective relief.**

Given that Doe and Roe's claims for prospective relief are moot, the remaining claims for prospective relief are FCA's. As mentioned above, Defendants argue that all Plaintiffs' claims for prospective relief (including FCA's) are moot. Defendants argue that the District's pause in in-person instruction caused by the COVID-19 pandemic moots all claims for prospective relief. *See* Mot. at 2–6. Plaintiffs respond that a temporary pause in in-person instruction fails to moot FCA's claims. *See* Opp'n at 4–7.

The Court need not address these arguments because FCA's claims for prospective relief fail for a separate jurisdictional reason: Plaintiffs fail to plead that FCA has organizational standing to bring claims for prospective relief. The Court has an "independent obligation" to note this jurisdictional defect *sua sponte. E.g.*, *Allstate Ins. Co. v. Hughes*, 358 F.3d 1089, 1093 (9th

17

1   Cir. 2004). Specifically, FCA fails to plead standing on either of two available grounds. *See*

2   *generally Int'l Longshore & Warehouse Union v. Nelson*, 599 F. App'x 701 (9th Cir. 2015)

3   (summarizing caselaw).

4         First, an organization may have standing to sue on its own behalf. "An organization suing

5   on its own behalf can establish an injury when it suffered 'both a diversion of its resources and a

6   frustration of its mission.'" *Id.* at 701 (quoting *La Asociacion de Trabajadores de Lake Forest v.*

7   *City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010)). Here, FCA fails to allege that

8   Defendants' conduct either (1) caused FCA to divert resources; or (2) frustrated FCA's mission.

9   For instance, FCA alleges that its "chapters meet regularly to advance the religious mission of

10  FCA." Yet Plaintiffs concede that, before the pandemic closed the District's schools, FCA chapters

11  still met regularly on Pioneer's campus as a student group even after derecognition. *See, e.g.*, FAC

12  ¶¶ 64–77 (describing meetings after derecognition of group). FCA fails to allege that despite these

13  regular meetings, Defendants' conduct frustrated FCA's mission. Nor does FCA allege that,

14  despite these meetings, it needs prospective relief to prevent "both a diversion of its resources and

15  a frustration of its mission." *La Asociacion*, 624 F.3d at 1088. Thus, without allegations specific to

16  FCA's resources and mission, the Court cannot conclude that FCA has standing to seek

17  prospective relief on its own behalf. *See, e.g.*, *id.* (affirming that organization lacked standing

18  because it failed to assert "factual allegations regarding organizational standing in its complaint").

19        Second, an organization can sue on behalf of its members. "[A]n association has standing

20  to bring suit on behalf of its members when: [1] its members would otherwise have standing to sue

21  in their own right; [2] the interests it seeks to protect are germane to the organization's purpose;

22  and [3] neither the claim asserted nor the relief requested requires the participation of individual

23  members in the lawsuit." *Id.* at 702 (quoting *Hunt v. Wash. State Apple Advertising Comm'n*, 432

24  U.S. 333, 343 (1977)). To satisfy these elements, it is not enough to make "general allegations in

25  [the] complaint asserting that [plaintiff's] members would suffer harm." *Associated Gen.*

26  *Contractors of Am., San Diego Chapter, Inc. v. California Dep't of Transp.*, 713 F.3d 1187, 1195

27  (9th Cir. 2013); *accord, e.g.*, *Swanson Grp. Mfg. LLC v. Jewell*, 790 F.3d 235, 244 (D.C. Cir.

28

Case No. 20-CV-02798-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

2015) ("[A] statistical probability of injury to an unnamed member is insufficient to confer standing on the organizations."). Rather, to seek prospective relief on behalf of its members, FCA must plead "specific allegations establishing that at least one *identified member . . .* would suffer harm." *Associated Gen. Contractors*, 713 F.3d at 1194 (emphasis in original) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009)).

Here, the only "identified member[s]" of FCA are pseudonymous Plaintiffs Doe and Roe. As the Court explained in the previous Section, Doe and Roe lack standing to seek prospective relief because they have already graduated. Thus, they are not members who "would suffer harm" and lend FCA standing to seek prospective relief on behalf of its members. *Associated Gen. Contractors*, 713 F.3d at 1194 (quoting *Summers*, 555 U.S. at 498).

Accordingly, the Court dismisses FCA's claims for prospective relief. However, because Plaintiffs could allege additional allegations that support FCA's organizational standing, the Court grants leave to amend as to FCA's claims for prospective relief. *See Leadsinger*, 512 F.3d at 532.

**C.  In their official capacities, the Defendants are not "person[s]" subject to suit under 42 U.S.C. § 1983.**

Plaintiffs' remaining claims are for monetary relief against Defendants. This section addresses the monetary claims against Defendants in Defendants' official capacities. The following two sections address the monetary claims against the individual Defendants in their personal capacities.

Defendants argue that all the official-capacity claims must be dismissed. Specifically, Defendants argue that (1) the District is not a "person" subject to suit under 42 U.S.C. § 1983; and (2) the Eleventh Amendment bars suit against the individual Defendants in their official capacities. Mot. at 19–20. Plaintiffs respond that (1) they technically did not sue the District, but the District's governing body; and (2) Congress has abrogated Eleventh Amendment immunity for Plaintiffs' Equal Access Act claim. Opp'n at 7–8.

The Court agrees with Defendants that all the official-capacity claims must be dismissed. Plaintiffs may not sue the District under 42 U.S.C. § 1983. The Ninth Circuit has "held that a

Case No. 20-CV-02798-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

California school district and county office of education are arms of the state." *Stoner v. Santa Clara Cty. Office of Educ.*, 502 F.3d 1116, 1122 (9th Cir. 2007) (citing *Belanger v. Madera Unified Sch. Dist.*, 963 F.2d 248, 254 (9th Cir. 1992), and *Eaglesmith v. Ward*, 73 F.3d 857, 860 (9th Cir. 1996)). An entity that is an "arm-of-the-state" is "not a 'person' for purposes of 42 U.S.C. § 1983." *Id*. Thus, under settled Ninth Circuit precedent, California school districts such as the District are not "persons" subject to suit under § 1983.

Plaintiffs respond that technically, they named the San Jose Unified School District Board of Education as a Defendant, not the District itself. Opp'n at 8. Yet Plaintiffs draw a distinction without a difference. To sue the District's Board of Education is to sue the District, which is an arm of the state. California law makes clear that the Board is the District for the purposes of litigation. *See, e.g.*, Cal. Educ. Code §§ 35010(a) ("Every school district shall be under the control of a board of school trustees or a board of education"), 35162 ("In the name by which the district is designated the governing board may sue and be sued" ). Thus, Plaintiffs cannot use artful pleading to circumvent § 1983's bar to suing an arm of the state.

Moreover, Plaintiffs cannot sue the individual Defendants' in their official capacities. The individual Defendants are District officials: Superintendent Nancy Albarrán; Principal Herb Espiritu of Pioneer High School; and Peter Glasser, a teacher at Pioneer High School. All 12 of Plaintiffs' claims in the instant case are 42 U.S.C. § 1983 claims. Thus, § 1983 is Plaintiffs' only cause of action against the individual Defendants in their official capacities. FAC ¶¶ 122–229. Yet as the Supreme Court held more than 30 years ago, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). The reason is that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Cole, 228 F.3d at 1100 (quoting *Will*, 491 U.S. at 71). Thus, none of Plaintiffs' claims can proceed against the individual Defendants in their official capacities.

The Court need not address the parties' Eleventh Amendment immunity arguments because Plaintiffs lack a cause of action to sue Defendants in Defendants' official capacities. As the Ninth

United States District Court
Northern District of California

1    Circuit has explained, "[t]he ability to bring an action against a state is governed, of course, not

2    only by sovereign immunity, but also by whether the statute itself creates a cause of action against

3    a state." *Pittman v. Oregon, Employment Dep't*, 509 F.3d 1065, 1071–72 (9th Cir. 2007). "[T]he

4    two concepts are analytically distinct." *E.g.*, *Estate of Lagano v. Bergen Cty. Prosecutor's Office*,

5    769 F.3d 850, 857 (3d Cir. 2014). Here, Plaintiffs' cause of action against Defendants is 42 U.S.C.

6    § 1983. FAC ¶¶ 122–229 (citing § 1983 for each claim).[4] Section 1983's cause of action only

7    reaches "every *person*" who acts under color of law to deprive federal rights. 42 U.S.C. § 1983

8    (emphasis added). Neither the individual Defendants in their official capacities nor the District are

9    "person[s]" subject to suit. *See, e.g.*, *Will*, 491 U.S. at 71 ("[N]either a State nor its officials acting

10   in their official capacities are "persons" under § 1983.").

11   Accordingly, the Court dismisses all of Plaintiffs' claims against Defendants in Defendants'

12   official capacities. Moreover, because § 1983 claims against Defendants in their official capacities

13   would be futile as a matter of law, the Court dismisses these claims with prejudice. *See*

14   *Leadsinger*, 512 F.3d at 532.

15   **D. Under binding Ninth Circuit precedent, Plaintiffs' as-applied monetary claims against individual Defendants in their personal capacities survive the motion to dismiss.**

16   The Court next addresses Plaintiffs' claims for monetary relief against the individual

17   Defendants in their personal capacities. *See* FAC ¶¶ 122–238. Defendants make two arguments for

18   dismissing these claims. First, Defendants argue that "this case is governed by the student

19   organization limited public forum analysis" in three binding precedents: *Christian Legal Society v.*

20   *Martinez*, 561 U.S. 661 (2010); *Alpha Delta Chi-Delta Chapter v. Reed*, 648 F.3d 790 (9th Cir.

21

22   ─────────────────

23   [4] In their Opposition, Plaintiffs also cite "the judge-made cause of action recognized in *Ex parte*

24   *Young*, 209 U.S. 123 (1908), which permits courts of equity to enjoin enforcement of state statutes
     that violate the Constitution or conflict with other federal laws." *Moore v. Urquhart*, 899 F.3d

25   1094, 1103 (9th Cir. 2018); *see* Opp'n at 8. However, Plaintiffs fail to invoke *Ex parte Young* in
     the FAC. Nor would *Ex parte Young* allow Plaintiffs to sue for damages. The *Ex parte Young*

26   cause of action is available only for declaratory and injunctive relief. *See Moore*, 899 F.3d at 1103

27   ("Plaintiffs would be required to proceed under 42 U.S.C. § 1983 if they sought to recover money
     damages.").

28

Case No. 20-CV-02798-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

2011); and *Truth v. Kent School District*, 542 F.3d 634 (9th Cir. 2008), *overruled on other grounds by Los Angeles County v. Humphries*, 562 U.S. 29 (2010). Reply at 4–7. Second, Defendants argue that the individual Defendants are entitled to qualified immunity. *See* Mot. at 13–16; Reply at 12.

The Court agrees with Defendants to a point. The Ninth Circuit's precedents *Alpha Delta* and *Truth* do control here. Indeed, Plaintiffs rely on the cases too. *See* Opp'n at 14–16, 19 (challenging nondiscrimination policies as-applied). The cases analyze the same overarching legal theories advanced by Plaintiffs here. *See Alpha Delta*, 648 F.3d at 805 (analyzing free speech, expressive association, free exercise, and equal protection); *Truth*, 542 F.3d at 651 (analyzing EAA, free exercise, Establishment Clause, and equal protection). *Alpha Delta* and *Truth* also confirm that the District's nondiscrimination policies are facially valid. *See Alpha Delta*, 648 F.3d at 800–03 (analyzing nondiscrimination policy given *Truth*).

Yet in both cases, the Ninth Circuit also held that a "triable issue of fact" exists where a challenged nondiscrimination policy *as applied* allegedly "exempt[s] certain student groups" but not others. *Id.* at 804. Here, Plaintiffs likewise allege that the District's nondiscrimination policy is "pretextual" because Defendants exempt groups "on an individualized basis." FAC ¶ 91. Thus, because the Court must "accept the factual allegations in the complaint as true" on a motion to dismiss, *Manzarek*, 519 F.3d at 1031, *Alpha Delta* and *Truth* require the Court to deny Defendants' motion to dismiss Plaintiffs' monetary claims against the individual Defendants only as to Plaintiffs' as-applied challenge.

The Court's analysis below proceeds in two steps. First, the Court explains why the District's nondiscrimination policies are facially valid. Second, the Court explains why Plaintiffs' as-applied challenge to those policies survives the motion to dismiss.

### 1. To the extent Plaintiffs allege that the nondiscrimination policies are facially invalid, the Court dismisses such allegations with prejudice.

The District's nondiscrimination policies are facially valid under *Alpha Delta* and *Truth*. In the Ninth Circuit precedent *Alpha Delta*, two Christian fraternities and their members appealed a grant of summary judgment for San Diego State University. *See Alpha Delta*, 648 F.3d at 795–96.

Case No. 20-CV-02798-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

San Diego State had repeatedly denied the fraternities official recognition "because of [the fraternities'] requirement that their members and officers profess a specific religious belief, namely, Christianity." *Id.* That religious requirement violated nondiscrimination policies, which proscribed discrimination on the basis of enumerated grounds such as sexual orientation. *Id.*

The *Alpha Delta* fraternities, like Plaintiffs here, appealed a broad set of related claims. The fraternities argued that (1) the nondiscrimination policies violated the fraternities' rights to free speech and expressive association; and (2) San Diego State was "targeting [the fraternities] because of their religious beliefs in violation of their right to" free exercise and equal protection. *Id.* at 800, 804. The district court granted summary judgment to San Diego State on all claims. On appeal, the Ninth Circuit affirmed in part and reversed in part the summary judgment.

The Ninth Circuit affirmed the summary judgment as to validity of the nondiscrimination policies. The Ninth Circuit held that the nondiscrimination policies were facially "reasonable and viewpoint-neutral" under U.S. Supreme Court precedent. *Id.* at 801–03 (citing *Roberts v. U.S. Jaycees*, 468 U.S. 609, 623–24 (1984), and *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston*, 515 U.S. 557, 572 (1995)).

The *Alpha Delta* Court further explained that its conclusion tracked the Ninth Circuit's decision in *Truth*. *See id.* at 801–02 (discussing *Truth*, 542 F.3d 634). There, a Christian high school organization also alleged claims similar to those in *Alpha Delta* and the instant case— including a claim under the Equal Access Act ("EAA"). *See id.* at 802 & n.5 (discussing EAA). The *Alpha Delta* Court explained that "the Equal Access Act, like the First Amendment, forbids 'denial of equal access, or fair opportunity, or discrimination' based on the content (or viewpoint) of a group's speech." *Id.* Thus, whether plaintiffs raised EAA claims or other claims, plaintiffs could not facially challenge "a nondiscrimination policy prohibiting exclusion on enumerated grounds." *Id.* at 801.

Here too, the Plaintiffs cannot facially challenge the District's nondiscrimination policies, which simply "prohibit[] exclusion on enumerated grounds." *Id.* To the extent Plaintiffs argue that the District's nondiscrimination policies are facially invalid, Plaintiffs' argument is foreclosed by

Case No. 20-CV-02798-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

*Alpha Delta* and *Truth*. Those precedents' nondiscrimination policies parallel those here. All the policies ban discrimination based on enumerated grounds, including sexual orientation:

- In *Alpha Delta*, the nondiscrimination policy derecognized any group "which discriminates on the basis of . . . sexual orientation." 648 F.3d at 796.

- In *Truth*, the nondiscrimination policy proscribed discrimination "regardless of . . . sexual orientation." 542 F.3d at 640.

- Here, Policy BP 0410 proscribes "discrimination based on . . . sexual orientation." FAC ¶ 116. Similarly, Policy 5145.3 proscribes "discrimination . . . with respect to . . . sexual orientation." *Id.* ¶ 117.

As in *Alpha Delta* and *Truth*, the nondiscrimination policies here are facially valid. *See Alpha Delta*, 648 F.3d at 805 (rejecting plaintiffs' free speech, expressive association, free exercise, and equal protection arguments); *Truth*, 542 F.3d at 651 (rejecting EAA and First Amendment arguments). Any allegation to the contrary would be legally futile under these binding precedents.

Thus, to the extent that Plaintiffs allege that the District's nondiscrimination policies are facially invalid, the Court dismisses those allegations with prejudice. *See Leadsinger*, 512 F.3d at 532. These allegations are found in all 12 claims in the FAC. *See, e.g.*, FAC ¶ 129 (allegation against actions "taken pursuant to official policy" repeated throughout FAC), 215 (alleging that nondiscrimination policies compel speech), 229 (incorporating other allegations by reference).

### 2. Under binding Ninth Circuit precedents, Plaintiffs adequately plead an as-applied challenge to Defendants' facially valid nondiscrimination policies.

Although the District's nondiscrimination policies are facially valid, Plaintiffs adequately plead an as-applied challenge to those policies under *Alpha Delta* and *Truth*. The Court reaches this conclusion in three parts. First, the Court addresses the first element of overcoming qualified immunity: that "the facts alleged, taken in the light most favorable to the party asserting the injury, show that the official's conduct violated a constitutional [or statutory] right." *Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1100 (9th Cir. 2011) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Second, the Court addresses the other element of overcoming qualified immunity: that the right at issue "was clearly established 'in light of the specific context of the case' at the time of the alleged misconduct." *Id.* (quoting *Saucier*, 533 U.S. at 201). Lastly, the Court explains why the

24

Coverdell Teacher Protection Act does not shield the individual Defendants from damages on a motion to dismiss.

### a. Plaintiffs adequately plead that Defendants' application of nondiscrimination policies violated Plaintiffs' rights.

The individual Defendants argue that they are entitled to qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To overcome qualified immunity, Plaintiffs must first show that "the facts alleged, taken in the light most favorable to the party asserting the injury, show that the official's conduct violated a constitutional [or statutory] right." *Clairmont*, 632 F.3d at 1100. Plaintiffs' allegations of as-applied viewpoint discrimination make that showing here. Specifically, *Alpha Delta* and *Truth* show that the nonuniform application of facially valid nondiscrimination policies violates Plaintiffs' rights.

In *Alpha Delta*, the Ninth Circuit reversed in part the summary judgment for San Diego State. The *Alpha Delta* Court reasoned that "[a] nondiscrimination policy that is viewpoint neutral on its face may still be unconstitutional if not applied uniformly." *Alpha Delta*, 648 F.3d at 803. For support, the *Alpha Delta* Court relied on *Truth*. In *Truth*, the Christian high school organization "raised a triable issue of fact" by "alleg[ing] that the school district provided waivers to [the Men's Honor Club and Girl's Honor Club] while denying them to others, and that decision was made on the basis of religion or the religious content of speech." *Id.* (alterations in original omitted) (quoting *Truth*, 542 F.3d at 648). The *Truth* Court therefore reversed the district court's summary judgment and allowed plaintiffs' claims to proceed to trial under the EAA, Free Exercise Clause, Establishment Clause, and Equal Protection Clause. *Truth*, 542 F.3d at 651.

As in *Truth*, the *Alpha Delta* plaintiffs alleged that "some officially recognized groups appear to discriminate on prohibited grounds." *Alpha Delta*, 648 F.3d at 804. "For instance, the African Student Drama Association's constitution limits its leadership positions to students from

25

United States District Court
Northern District of California

Africa." *Id.*[5] Thus, the Ninth Circuit held that "[a]s in *Truth*, the evidence that some student groups have been granted an exemption from the nondiscrimination policy raises a triable issue of fact." *Id.*

So too here. Plaintiffs allege that the District's nondiscrimination policy is "pretextual" because Defendants exempt groups "on an individualized basis." FAC ¶ 91; *see id.* ¶ 136 (same allegation). Plaintiffs specifically cite "numerous single-sex athletic teams," the Big Sister/Little Sister club, and the Black Student Union. *Id.* ¶¶ 91–92. Plaintiffs allege that these recognized student groups "express[] gender, religious, or facial membership or leadership requirements in their applications." *Id.* ¶ 92. Similarly, *Alpha Delta* and *Truth* expressly cited membership restrictions for the "Men's Honor Club," "Girl's Honor Club," and "African Student Drama Association" as examples of "exemption[s] from the nondiscrimination policy" that raised a triable issue of fact. *Alpha Delta*, 648 F.3d at 803–04 (quoting *Truth*, 542 F.3d at 648).

Just as those allegedly selective exemptions required a trial in *Alpha Delta* and *Truth*, similar allegations here require that Plaintiffs' as-applied challenge survive a motion to dismiss. At the motion to dismiss stage, the Court must accept the FAC's factual allegations as true. *See Manzarek*, 519 F.3d at 1031. Thus, Plaintiffs' allegations satisfy the first element of overcoming qualified immunity: that "the facts alleged, taken in the light most favorable to the party asserting the injury, show that the official's conduct violated a constitutional [or statutory] right." *Clairmont*, 632 F.3d at 1100.

> **b. Plaintiffs adequately plead that Defendants violated "clearly established" rights.**

Having determined that the FAC adequately pleads an as-applied challenge to the District's

---

[5] *Alpha Delta* makes clear that a student group violates a valid nondiscrimination policy if the group "limits its leadership positions to students" based on enumerated characteristics. *Alpha Delta*, 648 F.3d at 804; *accord id.* at 796 (discussing nondiscrimination policy for "appointed or elected student officer positions"), 803 (discussing "groups, like [p]laintiffs, [that] restrict membership *or eligibility to hold office* based on religious belief" (emphasis added)). Thus, Plaintiffs are incorrect that *Alpha Delta* and *Truth* exempt FCA's leadership requirements from the District's nondiscrimination policies. *See* Opp'n at 15.

Case No. 20-CV-02798-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

nondiscrimination policies, the Court now turns to the second prong of the qualified immunity analysis. Under this second prong, the Court considers whether the "contours" of Plaintiffs' right to uniformly applied policies was "'sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "Whether the law was clearly established is an objective standard; the defendant's 'subjective understanding of the constitutionality of his or her conduct is irrelevant.'" *Clairmont*, 632 F.3d at 1109 (quoting *Fogel v. Collins*, 531 F.3d 824, 833 (9th Cir. 2008)).

Even so, qualified immunity is designed "to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Saucier*, 533 U.S. at 206. Thus, the key question is whether existing law at the time of Defendants' alleged conduct provided Defendants "fair notice" that as-applied viewpoint discrimination against a high school religious group was unlawful. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). In answering this question, the Court bears in mind that "'closely analogous preexisting case law is not required to show that a right was clearly established.'" *Robinson v. York*, 566 F.3d 817, 826 (9th Cir. 2009) (quoting *Hufford v. McEnaney*, 249 F.3d 1142, 1148 (9th Cir. 2001)). "[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances" if the claimed right is defined at an appropriately low "level of generality." *Hope*, 536 U.S. at 741; *Anderson*, 483 U.S. at 639.

Here, *Alpha Delta* and *Truth* clearly established that viewpoint-discriminatory application of a valid nondiscrimination policy violates the First Amendment, Fourteenth Amendment, and the EAA. The Ninth Circuit decided *Alpha Delta* and *Truth* in 2011 and 2008, respectively—years before Defendants began their allegedly discriminatory conduct towards Plaintiffs in April 2019. *See* FAC ¶ 5 (alleging Glasser posted Sexual Purity Statement on April 23, 2019). Moreover, as detailed above, *Alpha Delta* and *Truth* are "closely analogous preexisting case law" for the instant case. *Robinson*, 566 F.3d at 826 (quoting *Hufford*, 249 F.3d at 1148). In *Truth*, the Ninth Circuit reversed the district court's summary judgment against the *Truth* plaintiffs who—like Plaintiffs here—were a Christian high school organization and its members. *Truth*, 542 F.3d at 651. The

27

Ninth Circuit reasoned that the *Truth* plaintiffs' had "alleged that the school district provided waivers to [the Men's Honor Club and Girl's Honor Club] while denying them to others, and that decision was made on the basis of religion or the religious content of speech." *Id.* (alterations in original omitted) (quoting *Truth*, 542 F.3d at 648). The *Truth* plaintiffs, like Plaintiffs here, raised claims under the First Amendment, Fourteenth Amendment, and EAA. *Truth*, 542 F.3d at 651.

The *Alpha Delta* plaintiffs—like the *Truth* plaintiffs and Plaintiffs here—raised claims under various First Amendment and Fourteenth Amendment theories such as free speech, expressive association, free exercise, and equal protection. *Alpha Delta*, 648 F.3d at 805. The *Alpha Delta* Court also reversed the district court's summary judgment against Christian fraternities who had made allegations like those in *Truth*. *Id.* The *Alpha Delta* Court cited allegations that "some officially recognized groups appear to discriminate on prohibited grounds." *Id.* at 804. As an example, the Ninth Circuit specified "the African Student Drama Association's constitution limit[ing] its leadership positions to students from Africa." *Id.* Thus, the *Alpha Delta* Court held that "[a]s in *Truth*, the evidence that some student groups have been granted an exemption from the nondiscrimination policy raises a triable issue of fact." *Id.*

Similarly here, Plaintiffs allege that the District's nondiscrimination policy is "pretextual" because Defendants exempt groups "on an individualized basis." FAC ¶ 91; *see id.* ¶ 136 (same allegation). Plaintiffs specifically cite recognized groups that allegedly exclude members or leaders based on gender, religion, or race. FAC ¶¶ 91–92. These groups allegedly include the Big Sister/Little Sister club—which is closely analogous to the Girl's Honor Club in *Truth*—and the Black Student Union—which is closely analogous to the African Student Drama Association in *Alpha Delta*. Moreover, at the motion to dismiss stage, the Court must accept the FAC's factual allegations as true. *See Manzarek*, 519 F.3d at 1031. Thus, Plaintiffs have adequately pled violations of clearly established law under *Alpha Delta* and *Truth*.

Accordingly, the Court rejects Defendants' argument that the individual Defendants are entitled to qualified immunity.

Case No. 20-CV-02798-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

### c. The Coverdell Teacher Protection Act does not shield the individual Defendants from damages on a motion to dismiss.

Aside from qualified immunity, the individual Defendants' other asserted defense to damages is the Coverdell Teacher Protection Act, 20 U.S.C. § 7941 *et seq.* ("the Act"). Defendants argue that the Act shields the individual Defendants from damages, whether compensatory or punitive. Defendants specifically cite 20 U.S.C. § 7946(a), which provides that "no teacher in a school shall be liable for harm caused by an act or omission of the teacher on behalf of the school" on five conditions. In response, Plaintiffs argue that Defendants fail to meet one key condition: that "the harm was not caused by willful or criminal misconduct, gross negligence, reckless misconduct, or a conscious, flagrant indifference to the rights or safety of the individual harmed by the teacher." *Id.* § 7946(a)(4). The Court agrees with Plaintiffs.

The FAC alleges that "[a]ll actions performed by Defendants as alleged herein were malicious, oppressive, and in reckless disregard for Plaintiffs' rights." FAC ¶ 120. Evidencing this allegedly reckless conduct is Defendants' nonuniform application of facially valid nondiscrimination policies. Plaintiffs specifically allege that Defendants have exempted from those policies several other student groups, but not FCA. FAC ¶¶ 91–92. At the motion to dismiss stage, the Court must "accept [these] factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek*, 519 F.3d at 1031. Thus, at the motion to dismiss stage, the Court cannot conclude that the Act shields Defendants from liability.

Defendants' only counterargument contravenes the plain text of the Act. Defendants argue that the Act "on its face[] applies to more than negligent failures to act, and also applies to intentional acts." Reply at 13. As support, Defendants cursorily note that the Act "applies to both 'acts and omissions.'" *Id.* (original alteration omitted) (quoting 20 U.S.C. § 7946(a)). Yet the statutory phrase "acts and omissions" says nothing about the *mens rea* behind those acts and omissions. The rest of the Act plainly states that Defendants may still be liable for "willful or criminal misconduct, gross negligence, reckless misconduct, or a conscious, flagrant indifference." 20 U.S.C. § 7946(a)(4).

29

In sum, Defendants' arguments against Plaintiffs' as-applied personal-capacity claims for damages are unavailing. Accordingly, the Court DENIES Defendants' motion to dismiss Plaintiffs' as-applied monetary claims against the individual Defendants in their personal capacities. Going forward, the parties should consider "whether [Defendants] ha[ve] (1) exempted certain student groups from the nondiscrimination polic[ies]; and (2) declined to grant Plaintiffs such an exemption because of Plaintiffs' religious viewpoint." *Id.* at 804. These considerations may be relevant to all the claims in the FAC, which resemble those in *Alpha Delta* and *Truth*. *Compare, e.g.*, FAC ¶¶ 127, 136, 148, 158, 168 (alleging selective enforcement of nondiscrimination policies), *with Alpha Delta*, 648 F.3d at 804 (same allegations supporting claims under free speech; freedom of expressive association; free exercise; and equal protection), *and Truth*, 542 F.3d at 651 (same allegations supporting claims under EAA; free exercise; Establishment Clause; and equal protection).

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Defendants' motion to dismiss the First Amended Complaint. Specifically, the Court GRANTS the motion to dismiss the following with leave to amend:

- All of the FAC for violating Federal Rule of Civil Procedure 10(a) by failing to disclose the identities of Doe and Roe.
- All of FCA's claims for prospective relief for lack of jurisdiction.

The Court GRANTS the motion to dismiss with prejudice as to the following:

- All of Doe and Roe's claims for prospective relief for lack of jurisdiction.
- All of Plaintiffs' monetary claims against Defendants in Defendants' official capacities.
- All of Plaintiffs' claims that the District's nondiscrimination policies are facially invalid.

The Court DENIES the motion to dismiss as to Plaintiffs' as-applied monetary claims against the individual Defendants in their personal capacities.

Should Plaintiffs elect to file a second amended complaint curing the deficiencies identified herein, Plaintiffs shall do so within 21 days of the date of this Order. Failure to meet the

Case No. 20-CV-02798-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

21 day deadline to file a second amended complaint or failure to cure the deficiencies identified in (1) this order; (2) Defendants' opposition to Plaintiffs' proceeding pseudonymously; or (3) Defendants' motion to dismiss will result in dismissal of the deficient claims with prejudice. Plaintiffs may not add new causes of action or parties without leave of the Court or stipulation of the parties pursuant to Federal Rule of Civil Procedure 15. Plaintiffs are directed to file a redlined complaint comparing the FAC to any second amended complaint as an attachment to Plaintiffs' second amended complaint.

**IT IS SO ORDERED.**

Dated: January 28, 2021

LUCY H. KOH
United States District Judge

Case No. 20-CV-02798-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS