AMY R. LEVINE, State Bar No. 160743
alevine@DWKesq.com
WILLIAM B. TUNICK, State Bar No. 245481
wtunick@DWKesq.com
KASMIRA M. BROUGH, State Bar No. 308791
kbrough@DWKesq.com
Dannis Woliver Kelley
2087 Addison Street, 2nd Floor
Berkeley, CA  94704
Telephone: 510.345.6000
Facsimile: 510.345.6100

Attorneys for Defendants
NANCY ALBARRAN, HERB ESPIRITU and PETER
GLASSER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABTH SINCLAIR, CHARLOTTE KLARKE, and FELLOWSHIP OF CHRISTIAN ATHLETES, an Oklahoma corporation, <br><br> Plaintiffs, <br><br> v. <br><br> NANCY ALBARRAN, in her official and personal capacity, HERB ESPIRITU, in his official and personal capacity, and PETER GLASSER, in his official and personal capacity, <br><br> Defendants. | Case No.  5:20-cv-2798-LHK <br><br> **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS AND / OR STRIKE PORTIONS OF THE SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Hearing Date:   July 22, 2021 <br> Hearing Time:  1:30 p.m. <br> Ctrm.:   8, 4th Floor <br> Judge:   Honorable Lucy H. Koh <br><br> Second Amended Complaint Filed: February 18, 2021 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on July 22, 2021, at 1:30 p.m., or as soon thereafter as counsel may be heard, before The Honorable Lucy H. Koh, in Courtroom 8, Fourth Floor, of the San Jose Courthouse, 280 South 1st Street, San Jose, California, 95113, Defendants Nancy Albarran, Herb Espiritu, and Peter Glasser, will and hereby do move for an order dismissing, with prejudice, the Second Amended Complaint filed by Plaintiffs in the above-captioned matter, as set forth in the following Memorandum of Points and Authorities.

In addition, or in the alternative, Defendants respectfully move this Court to strike the following portions of Plaintiffs' Second Amended Complaint ("SAC") pursuant to Rule 12(f):

1

DANNIS WOLIVER KELLEY
2087 ADDISON STREET, 2ND FLOOR
BERKELEY, CA  94704

DWK DMS 3681453v2

**DEFENDANTS' MOTION TO DISMISS / STRIKE SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DANNIS WOLIVER KELLEY
2087 ADDISON STREET, 2ND FLOOR
BERKELEY, CA 94704

- Paragraph 7: Strike "previously used by a different FCA region", and "Mr. Glasser's display was intended to and had the effect of disparaging the religious beliefs of FCA and students who share those beliefs".

- Paragraph 9: Strike "officials, including", "no discriminatory statements or acts were attributed to any member of a Student FCA Chapter", and "Defendants Espiritu, Albarran, and Glasser were each involved in the decision to derecognize the Student FCA Chapters in the District."

- Paragraph 13: Strike "working with" and "for the purpose of targeting FCA students because of their religious beliefs and viewpoints."

- Paragraph 14: Strike "Similarly, correspondence shows that Defendants knew the purpose of the club was to target FCA students."

- Paragraph 18: Strike "or report".

- Paragraph 40: Strike "and Student FCA Chapters require" [Dkt. 54-1, at 12:128].

- Paragraph 57: Strike entire Paragraph.

- Paragraph 62: Strike "Principal Espiritu presented this decision to the Pioneer Climate Committee which concurred with the decision. Mr. Glasser participated in the Climate Committee's concurrence".

- Paragraph 64: Strike all redline edits.

- Paragraph 67: Strike "also participated in the decision to derecognize the Student FCA Chapters. This denial is attached as Exhibit F."

- Paragraphs 69: Strike entire paragraph.

- Paragraph 70: Strike "Pursuant to District policies, Defendants Albarran and Espiritu have authority to recognize student groups and participated in the decision to derecognize the Student FCA Chapters. Mr. Glasser also approved the derecognition of the Student FCA Chapter at Pioneer through his role in the Pioneer Climate Committee."

- Paragraph 81: Strike "including members of The Satanic Temple Club".

- Paragraph 84: Strike "Although protests have temporarily subsided because in-person meetings have been suspended, FCA and its Student Representatives have a reasonable expectation that such protests will resume when in-person classes resume, at least in part because of the encouragement of student protests by faculty and staff and the harassment as described herein."

- Paragraph 104: Strike "These exemptions are made on an individualized basis. Defendants continue to discriminate against the Pioneer Student FCA Chapter and the Student Representatives because of the religious content and viewpoint of their message."

- Paragraph 121: Strike entire paragraph: "Each FCA student leader has a role that helps promote FCA's religious beliefs and message. For example, the Pioneer Student FCA Chapter President is responsible for the content of the meetings, including planning and preparing the agenda for club meetings and leading the meetings. The Vice-President shares these responsibilities with the President and must fulfill these duties if the President is unable to do so. The Treasurer's responsibilities include overseeing club fund-raising

2

DWK DMS 3681453v2

efforts and ensuring that these fundraisers reflect FCA's religious beliefs, message, and values. The Secretary's responsibilities include speaking on behalf of the Student FCA group, through carrying out its correspondence and shaping its religious content. See Exhibit G (Pioneer Constitution)."

• Paragraphs 122, 132: Strike all redlines and Exhibit E.

• Paragraphs 140-148, inclusive of heading before paragraph 140: Strike in their entirety.

• Paragraph 156: Strike "Pioneer, Willow Glen, and Leland continue to recognize noncurriculum-related student groups and grant them benefits not available to unrecognized student groups."

• Paragraph 158: Strike all redlines.

• Paragraphs 162, 164-165: Strike in their entirety.

• Paragraphs 170: Strike all redlines.

• Paragraphs 172, 176-177: Strike entire paragraphs.

• Paragraphs 187: Strike "Defendants continue to require this of the Pioneer Student Group and FCA's Student Representatives."

• Paragraphs 188, 192-194, 201, 203, 205-206, 215, 220-221: Strike entire paragraphs.

• Paragraphs 229-230: Strike all redlines.

• Paragraphs 235-236, 245-246: Strike entire paragraphs.

• Paragraph 250: Strike "Ms. Sinclair also was subjected to Mr. Glasser's whiteboard statement", and "Mr. Glasser intended that his statement would show disapproval of the religious beliefs of FCA and students involved in a Student FCA Chapter, including Ms. Klarke and Ms. Sinclair."

• Paragraphs 256-257, 262, 266-267, 277-278, 287-288, 299-300: Strike entire paragraphs.

This motion is brought pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), 12(f)(2), 12(g), and 12(h)(3). This motion is based upon this notice, the memorandum of points and authorities below, the declarations and the proposed order submitted herewith, the pleadings and documents on file with the Court, and such other and further evidence or argument as the Court may allow.

DATED: March 18, 2021                    DANNIS WOLIVER KELLEY


                                         By:   _/s/Amy R. Levine_____
                                         AMY R. LEVINE
                                         Attorneys for Defendants
                                         NANCY ALBARRAN, HERB ESPIRITU, and
                                         PETER GLASSER

DANNIS WOLIVER KELLEY
2087 ADDISON STREET, 2ND FLOOR
BERKELEY, CA 94704

3

**DEFENDANTS' MOTION TO DISMISS / STRIKE SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

## TABLE OF CONTENTS

Page

I.    INTRODUCTION .................................................................................................. 8

II.   FCA LACKS STANDING TO PURSUE PROSPECTIVE RELIEF ................................. 9

      A.    FCA Has No Standing on Its Own Behalf ........................................... 10

            1.    FCA's Mission Was Not Thwarted ............................................ 11

            2.    FCA's Resources Were Not Diverted ........................................ 13

            3.    FCA Cannot Demonstrate Injury Under the Causes of Action Pled ........ 14

      B.    FCA Does Not Have Standing to Sue on Behalf of Its Members ........................ 15

III.  PLAINTIFFS' DECLARATORY AND INJUNCTIVE RELIEF CLAIMS ARE
      MOOT AND NOT RIPE FOR ADJUDICATION ........................................................... 16

      A.    Mootness and Lack of Ripeness Deprives This Court of Subject Matter
            Jurisdiction ............................................................................... 16

      B.    Plaintiffs' Prospective Relief Claims Are Not Justiciable Because There is
            No Live Controversy ....................................................................... 17

            1.    Plaintiffs' Claims Regarding Approval of an FCA Club at Pioneer
                  Are Moot and Unripe .................................................................. 17

            2.    Plaintiffs' Claims Regarding FCA at Willow Glen Are Moot ................. 19

            3.    Plaintiffs' Claims Regarding FCA Approval at Leland Are Moot
                  and Unripe ............................................................................... 20

            4.    FCA Fails To State Any Facts to Support Its Claims For Retaliation
                  Or Ongoing Harassment And Bullying ............................................ 21

IV.   THE COURT SHOULD STRIKE PLAINTIFFS' AMENDMENTS IN THEIR
      SAC FOR EXCEEDING THE COURT'S DISMISSAL ORDER ................................... 23

V.    CONCLUSION ................................................................................................ 25

DANNIS WOLIVER KELLEY
2087 ADDISON STREET, 2ND FLOOR
BERKELEY, CA 94704

DWK DMS 3681453v2

4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DANNIS WOLIVER KELLEY
2087 ADDISON STREET, 2ND FLOOR
BERKELEY, CA 94704

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Abbott Laboratories v. Gardner*,
   387 U.S. 136 (1967) ........................................................................................ 18, 19

*Ass'n of Christian Sch. Int'l v. Stearns*,
   678 F.Supp.2d 980 (C.D. Cal. 2008), aff'd 362 Fed. Appx. 640 (9th Cir. 2010) ................... 17

*Bates v. United Parcel Serv., Inc.*,
   511 F.3d 974 (9th Cir. 2007) ................................................................................ 12

*Bernhardt v. County of Los Angeles*,
   279 F.3d 862 (9th Cir. 2002) ................................................................................ 18

*Brown v. Stroud*,
   2011 WL 13312050 (N.D. Cal. Jan. 28, 2011) .......................................................... 26

*Chandler v. State Farm Mut. Auto Ins. Co.*,
   598 F.3d 1115 (9th Cir. 2010) .............................................................................. 11

*City of S. Lake Tahoe Retirees Ass'n v. City of S. Lake Tahoe*,
   2017 WL 2779013 (E.D. Cal. June 27, 2017) .......................................................... 17

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) .......................................................................................... 14

*Cole v. Oroville Union High Sch. Dist.*,
   228 F.3d 1092 (9th Cir. 2000) ......................................................................... 11, 21

*Cook Inlet Treaty Tribes v. Shalala*,
   166 F.3d 986 (9th Cir. 1999) ................................................................................ 18

*Davidson v. Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018) ................................................................................ 13

*Davis v. Fed. Election Comm'n*,
   554 U.S. 724 (2008) .......................................................................................... 11

*Doe 1 v. Manhattan Beach Unified Sch. Dist.*,
   2020 WL 2556356 (C.D.Cal. 2020) ...................................................................... 23

*Doutherd v. Montesdeoca*,
   2019 WL 1315726 (E.D. Cal. 2019, Mar. 22, 2019) .................................................. 26

*East Bay Sanctuary Covenant v. Trump*,
   932 F.3d 742 (9th Cir. 2018) ................................................................................ 14

DWK DMS 3681453v2

*Fleck and Assocs., Inc. v. Phoenix, City of, an Arizona Mun. Corp.*,
   471 F.3d 1100 (9th Cir. 2006).................................................................. 16

*Flores v. Morgan Hill Unified Sch. Dist.*,
   324 F.3d 1130 (9th Cir. 2003).................................................................. 23

*Genesis Healthcare Corp. v. Symczyk*,
   569 U.S. 66 (2013)................................................................................ 18, 20

*Hunt v. Washington State Apple Advertising Comm'n*,
   432 U.S. 333 (1977).................................................................................. 16

*Infanzon v. Allstate Ins. Co.*,
   2020 WL 3891671 (C.D. Cal. Apr. 14, 2020)........................................... 14

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*,
   624 F.3d 1083 (9th Cir.2010)........................................................ 11, 14, 15

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992).................................................................................. 21

*National Park Hospitality Ass'n v. Dep't of Interior*,
   538 U.S. 803 (2003).................................................................................. 20

*Pinard v. Clatskanie Sch. Dist. 6J*,
   467 F.3d 755 (9th Cir. 2006)..................................................................... 24

*Rodriguez v. City of San Jose*,
   930 F.3d 1123 (9th Cir. 2019)................................................................... 12

*Ruvalcaba v. City of Los Angeles*,
   167 F.3d 514 (9th Cir. 1999)..................................................................... 18

*Safe Air for Everyone v. Meyer*,
   373 F.3d 1035 (9th Cir. 2004)................................................................... 11

*Serv. Women's Action Network v. Mattis*,
   352 F.Supp.3d 977 (N.D. Cal. 2018) ........................................................ 24

*Warth v. Seldin*,
   422 U.S. 490 (1975).................................................................................. 11

*Whittlestone, Inc. v. Handi-Craft Co.*,
   618 F.3d 970 (9th Cir. 2010)..................................................................... 26

*Williams v. Alioto*,
   549 F.2d 136............................................................................................. 19

DANNIS WOLIVER KELLEY
2087 ADDISON STREET, 2ND FLOOR
BERKELEY, CA 94704

6

**DEFENDANTS' MOTION TO DISMISS / STRIKE SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

DWK DMS 3681453v2

**Federal Statutes**

20 U.S.C. § 4071(a) .................................................................................... 15

20 U.S.C. § 4071(c)(5) ............................................................................... 12

42 U.S.C. § 1983 .............................................................................. 9, 10, 23

EAA ................................................................................... 10, 12, 15, 25

**Constitutional Provisions**

First and Fourteenth Amendments ............................................................... 10

**Rules**

Fed. R. Civ. P. 10(a) .................................................................................... 9

Fed. R. Civ. P. 12(f) ................................................................................... 26

Fed. R. Civ. P. 12(f)(2) ............................................................................... 10

Fed. R. Civ. P. 12(b)(1) .................................................................... 9, 10, 11

Fed. R. Civ. P. 12(b)(6) ...................................................................... 10, 11

Fed. R. Civ. P. 12(g) .......................................................................... 10, 26

Fed. R. Civ. P. 12(h)(3) ............................................................................... 10

DANNIS WOLIVER KELLEY
2087 ADDISON STREET, 2ND FLOOR
BERKELEY, CA 94704

**DEFENDANTS' MOTION TO DISMISS / STRIKE SECOND AMENDED COMPLAINT; MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

DWK DMS 3681453v2

1

2

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND / OR STRIKE PLAINTIFFS' SECOND AMENDED COMPLAINT**

3

## I.   INTRODUCTION

4          Plaintiffs are the Fellowship of Christian Athletes ("FCA") and two former students of

5    Pioneer High School in the San Jose Unified School District ("District" or "SJUSD") who led an

6    FCA chapter at Pioneer prior to their graduation.  On April 22, 2020 they filed a Complaint, and

7    on May 19, 2020 an Amended Complaint ("FAC") asserting twelve causes of action under 42

8    U.S.C. section 1983, alleging that the District and three District employees violated their rights

9    under the First and Fourteenth Amendments and under the Equal Access Act ("EAA"), 20 U.S.C.

10   sections 4071-74.  The gravamen of their FAC was that at three District high schools, Willow

11   Glen, Leland, and Pioneer, the District improperly refused to recognize the FCA as an official

12   student organization under the umbrella of the Associated Student Body ("ASB"), with the

13   privileges that adhere to that status, but instead only allowed them to meet on campus without the

14   official recognition.  They acknowledged that the District cited its nondiscrimination policy as the

15   basis for its action, but asserted this decision was based on their religious viewpoint.  Plaintiffs

16   Elizabeth Sinclair (formerly "Jane Doe") and Charlotte Klarke (formerly "Jessica Roe") also

17   alleged that they were harassed by other Pioneer students who demonstrated against FCA's

18   leadership policies, and that school and District officials either facilitated such harassment or

19   failed to prevent it.

20          On January 28, 2021, this Court granted in part Defendants' motion to dismiss (Dkt. 49),

21   dismissing the following with leave to amend: (1) The entire FAC for violating Federal Rule of

22   Civil Procedure 10(a) by failing to disclose the identities of Doe and Roe; and (2) All of FCA's

23   claims for prospective relief for lack of jurisdiction based on standing.  The Court dismissed, with

24   prejudice: (1) All of Sinclair and Klarke's claims for prospective relief for lack of jurisdiction

25   based on mootness; (2) All of Plaintiffs' claims against the District itself; (3) All of Plaintiffs'

26   monetary claims against the individual Defendants in their official capacities; and (4) All of

27   Plaintiffs' claims challenging the revocation decision on the grounds that the District's

28   nondiscrimination policies could not be applied to them on their face.

DANNIS WOLIVER KELLEY
2087 ADDISON STREET, 2ND FLOOR
BERKELEY, CA 94704

8

**DEFENDANTS' MOTION TO DISMISS / STRIKE SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

1    The Court declined to dismiss Plaintiffs Sinclair and Klarke's as-applied monetary claims

2    against individual Defendants in their personal capacities, and advised that the parties should

3    focus on whether Defendants have exempted certain student groups from the nondiscrimination

4    policies but declined to grant Plaintiffs such an exemption because of their religious viewpoint.

5    The Court authorized Plaintiffs to file a second amended complaint solely to cure the deficiencies

6    identified in the Court's order and prohibited them from adding new causes of action or parties

7    absent leave of the Court or stipulation of the Parties.  (Dkt. 49, at 30:1-31:7).

8    On February 18, 2021, Plaintiffs' filed their Second Amended Complaint ("SAC"),

9    identifying Roe and Doe as Sinclair and Klarke, as indicated above.  As in the FAC, the SAC

10    asserts twelve causes of action under 42 U.S.C. section 1983, alleging that three District

11    employees violated their rights under the First and Fourteenth Amendments and under the EAA.

12    However, Plaintiffs' amendments both fail to cure the standing defects identified in the Court's

13    order, and exceed the scope of the Court's permission to amend.  Notably, notwithstanding the

14    Court's order of dismissal, Plaintiffs assert that they "are not waiving claims that were made in

15    the First Amended Complaint, including those that were passed on or were ruled upon by the

16    Court in its Order," and their SAC expands upon their facial challenge to the District's

17    nondiscrimination policies.  (SAC, Dkt. 54, at 2:24-28).

18    For the reasons set forth below, Defendants move to dismiss all of FCA's claims for lack

19    of jurisdiction and failure to state a claim based on mootness, ripeness, and lack of standing under

20    Rules 12(b)(1), 12(6)(6), and 12(h)(3), and move to dismiss FCA's claims for declaratory and

21    injunctive relief for alleged bullying, harassment and retaliation for failure to state a claim under

22    Rule 12(b)(6).  Defendants also move to strike specific allegations from the SAC under Rules

23    12(f)(2) and 12(g).

24    **II.    FCA LACKS STANDING TO PURSUE PROSPECTIVE RELIEF**

25    Following the Court's Order dismissing Sinclair and Klarke's claims for prospective relief

26    as moot, the only remaining prospective relief claims are those asserted by FCA.  (Dkt. 49, at

27    17:18-19).  FCA brings no other claims. As explained below, FCA has failed to establish standing

28    either on behalf of itself or on behalf of its members.  FCA's lack of Article III standing to pursue

DANNIS WOLIVER KELLEY
2087 ADDISON STREET, 2ND FLOOR
BERKELEY, CA  94704

9

**DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

prospective relief requires dismissal of its claims for want of jurisdiction under Rule 12(b)(1).
*See Cole v. Oroville Union High Sch. Dist.*, 228 F.3d 1092, 1098 (9th Cir. 2000), citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167 (2000) (standing is a jurisdictional issue deriving from the case or controversy requirement of Article III); *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (a plaintiff is required to "demonstrate standing for each claim he seeks to press and for each form of relief that is sought").  While a motion under Rule 12(b)(6) or 12(f)(2) is made on the face of the complaint, a Rule 12(b)(1) jurisdictional challenge may be factual or facial.  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  In considering a factual attack, the Court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment" and "need not presume the truthfulness of the plaintiff's allegations.  In such a scenario, the plaintiff bears the burden of establishing the court's jurisdiction.  *Chandler v. State Farm Mut. Auto Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

### A.   FCA Has No Standing on Its Own Behalf

To establish standing, organizations, like individuals, must satisfy the requirements of three elements: (1) injury-in-fact, (2) causation, and (3) redressability.  *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir.2010).[1]   As the Ninth Circuit explains:

> [A]n organization may establish "injury in fact if it can demonstrate: (1) frustration of its organizational mission; and (2) diversion of its resources to combat the particular [injurious behavior] in question." The organization cannot, however, "manufacture the injury by incurring litigation costs or simply choosing to spend money fixing a problem that otherwise would not affect the organization at all."  In other words, an organizational plaintiff must show that the defendant's actions run counter to the organization's purpose, that the organization seeks broad relief against the defendant's actions, and that granting relief would allow the organization to redirect resources currently spent combating the specific challenged conduct to other activities that would advance its mission.

*Rodriguez v. City of San Jose*, 930 F.3d 1123, 1134 (9th Cir. 2019) (internal citation omitted).  A plaintiff seeking prospective injunctive relief "must demonstrate that he has suffered or is

Dannis Woliver Kelley
2087 Addison Street, 2nd Floor
Berkeley, CA 94704

---

[1] Prudential considerations of standing also require that "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

10

threatened with a 'concrete and particularized' legal harm… coupled with 'a sufficient likelihood that he will again be wronged in a similar way.'" *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 986 (9th Cir. 2007).

**1.   FCA's Mission Was Not Thwarted**

FCA describes itself as "an international religious ministry with recognized student groups" on various university and high school campuses.  (SAC, ¶2).  Its purported mission is "[t]o lead every coach and athlete into a growing relationship with Jesus Christ and His church." (Dkt. 54-4, at p. 8; Dkt. 54-5, at p. 8).  FCA alleges that "[s]tudent FCA chapters meet regularly to advance the religious mission of FCA to reach others for Christ."  (SAC, ¶51).  Although Plaintiffs broadly allege that Defendants have frustrated FCA's "mission of reaching athletes and other students and promoting FCA's religious beliefs, speech, and values" (SAC, ¶107), FCA's assertions are unsupported.

FCA has not explained how the failure to receive official recognition at certain District campuses runs counter to its mission to lead coaches and athletes into a growing relationship with Christ.  FCA's claim is that students at District high schools have been unable to obtain official recognition for their organizations through ASB.  (SAC, ¶¶6, 57, 68, 72, 96, 144, 157, 162, 164, 176, 192, 203, 205, 220, 235, 245, 256, 266, 277, 287, 299).  But, FCA is an Oklahoma corporation, it is not a student at any District campus.  District regulations allow student organizations to be formed by current students, and, consistent with the EAA, it precludes student organizations from being run by "non-school persons."  (Declaration of Herb Espiritu ("Espiritu Decl."), ¶3, Ex. A); 20 U.S.C. § 4071(c)(5).)  Any injury that FCA might have suffered cannot have been caused by the District's actions, because FCA had no right to form a student organization in the District in the first place.  Moreover, FCA as an organization is still able to "[t]o lead every coach and athlete into a growing relationship with Jesus Christ and His church" regardless of what happens at SJUSD.  Since FCA has no independent right to exist at SJUSD, nothing SJUSD did or does can frustrate its mission.

To the extent FCA relies on the activities of its student chapters to support its own standing, the facts do not bear out that FCA's mission is being frustrated by the Defendants'

DANNIS WOLIVER KELLEY
2087 ADDISON STREET, 2ND FLOOR
BERKELEY, CA 94704

11

**DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

conduct.  As this Court previously observed, and as Plaintiffs themselves acknowledge, the FCA chapter at Pioneer continued to regularly meet on Pioneer's campus as a student group following its derecognition at the end of the 2018-2019 school year and during the 2019-2020 school year prior to the closure of District schools due to the COVID-19 pandemic. (Dkt. 49, at 18:10-13; SAC, ¶¶77, 79, 81).  During the 2019-2020 school year, until the District's closure in March 2020, the Pioneer FCA had as many meetings as in prior years, held as many events as in prior years, and reported that it had approximately the same number of attendees at those events as in prior years.  (Declaration of Amy R. Levine ("Levine Decl."), ¶3, Ex. A, at 56:15-57:21).

On or about March 13, 2020, the District closed its schools in response to the coronavirus pandemic, and its schools have remained closed since that date.  (Espiritu Decl., ¶¶6-7; Declaration of Michelle Mayhew ("Mayhew Decl.,") ¶¶3-4.  The FCA chapter at Pioneer has continued to regularly meet virtually throughout the 2020-2021 school year.  (Mayhew Decl., ¶9; Levine Decl., ¶4, Ex. B, at 140:18-25; SAC, ¶68).   According to the SAC, FCA's mission is advanced by student chapters meeting (SAC, ¶51), and that has occurred.  FCA's mission as an organization does not depend on whether its chapters meet as official organizations or in some other form, so long as its chapters are still able to meet and attempt to reach others for Christ.

Being unable to demonstrate that Defendants' actions have impacted FCA Pioneer's meetings or events, Plaintiffs broadly allege that Defendants have frustrated FCA's mission because students *might be* deterred from forming FCA chapters or attending FCA meetings (SAC, ¶¶107-109) (emphasis added).  But, such speculative injury does not support standing. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018), quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) and *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (for prospective remedies, "the threat of injury must be 'actual and imminent, not conjectural or hypothetical…. In other words, the threatened injury must be certainly impending to constitute injury in fact" and "allegations of possible future injury are not sufficient."); *Infanzon v. Allstate Ins. Co.*, 2020 WL 3891671, at *5 (C.D. Cal. Apr. 14, 2020) ("A plaintiff who seeks prospective injunctive or declaratory relief must adduce a credible threat of recurrent injury to demonstrate he has standing to sue").

DANNIS WOLIVER KELLEY
2087 ADDISON STREET, 2ND FLOOR
BERKELEY, CA 94704

12

DWK DMS 3681453v2

DANNIS WOLIVER KELLEY
2087 ADDISON STREET, 2ND FLOOR
BERKELEY, CA 94704

### 2.    FCA's Resources Were Not Diverted

Finally, even if Defendants have somehow frustrated FCA's mission, they have not caused a diversion of FCA's resources.  In order to demonstrate "a diversion-of-resources injury…sufficient to establish organizational standing," FCA must demonstrate that, "independent of the litigation, the challenged policy 'frustrates the organization's goals and requires the organization to expend resources in representing clients they otherwise would spend in other ways.'"  *East Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 765 (9th Cir. 2018) (internal citations omitted).  The organization cannot, however, "manufacture the injury by incurring litigation costs or simply choosing to spend money fixing a problem that otherwise would not affect the organization at all."  *La Asociacion de Trabajadores*, 624 F.3d at 1088.

Aside from this litigation, FCA cannot demonstrate that it diverted any resources as a result of the events alleged in the SAC.  FCA's Bay Area Metro Director Rigo Lopez testified that he spent approximately the same amount of time at Pioneer during the 2018-2019 school year as in the prior year.  (Levine Decl., ¶4, Ex. B, at 149:19-150:3).  He testified that his time at each school site for which he was responsible varied each year, and was unable to quantify the amount of time or attention he spent at or for any site during any school year.  (*Id.*, at 4:19-5:2, 5:22-6:4, 68:20-70:20, 148:22-150:3, 150:22-151:3).    While his text messages indicate that he was attempting to keep a "low profile" at Pioneer in the 2019-2020 school year, he asserted that he made that site a priority because of the protests.  (*Id.*, Ex. B, at 71:11-24, 146:21-147:2; ¶7, Ex., E; *Id.*, ¶5).  But, his time on campus that year is substantially the same as the prior year, according to the school's visitor log, which Mr. Lopez testified he used each time he came onto campus. (Levine Decl., ¶4, Ex. B, at 71:1-72:7; Espiritu Decl., ¶¶4-5, Ex. B).

Moreover, there was nothing that Mr. Lopez was supposed to do for FCA that he was unable to do as a result of Defendants' actions.  (Levine Decl., ¶5, Ex. B, at 147:3-151:3). Instead, to the extent any of his time or FCA's resources were diverted, they were diverted in pursuit of this litigation, which cannot be used to establish standing.  *La Asociacion de Trabajadores*, 624 F.3d at 1088.  Mr. Lopez testified that the additional time he spent on Pioneer was significantly due to the litigation, and indeed, FCA hired a lawyer to begin working on this

13

1   case within a day after the issue arose, on or about April 24, 2019.  (Levine Decl., ¶¶4-6, Ex., B at

2   131:6-134:5, Exs. C, D; SAC, ¶7).  Because lawyers were brought in from the first sign of

3   trouble, it would be impossible to distinguish time spent addressing the problem from time spent

4   on litigation activities, as the time periods almost completely overlap.  Moreover, Mr. Lopez

5   testified that during the current 2020-2021 school year, his time working with Pioneer is about the

6   same as at any other school site, and that he has spent less time than in previous years because all

7   meetings have been virtual.  (Levine Decl., ¶4, Ex. B, at 148:22-150:3).  Because FCA has

8   demonstrated neither frustration of its purpose nor diversion of its resources, it is unable to

9   demonstrate an injury in fact or causation and therefore lacks standing to pursue prospective relief

10  on its own behalf.

11            **3.    FCA Cannot Demonstrate Injury Under the Causes of Action Pled**

12           These standing defects permeate all of FCA's claims, and prevent it from showing an

13  injury or redressability or from stating a claim under the causes of action pled.  For instance,

14  because it is not a student, or even a student organization, FCA does not meet the statutory criteria

15  of the EAA, which protects the rights of "students who wish to conduct a meeting within [a

16  district's] limited open forum."  (SAC, ¶¶154-57; 20 U.S.C. §4071(a).)  Under the equal

17  protection claim (ninth cause of action), the FCA, not being a student organization, cannot claim

18  that it is similarly situated to any student organization on campus, and therefore cannot show

19  discrimination.  (SAC, ¶260).  In the tenth cause of action for "compelled speech," FCA makes no

20  allegation that its speech is compelled, only that the Defendants "have conditioned recognition

21  and its accompanying benefits on the Student FCA Chapters' abjuration of their religious beliefs

22  or their affirmation of beliefs that the District officials insist they affirm."  (SAC, ¶272).  And in

23  the retaliation cause of action, FCA alleges that recognition was denied, and students were

24  shamed and harassed, such as to "chill persons of ordinary firmness from continuing to engage in

25  protected activity."  (SAC, ¶¶293-94). But, there are no allegations that these events befell FCA,

26  or that FCA has been deterred from engaging in any protected activity, or even what its protected

27  activity was.  Thus, it is clear that FCA lacks standing as an organization to pursue any of its

28  claims.

Dannis Woliver Kelley
2087 Addison Street, 2nd Floor
Berkeley, CA  94704

14

**DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

DANNIS WOLIVER KELLEY
2087 ADDISON STREET, 2ND FLOOR
BERKELEY, CA 94704

**B.** **FCA Does Not Have Standing to Sue on Behalf of Its Members**

"[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977). The SAC fails to demonstrate associational standing.

First, FCA does not have any "members" in the sense required to establish associational standing. "Associational standing is reserved for organizations that 'express the[ ] collective views and protect the[ ] collective interests of their members." *Fleck and Assocs., Inc. v. Phoenix, City of, an Arizona Mun. Corp.*, 471 F.3d 1100, 1105-06 (9th Cir. 2006). FCA does not have members; it has chapters. (Levine Decl., ¶4, Ex. B, at 27:23-28:4). FCA affiliates with student chapters via student leaders who it has subscribe to its Statement of Faith, however those student leaders are not members of the FCA organization, nor does FCA even have a list of who those student leaders are. (*Id.*, at 14:4-17:25). Further, FCA asserts that the student organizations are not run by FCA, but by students, who act independently of FCA. (*Id.*, at 17:23-19:11, 19:20-20:7).[2]

Second, FCA was required to identify specific members on whose behalf it was suing who could demonstrate standing in their own right. (Dkt. 49, at 19:2-5). However, the "Student Representatives" it identified, L.W. and B.W., do not have standing to redress the harm FCA alleges for at least two reasons – first, L.W. and B.W. are currently both seniors at Pioneer, whose standing to assert prospective claims is about to disappear as did Sinclair's and Klarke's when

---

[2] Indeed, it is unclear whether the FCA chapters themselves even have members, as opposed to "leaders". The chapters have no membership rosters, do not allow their members to vote for their leaders, and do not (without the assistance of counsel) have a definition of who their members are. (Levine Decl., ¶3, Ex. A, at 21:25-23:7; ¶4, Ex. B, at 15:8-17:3, 27:23-28:4). At Leland High School, for example, there were no FCA members, only leaders, so that the group withered away as each of the leaders graduated from high school. (Declaration of Gary Clarke ("Clarke Decl."), ¶3, Ex. A; Levine Decl., ¶4, Ex. B, at 81:7-83:8. The SAC alleges that "all Student FCA Chapters had no requirements for membership beyond that a student be enrolled in the respective school." (SAC, ¶40).

15

they graduated.  (Mayhew Decl., ¶5).  And, second, L.W. and B. W. are presiding over the Pioneer FCA chapter which this year has been granted provisional official status, along with all other student organizations who applied for approval this year.  (Mayhew Decl., ¶¶5-7, Exs. A-C).  The organization has received the same benefits as any other student organization, including being allowed to participate in a virtual club rush, having yearbook pictures taken, and holding virtual meetings on a platform provided by a faculty advisor. (Mayhew Decl., ¶9; Levine Decl., ¶4, Ex. B, at 139:3-140:25; SAC, ¶68).  Since L.W. and B.W. have no claim for prospective relief given that they have been afforded all rights of any other students seeking official approval for their group, neither does FCA.

Third, even if FCA *had* members at any of the District's schools, and even if those members had standing, FCA would lack standing to bring claims on their behalf because both FCA's claims and its requested relief require the participation of the individual members in the lawsuit.  "Regardless of what relief [is sought], as applied constitutional challenges are inherently ill suited to association-level litigation."  *City of S. Lake Tahoe Retirees Ass'n v. City of S. Lake Tahoe*, 2017 WL 2779013, at *3 (E.D. Cal. June 27, 2017) and cases cited therein.  When claims "require an 'ad hoc factual inquiry' for each member represented by the association, the organization does not have associational standing."  *Ass'n of Christian Sch. Int'l v. Stearns*, 678 F.Supp.2d 980, 986 (C.D. Cal. 2008), aff'd 362 Fed. Appx. 640 (9th Cir. 2010) (internal citation omitted).  Here, determination of whether the individual "Student Representatives" identified in the SAC were harassed, intimidated, or deterred from attending FCA events or forming or maintaining FCA chapters, would require precisely the type of individualized ad hoc inquiry that prevents associational standing.  (SAC, ¶¶28, 82).

## III.  PLAINTIFFS' DECLARATORY AND INJUNCTIVE RELIEF CLAIMS ARE MOOT AND NOT RIPE FOR ADJUDICATION

### A.  Mootness and Lack of Ripeness Deprives This Court of Subject Matter Jurisdiction

"Mootness can be characterized as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Cook Inlet Treaty Tribes v. Shalala*, 166 F.3d 986,

16

989 (9th Cir. 1999) (internal quotation marks omitted).  Mootness is a jurisdictional issue, such that "federal courts have no jurisdiction to hear a case that is moot, that is, where no actual or live controversy exists." *Id*.  "If there is no longer a possibility that [a plaintiff] can obtain relief for his claim, that claim is moot and must be dismissed for lack of jurisdiction." *Ruvalcaba v. City of Los Angeles*, 167 F.3d 514, 521 (9th Cir. 1999).  That is, "[w]here the activities sought to be enjoined already have occurred, and the …courts cannot undo what has already been done, the action is moot, and must be dismissed." *Bernhardt v. County of Los Angeles*, 279 F.3d 862, 871 (9th Cir. 2002) (internal citation omitted)   "If an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013) (internal quotation marks omitted).  On the other hand, lack of ripeness prevents the Court from adjudicating matters before the events leading to the claim have been crystalized and are capable of being adjudicated. *Abbott Laboratories v. Gardner,* 387 U.S. 136, 148-49 (1967).  As explained below, Plaintiffs' prospective relief claims are moot and not ripe for adjudication, and so must be dismissed.

> **B.     Plaintiffs'  Prospective Relief Claims Are Not Justiciable Because There is No Live Controversy**

This Court previously dismissed, with prejudice, all of Sinclair and Klarke's claims for prospective relief.  (Dkt. 49, at 30:20-21).  Notwithstanding this Court's order, Plaintiffs' SAC fails to limit the prospective relief sought accordingly.  Instead, all Plaintiffs seek a declaration that Defendants "cease withholding official club recognition and all its attendant benefits due to Plaintiffs' religious beliefs, including but not limited to religious leadership requirements," and all Plaintiffs seek a preliminary and permanent injunction."  (SAC, Prayer For Relief, ¶¶ b-d).  To the extent Plaintiffs are seeking prospective relief on behalf of Sinclair and Klarke, those claims were and remain dismissed.  To the extent FCA seeks prospective relief on behalf of itself and its members, those claims are both moot and not ripe for adjudication.

> **1.     Plaintiffs' Claims Regarding Approval of an FCA Club at Pioneer Are Moot and Unripe**

FCA's claims are predicated on the allegation that FCA chapters were officially

Dannis Woliver Kelley
2087 Addison Street, 2nd Floor
Berkeley, CA  94704

17

**DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

recognized student groups at three District high schools, and entitled to the benefits afforded such groups, including access to faculty advisors, access to ASB funds, inclusion in the yearbook, and other benefits. (SAC, ¶¶64, 71). Plaintiffs allege that on May 2, 2019, the Principal at Pioneer told the student leaders that FCA would no longer be a recognized student group there. (*Id.*, ¶62). At the same time, they allege District officials informed FCA student leaders at Leland and Willow Glen that their groups would also not be officially recognized. (*Id.*). Plaintiffs allege that the FCA chapters were still allowed to form as interest groups, but not as clubs, and were permitted to meet on the high school campuses. (*Id.*, ¶65). Plaintiffs allege that the District denied Sinclair and Klarke's application for club recognition for FCA at Pioneer for the 2019-2020 school year, and L.W. and B.W.'s application for club recognition at Pioneer for the 2020-2021 school year. (*Id.*, ¶¶67-68).

However, as set forth above, in October 2020, Pioneer High School provisionally approved all applications for recognition for student-led groups, including FCA. (Levine Decl., ¶4, Ex B, at 139:3-140:25; Mayhew Decl., ¶7, Ex. C). Plaintiffs seek declaratory and injunctive relief ordering Defendants to recognize an FCA chapter at Pioneer. But, since Defendants have already done so, this Court is unable to provide Plaintiffs with the relief sought, and their claims for prospective relief are therefore moot. *Williams v. Alioto*, 549 F.2d 136, 142 (court lacks jurisdiction "[w]hen events have permanently destroyed any possibility of repetition" or "when the chance of repetition is remote and speculative").

Plaintiffs have included allegations regarding an Affirmation Statement that the District intends to have officially recognized student organizations sign. (SAC, ¶¶69, 142). But, this does not resurrect their claims for prospective relief because the District is still in the process of collecting signatures on the Affirmation Statement from approved student groups and no actions have yet been taken toward any group on the basis of their signing or refusal to sign such statement. (Mayhew Decl., ¶10). Thus, that issue is not ripe. *National Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003), citing *Abbott Laboratories*, 387 U.S. at 148-49 ("Ripeness is a justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative

18

policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way …'").

In addition, this Court has already ruled that the District was entitled to enforce its non-discrimination policies as to the Plaintiffs, subject to any challenge they may make as to selective enforcement. (Dkt. 49, 30:1-12). Plaintiffs admit that "[t]he ASB Affirmation Form contains language materially indistinguishable from the nondiscrimination policies under which Defendants indicated that they revoked official club recognition and benefits to the Student FCA Chapters." (SAC, ¶142). Therefore the existence of this Affirmation Statement form does not change the fact that Plaintiffs' facial challenge to the District's nondiscrimination policies have already been decided against them. Plaintiffs may choose not to sign this form, but that would not render them similarly situated to any other student group that agreed to comply with the District's policies.

Moreover, FCA's claim for prospective relief is dependent upon its student leaders, whose prospective relief claims have been or will soon be mooted by their graduation. In that sense, this case is analogous to *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66 (2013). There, an employee sought relief under the Fair Labor Standards Act on behalf of herself and others similarly situated. The Supreme Court determined that once the employee's individual claim was mooted, so too was her suit in the absence of any other claimants opting in because she lacked any personal interest in representing others in that action. *Id.* at 73. Similarly, FCA's claims are only as good as its Student Representatives' claims. Here, FCA attempts to assert claims on behalf of its "Student Representatives," L.W. and B.W., current high school seniors anticipated to graduate in June 2021. (SAC, ¶28; Mayhew Decl., ¶5). Just as Sinclair and Klarke's prospective relief claims were mooted by their graduation (Dkt. 49, at 16:27-17:8), so too will L.W. and B.W.'s claims be. *Cole,* 228 F.3d at 1098. FCA does not exist at any District high school independent of its affiliation with student leaders, and in the absence of any live "case or controversy" involving a current student leader, FCA's prospective relief claims are moot.

### 2. Plaintiffs' Claims Regarding FCA at Willow Glen Are Moot

With respect to Willow Glen, Plaintiffs allege that the FCA group there was derecognized

DANNIS WOLIVER KELLEY
2087 ADDISON STREET, 2ND FLOOR
BERKELEY, CA 94704

19

**DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

in May 2019.  (SAC, ¶62).  Student groups apply for recognition annually, and no students applied for recognition for an FCA chapter at Willow Glen in the 2019-2020 or the 2020-2021 school years.  (Declaration of Thao Pham ("Pham Decl."), ¶3).  FCA Bay Area representative Rigo Lopez testified that there are currently no students he is aware of who are interested in forming an FCA chapter at that site.  (Levine Decl., ¶4, Ex. B, at 102:11-14).  The only "Student Representatives" Plaintiffs have identified in their SAC are students at Pioneer, not at Willow Glen or Leland.  (SAC, ¶28.)  Accordingly, there is no live controversy at Willow Glen as to whether an FCA chapter should be recognized, no imminent injury to be adjudicated, and no basis for any prospective relief as to that site. *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560 (1992).  All claims with respect to Willow Glen should therefore be dismissed from the case.

### 3.   Plaintiffs' Claims Regarding FCA Approval at Leland Are Moot and Unripe

At Leland, Principal Peter Park met with the FCA chapter's faculty advisor Gary Clarke during the 2019-20 school year to discuss the status of the FCA chapter on campus.  At that time, the Leland FCA had already been approved as an official student organization for the year, as an "interest group", which was the same status it had had since the previous school year. (Declaration of Meg Walsh ("Walsh Decl.", ¶3).  This was a form of official recognition at Leland, and was used for groups who did not use an ASB bank account or engage in fundraising. (*Id*.).  Thus, FCA's status was never revoked or otherwise changed at Leland.  (Walsh Decl., ¶4).

Instead, the group withered away, and is now defunct.  Participation in the Leland FCA had been declining since the chapter was founded in 2017-18, as its leaders graduated.  (Levine Decl., ¶4, Ex. B, at 81:11-83:8).  By 2019-20, the group had dwindled to two or three participants. (Clarke Decl., ¶3, Ex. A; Levine Decl., ¶4, Ex. B, at 82:7-12).  On October 22, 2019, Clarke emailed Lopez to inform him that "[t]he FCA club at Leland does not appear to be happening" and observed that it "only [had] 2 people in it."  (Clarke Decl., ¶3, Ex. A).  Two of its leaders graduated in 2019-2020, and one of the original leaders is graduating in 2020-2021, but did not organize a group this year.  (Levine Decl., ¶4, Ex. B, at 81:11-83:8).  The group did not apply for recognition in the 2020-21 school year, and Lopez testified there are currently no students he is

DANNIS WOLIVER KELLEY
2087 ADDISON STREET, 2ND FLOOR
BERKELEY, CA  94704

20

**DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

aware of who are interested in forming an FCA chapter at that site.  (Walsh Decl., ¶5; Levine Decl., ¶4, Ex. B, at 102:11-14).  As with Willow Glen, there is no live controversy at Leland as to whether an FCA chapter should be recognized, or any imminent injury that may be adjudicated by this Court.  There is therefore no basis for any prospective relief as to that site.  All claims with respect to Leland should be dismissed from the case.

### 4.   FCA Fails To State Any Facts to Support Its Claims For Retaliation Or Ongoing Harassment And Bullying

In its FAC, Plaintiffs alleged that Defendants took action to harass and bully Sinclair, Klarke and other FCA students, or that they condoned or failed to prevent such actions.  These allegations were made part of Plaintiffs' causes of action for viewpoint discrimination (2nd cause of action ("COA")), violation of rights to expressive association (3rd COA), targeting of religious beliefs (5th COA), compelled speech (10th COA), and retaliation (12th COA).  (SAC, ¶¶171, 187, 213, 273, 293).  FCA now also alleges, in all twelve causes of action, that: "Defendants' ongoing denial of recognition and its benefits to student groups affiliated with FCA and continued harassment of students who attend meetings of FCA Student Chapters frustrates FCA's mission by, among other things, stigmatizing FCA and its religious beliefs and intimidating students who attend meetings or events held by student groups affiliated with FCA."  (SAC, ¶¶165, 177, 194, 206, 221, 236, 246, 257, 262, 278, 288, 300).  Thus, under the guise of pleading standing, FCA now attempts to expand its harassment and bullying theory into seven additional causes of action.  As discussed below, Defendants move to strike this new and unauthorized expansion of Plaintiffs' case.  But, regardless of whether FCA is permitted to include these allegations in its SAC, its claims based on harassment, bullying and retaliation are moot, and there are insufficient facts pled to state a cause of action for injunctive or declaratory relief as to them.

The SAC pleads facts showing that any purported harassment or bullying ended, at the latest, in February 2020, more than a year ago.  (SAC, ¶¶19, 82-84).  Since then, District schools have been shut due to COVID, and no harassment or bullying of any kind is alleged.  Further, none of the Plaintiffs testified that harassment or bullying has continued beyond that period of time, or that it is ongoing.  (Levine Decl., ¶4, Ex. B, at 141:25-142:12).   The only factual

DANNIS WOLIVER KELLEY
2087 ADDISON STREET, 2ND FLOOR
BERKELEY, CA 94704

21

**DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

allegations in the SAC that specifically address harassment, bullying or retaliation pertain to

Plaintiffs Sinclair and Klarke, former Pioneer High School students. (SAC, ¶¶10-19, 60-77, 79-

84; Levine Decl., ¶8, Ex. F). Plaintiffs admit that no harassment or bullying occurred at Leland or

Willow Glen. (Levine Decl., ¶8, Ex. F).  Although there are conclusory allegations that the

"Student Representatives" were harassed too, those students are graduating this year, so have no

standing to seek prospective relief any more than Sinclair and Klarke do.  FCA is not itself a

student, and therefore cannot assert that it was harassed or bullied.

To state a claim under 42 U.S.C. section 1983 based on bullying or harassment, Plaintiffs

must allege "that the defendants, acting under color of state law, discriminated against them as

members of an identifiable class and that the discrimination was intentional." *Flores v. Morgan*

*Hill Unified Sch. Dist.*, 324 F.3d 1130, 1134–35 (9th Cir. 2003).

> A student-on-student harassment claim has four requirements: (1) the school
> district has "substantial control over both the harasser and the context in which
> the known harassment occurs;" (2) plaintiff "suffers [ ]harassment [ ] that is so
> severe, pervasive, and objectively offensive that it can be said to deprive the
> victim [ ] of access to the educational opportunities or benefits provided by the
> school;" (3) the school had "actual knowledge" of the harassment; and (4) the
> school's "deliberate indifference subjects its students to harassment." *Reese v.*
> *Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 739 (9th Cir. 2000) (citing *Davis v.*
> *Monroe Cty. Board of Education*, 526 U.S. 629 (1999)) (internal quotations
> omitted).

*Doe 1 v. Manhattan Beach Unified Sch. Dist.*, 2020 WL 2556356, at *4 (C.D.Cal. 2020) (describing

harassment elements under Title IX).  To claim retaliation, the plaintiff must allege "that (1) he was

engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of

ordinary firmness from continuing to engage in the protected activity and (3) the protected activity

was a substantial or motivating factor in the defendant's conduct." *Pinard v. Clatskanie Sch. Dist.*

*6J*, 467 F.3d 755, 770 (9th Cir. 2006).  Further, to obtain injunctive relief against such conduct,

plaintiff must assert non-speculative facts showing that the conduct is ongoing and that court

intervention is required to stop it.  *Serv. Women's Action Network v. Mattis*, 352 F.Supp.3d 977,

986 (N.D. Cal. 2018), citing *Bates*, 511 F.3d at 985 (recognizing that a plaintiff must establish a

"real and immediate threat of repeated injury" and that "the claimed threat of injury must be likely

to be redressed by the prospective injunctive relief").

DANNIS WOLIVER KELLEY
2087 ADDISON STREET, 2ND FLOOR
BERKELEY, CA 94704

22

DWK DMS 3681453v2

1    Here, Plaintiffs plead only events that have long since ceased, and speculate about whether

2    they may continue at some indeterminate date in the future.  There is no ongoing conduct that is

3    "severe, pervasive, and objectively offensive," nor is there any ongoing conduct that "would chill

4    a person of ordinary firmness from continuing to engage in the protected activity."  Thus, Plaintiffs'

5    allegations do not state a claim for prospective relief based on harassment, bullying or retaliation,

6    but instead demonstrate that such claims are moot.  As a result, the Court should dismiss Plaintiff

7    FCA's claims for prospective relief based on alleged harassment, bullying, intimidation or

8    retaliation for failure to plead facts sufficient to state a cause of action and for lack of jurisdiction.

9    **IV.    THE COURT SHOULD STRIKE PLAINTIFFS' AMENDMENTS IN THEIR SAC FOR EXCEEDING THE COURT'S DISMISSAL ORDER**

10    This Court's January 28, 2021 order (Dkt. 49) granted Plaintiffs leave to file a second

11    amended complaint solely to cure the deficiencies identified in (1) the Court's order of dismissal,

12    (2) Defendants' opposition to Plaintiffs proceeding pseudonymously, or (3) Defendants' motion

13    to dismiss.  Plaintiffs' amendments in their SAC accordingly should be restricted to those

14    necessary to (1) disclose Doe and Roe's identities, and (2) establish FCA's standing to seek

15    prospective relief.  The Court expressly prohibited the addition of new causes of action or parties

16    without leave of the Court or stipulation of the parties.  (Dkt. 49, at 30:14-31:7).  Plaintiffs went

17    far beyond these strictures in their SAC, to add in new factual theories of liability, expand or

18    explain their allegations against certain defendants, supplement their complaint regarding events

19    occurring since it was filed, plead additional elements to their causes of action, broaden several of

20    their claims to include harassment allegations where there were none before, and to generally

21    clean up allegations that they now think are inaccurate or poorly pled.

22    For example, in paragraphs 9, 62, 67, and 70 they add allegations about specific

23    Defendants' involvement in the decision to derecognize the student FCA chapters, and allege that

24    these decisions were also made by the Pioneer Climate Committee.  In paragraph 121, they add

25    several statements describing the purported roles of the officers of the student FCA chapters, and

26    attach the Pioneer group's constitution as a new exhibit.  In paragraph 122, they attach a Sexual

27    Purity Statement as a new exhibit, and change their allegation from that the "FCA student leaders

DANNIS WOLIVER KELLEY
2087 ADDISON STREET, 2ND FLOOR
BERKELEY, CA 94704

**DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

1    agree to abide by" the Statement, to that they "must agree with" the Statement, an attempt to

2    avoid the conclusion that their Statement precluded homosexual conduct as well as belief that

3    homosexual conduct is against the will of God.

4    Despite the fact that this Court has already ruled against them on their facial challenge to

5    the application of the District's nondiscrimination policy, Plaintiffs for the first time alleged in

6    several causes of action that "Defendants have no compelling interest in their denial of Plaintiffs'

7    rights" and "have not shown their actions are the least restrict means of achieving that interest,"

8    an apparent attempt to bolster their facial attack. (SAC, ¶¶172, 188, 201, 215).  Similarly,

9    paragraph 158 articulates a new theory that "Defendants' application of the District's

10   nondiscrimination policy to the Student FCA Chapters violates the EAA on its face because the

11   EAA's requirement preempts state and local laws that might otherwise prevent religious groups

12   from being recognized student groups."

13   In paragraphs 140-148 and elsewhere, Plaintiffs plead facts about events during the 2020-

14   2021 school year, all arising after the filing of their FAC, in an attempt to supplement their

15   complaint.   They even go so far as to allege facts in paragraph 148 regarding District activities

16   unrelated to student clubs: "Pioneer and the District continue to violate their nondiscrimination

17   policies in ways beyond club recognition.  For example, Pioneer Promotes "Girl's Circle," a

18   school-sponsored wellness program for students who identify as female.  Girl's Circle 'addresses

19   the specialized needs of girls ages 9-18.'"   Paragraph 170 similarly refers to the District's support

20   or recognition of "other District activities and programs that deny opportunities on the basis of

21   belonging to an enumerated class," broadening their claims beyond discrimination against student

22   groups and clubs.  In addition, under the guise of pleading FCA's standing, they have greatly

23   expanded the scope of at least seven of their causes of action, by inserting allegations about

24   harassment or bullying in causes of action where previously no such allegations existed. (SAC,

25   ¶¶165, 206, 236, 246, 257, 262, 288).  A complete list of the proposed language to be stricken

26   from the SAC is set forth in the notice of motion above.

27   A motion to strike may be used to strike out "any redundant, immaterial, impertinent, or

28   scandalous matter" from a pleading.  Fed. R. Civ. P. 12(f).  A motion to strike may be joined with

DANNIS WOLIVER KELLEY
2087 ADDISON STREET, 2ND FLOOR
BERKELEY, CA  94704

24

**DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

DANNIS WOLIVER KELLEY
2087 ADDISON STREET, 2ND FLOOR
BERKELEY, CA 94704

1  a motion to dismiss.  Fed. R. Civ. P. 12(g).  The function of a Rule 12(f) motion is "to avoid the

2  expenditure of time and money that must arise from litigating spurious issues by dispensing with

3  those issues prior to trial."  *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir.

4  2010).

5       "[D]istrict courts often strike new claims, parties or factual allegations of an amended

6  complaint that are beyond the permissible scope of a court's prior order granting leave to amend."

7  *Brown v. Stroud*, 2011 WL 13312050, at *3 (N.D. Cal. Jan. 28, 2011) (internal citation omitted);

8  *Doutherd v. Montesdeoca*, 2019 WL 1315726, at *4 (E.D. Cal. 2019, Mar. 22, 2019) and cases

9  cited therein (granting motions to strike where newly added claims and allegations exceeded the

10  scope of amendment permitted by the courts' orders).  As in those cases, a simple reading of this

11  Court's January 28, 2021 order does not permit Plaintiffs to plead new factual matters or theories

12  unrelated to FCA's standing, to clean up prior allegations or causes of action, or to advance new

13  theories of liability.  Further, Plaintiffs are not permitted to go back in time and add in allegations

14  to support their facial challenge to the District's nondiscrimination policies after that challenge

15  has already been adjudicated.  Defendants therefore respectfully move this Court to strike the

16  identified portions of Plaintiffs' SAC, pursuant to Rule 12(f), as exceeding the scope of the

17  Court's dismissal order and as redundant, immaterial, and impertinent to the claims before this

18  Court.

19  **V.     CONCLUSION**

20       For the foregoing reasons, Defendants request that the Court grant this motion to dismiss

21  and this motion to strike with prejudice.

22  DATED: March 18, 2021                    DANNIS WOLIVER KELLEY

23                                           By:    /s/*Amy R. Levine*
24                                           AMY R. LEVINE
                                             Attorneys for Defendants
25                                           NANCY ALBARRAN, HERB ESPIRITU, and
                                             PETER GLASSER

26

27

28

**DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**