UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FELLOWSHIP OF CHRISTIAN ATHLETES, et al.,<br><br>   Plaintiffs,<br><br>   v.<br><br>SAN JOSE UNIFIED SCHOOL DISTRICT BOARD OF EDUCATION, et al.,<br><br>   Defendants. | Case No. 20-cv-02798-HSG (VKD)<br><br>**ORDER RE MARCH 7, 2022 DISPUTE RE PLAINTIFF'S PRIVILEGE CLAIMS**<br><br>Re: Dkt. No. 159 |

The parties ask the Court to resolve a dispute concerning plaintiffs' claim that that certain communications between an employee of plaintiff Fellowship of Christian Athletes ("FCA") and employees of defendant San Jose Unified School District ("the District") are privileged or otherwise protected and not subject to discovery. The Court held a hearing on the matter on April 5, 2022. Dkt. No. 174.

For the reasons explained below, the Court concludes that items 1, 33, 35, 38, and 42 on plaintiffs' privilege log are not privileged or protected and must be produced.

**I.   BACKGROUND**

Plaintiffs Fellowship of Christian Athletes ("FCA") and two former student members of the local chapter, Elizabeth Sinclair and Charlotte Klarke, have withheld from discovery five email communications between FCA employee Rigo Lopez and three District employees, Marc Cooper, Kristen Borup, and Scott Rudolph, all of whom are former faculty advisors to FCA clubs at high schools within the District. Dkt. No. 159 at 3, 8. Plaintiffs do not dispute that the withheld documents are responsive to defendants' discovery requests.

Plaintiffs concede that Mr. Cooper, Ms. Borup, and Mr. Rudolph were employees of the District at the time of the disputed communications. They also concede that at no time did any of

these District employees request that plaintiffs' counsel represent them, and that no such representation was ever undertaken. Plaintiffs say that they intended for the disputed communications to be confidential; however, no plaintiff entered into any confidentiality agreement (written or oral) with any of the District employees. Dkt. No. 174. According to the parties, no claims have been made by or against any of the District employees concerning their roles as former advisors to the FCA clubs, and no such claims were contemplated at the time each of them participated in the disputed communications. *Id*.

At the Court's direction (Dkt. No. 164), plaintiffs lodged the five disputed documents with the Court for in camera review: privilege log items 1, 33, 35, 38, and 42. Per the undersigned's Standing Order, the Court considers only the discovery responses at issue (Exhibit A) and the relevant privilege logs (Exhibits B-D). *See* Standing Order for Civil Cases, section 4. The Court does not consider the parties' correspondence or discovery requests and responses that are not at issue in this dispute (Exhibits E-I).

## II.     LEGAL STANDARD

### A.     Attorney-Client Privilege and Work Product Doctrine

The attorney-client privilege protects from discovery communications concerning legal advice sought from an attorney in his or her capacity as a professional legal advisor, where the communication is made in confidence, is intended to be maintained in confidence by the client, and is not disclosed to a third party. *United States v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020). The privilege extends to a client's confidential disclosures to an attorney in order to obtain legal advice, as well as an attorney's advice in response to such disclosures. *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) (citations and quotations omitted). "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *Id.*

The work product doctrine protects from discovery materials that are prepared by or for a party or its representative in anticipation of litigation. Fed. R. Civ. P. 26(b)(3). Typically, the doctrine provides qualified protection against discovery of the legal strategies and mental impressions of a party's attorney. *Upjohn Co. v. United States*, 449 U.S. 383, 390-91 (1981); *Hickman v. Taylor*, 329 U.S. 495, 508-10 (1947). A voluntary disclosure of work product waives

2

the protection where such disclosure is made to an adversary in litigation or where the disclosure is made in a manner that substantially increases the opportunities for potential adversaries to obtain the work product. *Sanmina Corp.*, 968 F.3d at 1121.

The party asserting attorney-client privilege or work product protection bears the burden of proving that the privilege or protection applies. *See Ruehle*, 583 F.3d at 607-08; *In re Appl. of Republic of Ecuador*, 280 F.R.D. 506, 514 (N.D. Cal. 2012).

### B. Common Interest Doctrine

The voluntary disclosure of a privileged or protected document or information to a third party ordinarily waives that privilege or protection. *Ruehle*, 583 F.3d at 612; *Weil v. Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 25 (9th Cir. 1981). The "common interest" or "joint defense" doctrine is an exception to ordinary waiver rules that applies when parties represented by separate counsel communicate in confidence about a matter of common legal interest, in furtherance of that common legal interest. *See In re Pac. Pictures Corp.*, 679 F.3d 1121, 1129 (9th Cir. 2012). The doctrine does not create a privilege but comes into play only if a privilege or protection already covers the material disclosed to the third party. *Id.*; *see also Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578-79 (N.D. Cal. 2007) (describing boundaries and application of common interest doctrine).

## III. DISCUSSION

According to their privilege log, plaintiffs assert that the disputed communications in items 1 and 33 are protected from disclosure by the attorney-client privilege and the work product doctrine, and that items 35, 38, and 42 are protected from disclosure only by the attorney-client privilege. *See* Dkt. No. 159-1 at 93-98. As to all five items, plaintiffs contend that the privilege or protection is not waived because the three District employees who were parties to the communications share a "common interest" with plaintiffs. *Id.*

### A. Items 35, 38, and 42

The privilege log describes items 35 and 38 as "[e]mail[s] from M[arc] Cooper to R[igo] Lopez" in which the participants are "[d]iscussing a matter of common legal interest and for purposes of seeking legal advice with expectation of confidentiality." *Id.* at 97. The privilege log

3

describes item 42 in similar terms as "[e]mails between M[arc] Cooper and R[igo] Lopez" in which the participants are "[d]iscussing legal issue where the parties hare a common interest." *Id.* at 98. These descriptions are incomplete. The Court's review of the documents lodged in camera reveals that, in each of the disputed communications, Mr. Cooper (a District employee) forwarded to Mr. Lopez a communication he received from either Jennifer Thomas (a Risk Manager for the District), Tina VanLaarhoven (the principal of Willow Glen High School), or Kasmira Brough (an attorney for the District). Plaintiffs' privilege log omits this information. However, at the hearing plaintiffs acknowledged that the District communications Mr. Cooper forwarded to Mr. Lopez are not subject to any privilege held by *plaintiffs*. Instead, plaintiffs argue that the attorney-client privilege applies to Mr. Cooper's forwarding emails to Mr. Lopez, and to the fact that he forwarded these specific District communications, because Mr. Cooper and FCA had a common legal interest, and Mr. Lopez was FCA's representative. Dkt. No. 159 at 9.

The common interest doctrine does not support this result. As noted above, the common interest doctrine does not create any privileges, but merely allows parties to avoid waiver of a privilege that *already covers* materials shared with a party outside of the attorney-client relationship. In other words, for items 35, 38, and 42 plaintiffs must show that the attorney-client privilege applies to Mr. Cooper's emails to Mr. Lopez in the first instance.

Here, Mr. Cooper sent the disputed communications to Mr. Lopez on January 15, February 10, April 7, and April 9, 2021—well after plaintiffs had filed this action against the District. The record does not support any inference that Mr. Cooper was seeking representation from Mr. Lopez (a non-lawyer and a representative of FCA, the District's litigation adversary), and even if Mr. Lopez is viewed as a conduit to lawyers representing FCA, Mr. Cooper was never an actual or prospective client of those lawyers.[1] Rather, the disputed communications reflect simply that, for whatever reason, Mr. Cooper wished to share the District's communications to him with FCA and its counsel. This does not make his communications with Mr. Lopez privileged communications of *plaintiffs*.

---

[1] Plaintiffs explain that Mr. Cooper retained private counsel who is not a participant in the disputed communications. Dkt. No. 159 at 10.

4

1  Accordingly, plaintiffs have not demonstrated that items 35, 38, and 42 on their privilege
2  log are protected from disclosure by the attorney-client privilege. These documents must be
3  produced.

### B. Item 1

The privilege log describes item 1 as "[e]mails between D[ennis] Faigal and R[igo] Lopez," copying "K[evin] Snider, K[risten] Borup, C[harlotte] Klarke, [and] E[lizabeth] Sinclair," concerning a "client communication with minor students and attorneys about and pursuant to legal advice." Dkt. No. 159-1 at 93. Plaintiffs say that this email exchange contains privileged communications and attorney work product. Because the email exchange includes multiple messages which are not separately identified on the privilege log, the Court first describes the different parts of the email exchange at issue.

The disputed email exchange occurred on April 25-26, 2019 before this action was filed. The earliest message in the exchange is an email from defendant Peter Glasser (a District employee) to Ms. Klarke and several District employees regarding a letter Mr. Glasser wrote to the editor of the Pioneer High School student newspaper. Ms. Klarke forwarded Mr. Glasser's email to Mr. Lopez with a cover email. Mr. Lopez then forwarded the entire email string to Dennis Faigal, FCA's legal counsel, seeking legal advice. Mr. Faigal replied to Mr. Lopez, providing legal advice and copying Mr. Snider, another attorney representing FCA. In the final email message, Mr. Lopez replied to Mr. Faigal and copied Ms. Klarke, Ms. Sinclair, Mr. Snider, and Ms. Borup, a District employee who was the teacher-advisor to the Pioneer High School FCA club. Plaintiffs acknowledge that Mr. Glasser's initial email is not privileged or protected from disclosure, but they contend that the email string as a whole is protected by the attorney-client privilege and the work product doctrine, and that this privilege and protection was not waived when Mr. Lopez disclosed the entire exchange to Ms. Borup.

Having reviewed the entire email exchange in camera, the Court agrees that, in the absence of a waiver, the attorney-client privilege applies to the emails exchanged between and among Mr. Lopez and FCA's counsel, Mr. Faigal and Mr. Snider. The Court is not persuaded that these communications also qualify as work product under Rule 26(b)(3). They do not appear to have

been prepared in anticipation of litigation, and plaintiffs have not made any showing suggesting that they were. Accordingly, the Court will consider only the question of whether Mr. Lopez's disclosure to Ms. Borup of his communications with FCA's counsel waived attorney-client privilege for the disputed communications, or whether there was no waiver by operation of the common interest doctrine.[2]

Defendants argue that Mr. Lopez's disclosure of the disputed communications to Ms. Borup waived any applicable privilege because Ms. Borup was outside the attorney-client relationship and an employee of the District who owed no confidentiality obligations to plaintiffs. In addition, defendants argue that Ms. Borup had no relevant legal interest in common with plaintiffs. Plaintiffs respond that they understood the communication with Ms. Borup would be confidential and that she shared "at least three common legal interests" with FCA: "(1) obtaining official recognition and fair treatment of FCA as a student club in the District; (2) remedying past discrimination against FCA and affiliated individuals; and (3) preventing further unlawful discrimination against FCA and affiliated individuals, including the FCA advisors." Dkt. No. 159 at 9.

Plaintiffs' have not shown that the common interest doctrine applies here. Ms. Borup may have been sympathetic to FCA's legal positions and arguments and even strongly supportive of its efforts to persuade the District to allow the FCA club to meet, but plaintiffs have not shown that she shared any *legal* interest with FCA or Ms. Klarke and Ms. Sinclair in April 2019 that might have been served by copying her on these communications with FCA's counsel. Specifically, Ms. Borup did not have her own legal interest in FCA obtaining recognition for a student club in the District or in remediating or preventing discrimination against FCA and its affiliates. While Ms. Borup need not have been engaged in legal action at the time, she must have had some legal interest at stake that the disputed communications were intended to further. *See Nidec*, 249 F.R.D. at 579. Plaintiffs identify no such legal interest, and defendants assert, without contradiction, that Ms. Borup advised Mr. Lopez that "she did not want to be involved in the legal matters of this

---

[2] Defendants do not contend that Mr. Lopez's disclosure of FCA's counsel's legal advice to Ms. Klarke and Ms. Sinclair waives any privilege or protection.

6

case." Dkt. No. 159 at 4 n.1.

During the hearing on this dispute, FCA suggested that all former FCA advisors, including Ms. Borup, have a legal interest in protecting their First Amendment right to freely associate with FCA clubs on campus and that this legal interest "aligns" with plaintiffs' own legal interests. This argument is not developed in the parties' joint discovery dispute submission, which nowhere refers to any advisors' First Amendment free association rights. Plaintiffs cite no authority for the proposition that District employees have a constitutional right to be advisors of FCA student clubs on a public school campus (as opposed to, for example, a constitutional right to associate with FCA as private citizens outside of the school), but more importantly, they point to no evidence that Ms. Borup or any of the other FCA teacher-advisors participated in the disputed communications as part of joint strategy to promote or preserve such a right; rather, the interest plaintiffs advocate appears to be purely hypothetical with respect to Ms. Borup and the other teacher-advisors. "[A] shared desire to see the same outcome in a legal matter is insufficient to bring a communication between two parties within [the common interest] exception. Instead, the parties must make the communication in pursuit of a joint strategy in accordance with some form of agreement—whether written or unwritten." *In re Pacific Pictures Corp.*, 679 F.3d 1121, 1129 (9th Cir. 2012) (internal citation omitted).

At the hearing, plaintiffs principally relied on *ASU Students for Life,* No. CV-06-1824-PHX-MHM, 2007 WL 272525 (D. Ariz. Sept.17, 2007), which they did not cite in the joint submission. The Court is not inclined to consider authority raised for the first time during the hearing, but in any event, this case does not support plaintiffs' position. In *ASU Students for Life*, an individual plaintiff named Christopher White, who was the director of public relations for organizational plaintiff ASU Students for Life ("ASUSL"), sought legal advice on behalf of himself and ASUSL from an in-house attorney with non-party Justice for All ("JFA") and, subsequently, from attorneys with the Alliance Defense Fund ("ADF"), which also represented JFA. The Arizona district court found "an attorney-client relationship existed between White and JFA, White and ADF, and ADF and JFA," and that "all those copied [on communications between and among them] were either other attorneys or directly involved in the display of [anti-abortion

7

messaging] on behalf either ASUSL or JFA." *ASU Students for Life*, 2007 WL 2725252, at *3-4. The court did not apply the common interest doctrine, but instead reasoned that the non-lawyers copied on the communications should be deemed within the attorney-client relationship, much like a non-employee may be considered the "functional equivalent" of an employee for purposes an employer's privileged communications. *Id.* (citing *In re Bieter Co.*, 16 F.3d 929, 939 (8th Cir. 1994)).[3]

In sum, plaintiffs have not identified any common legal interest between FCA and Ms. Borup, nor have they shown that the disputed communication was made in pursuit of a joint strategy to promote such an interest. For these reasons, the Court concludes that plaintiffs may not rely on the common interest doctrine to avoid waiver of any attorney-client privilege or work product protection that attached to the disputed communication on which Ms. Borup was copied. Item 1 on plaintiffs' privilege log must be produced.

### C. Item 33

The privilege log describes item 33 as "[e]mails between S[cott] Rudolph and R[igo] Lopez" in which the participants are "discussing attorney communications related to a matter of common legal interest." Dkt. No. 159-1 at 97. Plaintiffs say that this email exchange contains privileged communications and attorney work product. As with Ms. Borup, defendants argue that Mr. Lopez's communications with Mr. Rudolph waived any applicable privilege or protection because Mr. Rudolph was outside the attorney-client relationship and an employee of the District who owed no confidentiality obligations to plaintiffs. In addition, defendants argue that Mr. Rudolph had no relevant legal interest in common with plaintiffs.

The Court has reviewed the disputed email exchange in camera. The first email in the string is a communication dated August 3, 2020 from Reed Smith, counsel to FCA, regarding arrangements for a meeting. On August 4, 2020, Mr. Lopez forwarded Mr. Smith's

---

[3] For the first time during the hearing, plaintiffs also argued that Ms. Borup was an "agent" of Ms. Klarke and Ms. Sinclair, who were minors at the time of the disputed communications in item 1. Plaintiffs have made no showing that Ms. Borup was the students' agent or anything other than a teacher-advisor for the FCA club. *See* Dkt. No. 159 at 8. Plaintiffs do not suggest that the students asked Ms. Borup to act on their behalf or that she agreed to do so.

8

communication to Mr. Rudolph, a District employee who was formerly a teacher-advisor to an FCA club in the District. In the final email in the string, Mr. Rudolph acknowledges Mr. Lopez's communication. The privilege log does not separately describe Mr. Smith's initial communication or identify all of its recipients, and it is therefore not clear to the Court whether all of the recipients are other counsel for plaintiffs and/or clients of Mr. Smith. However, for purposes of this dispute, the Court will assume that they are and that this communication is protected by the attorney-client privilege and the work product doctrine. Accordingly, the Court will consider whether Mr. Lopez's disclosure to Mr. Rudolph of FCA's counsel's communication waived attorney-client privilege and/or attorney work product the disputed communications, or whether there was no waiver by operation of the common interest doctrine.

Plaintiffs make the same arguments with respect to item 33 that they made with respect to item 1, except that they do not argue that Mr. Rudolph was anyone's agent. They acknowledge that Mr. Rudolph was an employee of the District at the time of the disputed communication and that he was not represented by FCA's counsel. Plaintiffs say that they understood Mr. Lopez's communications with Mr. Rudolph would be confidential and that Mr. Rudolph shared the same three common legal interests with FCA that Ms. Borup and the other FCA advisors did. Dkt. No. 159 at 9. Plaintiffs offer no different or additional facts or arguments in support of their contentions with respect Mr. Rudolph and item 33. As with Ms. Borup, plaintiffs have not shown that Mr. Rudolph had any legal interest of his own in common with FCA or that the disputed communication was made in pursuit of a joint legal strategy that was intended to serve any such an interest.

For these reasons, the Court concludes that plaintiffs may not rely on the common interest doctrine to avoid waiver of any attorney-client privilege or work product protection that attached to the disputed communication that Mr. Lopez forwarded to Mr. Rudolph and that Mr. Rudolph's email exchange with Mr. Rudolph is not otherwise privileged or protected. Item 33 on plaintiffs' privilege log must be produced.

## IV. CONCLUSION

As plaintiffs have failed to show that items 1, 33, 35, 38, and 42 on their privilege log are protected from disclosure by the attorney-client privilege or the work product doctrine, these documents must be produced. Plaintiffs must produce these documents no later than **April 28, 2022**.

**IT IS SO ORDERED.**

Dated: April 21, 2022

VIRGINIA K. DEMARCHI
United States Magistrate Judge