1
2
3
4                    UNITED STATES DISTRICT COURT

5                  NORTHERN DISTRICT OF CALIFORNIA

6

7   FELLOWSHIP OF CHRISTIAN            Case No.  20-cv-02798-HSG
    ATHLETES, et al.,
8                                      **ORDER DENYING MOTION FOR**
                 Plaintiffs,           **PRELIMINARY INJUNCTION**
9
         v.                            Re: Dkt. No. 102
10
11  SAN JOSE UNIFIED SCHOOL DISTRICT
    BOARD OF EDUCATION, et al.,
12
                 Defendants.
13

14         The Fellowship of Christian Athletes ("FCA"), the Pioneer High School FCA student

15  chapter ("Pioneer FCA"), and two of its former student members (collectively "Plaintiffs") allege

16  that the San Jose Unified School District ("District") and its officials (collectively "Defendants")

17  discriminated against the FCA's religious viewpoint and unlawfully derecognized its student

18  groups.  *See* Dkt. No. 92 ("TAC").  Specifically, Plaintiffs allege that Defendants violated the

19  Equal Access Act ("EAA"), 20 U.S.C. §§ 4071 *et seq.*, the First Amendment (Establishment, Free

20  Exercise, Free Speech, and Freedom of Assembly Clauses), and the Fourteenth Amendment.

21         Now pending before the Court is Plaintiffs' motion for a preliminary injunction, briefing

22  for which is complete.  *See* Dkt. Nos. 102, 111, 115.  The Court held a hearing on this motion on

23  May 12, 2022.  *See* Dkt. No. 190.  In short, Plaintiffs seek an order directing Defendants to

24  recognize student chapters affiliated with the FCA, including Pioneer FCA, as official "Associated

25  Student Body" approved clubs.  *See* Dkt. No. 102 at ii.  After carefully considering the parties'

26  arguments, the Court **DENIES** Plaintiffs' motion for a preliminary injunction.

27  **I.     FACTUAL BACKGROUND**

28         The FCA is an international religious ministry with student groups nationwide and the

*United States District Court*
*Northern District of California*

mission "to lead every coach and athlete into a growing relationship with Jesus Christ and his Church."  TAC ¶¶ 2, 39.  As a part of its mission, the FCA has student chapters at colleges, high schools, and middle schools across the country.  *Id.* ¶ 40.  These student chapters are led by student leaders, who must be approved by the FCA.  *See id.* ¶ 117.

Although there are no membership requirements to participate in FCA-affiliated student groups, Plaintiffs represent that the FCA requires student leaders to "agree and live in accordance with [FCA's] core religious beliefs and religious standards as expressed in the Student Leadership Application" and FCA's Statement of Faith.  *Id.* ¶¶ 42, 48; *see also* TAC Ex. B (Student Leadership Application) and Ex. C at 6 (Statement of Faith).  The student leadership application explains that "Each FCA representatives [*sic*] shall affirm their agreement with FCA's Christian beliefs and shall not subscribe to or promote any religious beliefs inconsistent with these beliefs." TAC Ex. B at 3.  It also states that student leaders "shall at all times . . . endeavor to conduct themselves in a manner that affirms biblical standards of conduct in accordance with FCA's Christian beliefs.  Such conduct standards include FCA's Youth Protection Policy and Sexual Purity Statement."  TAC Ex. B at 3; *see also* TAC ¶ 125 ("FCA student leaders must agree with FCA's Sexual Purity Statement.").  FCA's Sexual Purity Statement states:

> God desires His children to lead pure lives of holiness.  The Bible teaches that the appropriate place for sexual expression is in the context of a marriage relationship.  The biblical description of marriage is one man and one woman in a lifelong commitment.
>
> While upholding God's standard of holiness, FCA strongly affirms God's love and redemptive power in the individual who chooses to follow Him.  FCA's desire is to encourage individuals to trust in Jesus and turn away from any impure lifestyle.

TAC Ex. E.[1]

Plaintiffs allege that prior to the Spring of 2019, FCA student chapters existed at District high schools Pioneer, Willow Glen, and Leland as recognized student organizations under the

---

[1] The version of the Sexual Purity Statement brought to Defendants' attention in Spring 2019 read: "God desires his children to lead pure lives of holiness.  The Bible is clear in teaching on sexual sin including sex outside of marriage and homosexual acts.  Neither heterosexual acts outside of marriage nor any homosexual act constitute an alternative lifestyle acceptable to God."  Dkt. No. 111 at 2-3.  Plaintiffs assert that this was a version of the Sexual Purity Statement "previously used by a different FCA region."  TAC ¶ 7.

United States District Court
Northern District of California

United States District Court
Northern District of California

Associated Student Body ("ASB") program.  TAC ¶¶ 9, 10; Dkt. No. 102 at 3.  Plaintiffs allege that in April 2019, a teacher at Pioneer High School posted the FCA Statement of Faith and a version of the Sexual Purity Statement on his classroom whiteboard with the statement: "I am deeply saddened that a club on Pioneer's campus asks its members to affirm these statements. How do you feel?"  TAC ¶ 60; Dkt. No. 102 at 5.  According to Plaintiffs, in or around May 2019 the District revoked ASB recognition for the FCA student groups at Pioneer, Willow Glen, and Leland high schools.  TAC ¶¶ 9, 10, 65.  Plaintiffs allege that "[t]he District justified its hostile treatment of FCA under its non-discrimination policy, saying that FCA was wrong to ask its student leaders to agree with religious beliefs the District found objectionable."  Dkt. No. 102 at 1.

The District's non-discrimination policies are described in District Board Policies 0410 and 5145.3 (collectively "Board Policies").  At the preliminary injunction hearing, Plaintiffs' counsel confirmed that the Board Policies took effect prior to April 2019 and have remained substantially unchanged since April 2019.

Board Policy 0410, titled "Nondiscrimination in District Programs and Activities," states:

> The Governing Board is committed to equal opportunity for all individuals in district programs and activities.  District programs, and activities, and practices shall be free from discrimination based on gender, gender identity and expression, race, color, religion, ancestry, national origin, immigration status, ethnic group, pregnancy, marital or parental status, physical or mental disability, sexual orientation or the perception of one or more of such characteristics.  The Board shall promote programs which ensure that any discriminatory practices are eliminated in all district activities.  Any school employee who observes an incident of discrimination, harassment, intimidation, or bullying or to whom such an incident is reported shall report the incident to the Coordinator or principal, whether or not the victim files a complaint.

Dkt. No. 102-1 at 331 ("Board Policy 0410").   Board Policy 5145.3, titled "Nondiscrimination / Harassment," states:

> All district programs and activities within a school under the jurisdiction of the superintendent of the school district shall be free from discrimination, including harassment, with respect to the actual or perceived ethnic group, religion, gender, gender identity, gender expression, color, race, ancestry, national origin, and physical or mental disability, age or sexual orientation. The Governing Board desires to provide a safe school environment that allows all students equal access to District programs and activities regardless of actual or perceived ethnicity, religion, gender, gender identity, gender expression, color, race, ancestry, nation origin, physical or mental disability, sexual orientation, or any other classification protected by law.

*Id.* at 335 ("Board Policy 5145.3").

Plaintiffs allege that in the Spring of 2020, the District created an "ASB Affirmation Form" that all ASB clubs must complete.  TAC ¶ 145; Dkt. No. 102 at 7.  The ASB Affirmation Form cites the Board Policies and reads, in relevant part:

> All ASB recognized student groups are governed by a policy of nondiscrimination. Neither the District, the ASB, nor any ASB recognized students groups shall discriminate against any student or group of students or any other person on any unlawful basis, including on the basis of gender, gender identity and or expression, race, inclusive of traits historically associated with race, including but not limited to, hair texture and protective hairstyles, such as braids, locks, and twists, color, religion, ancestry, national origin, immigration status, ethnic group, pregnancy, marital or parental status, physical or mental disability, sexual orientation, or the perception of one or more of such characteristics, or on the basis of association with a person who has or is perceived to have any of those characteristics.

TAC Ex. H.  ASB club student leaders are then required to affirm the following statements:

- We shall allow any currently enrolled student at the school to participate in, become a member of, and seek or hold leadership positions in the organization, regardless of his or her status or beliefs.

- We shall not adopt or enforce any membership, attendance, participation, or leadership criteria that excludes any student based on gender, gender identity and or expression, race, inclusive of traits historically associated with race, including but not limited to, hair texture and protective hairstyles, such as braids, locks, and twists, color, religion, ancestry, national origin, immigration status, ethnic group, pregnancy, marital or parental status, physical or mental disability, sexual orientation, based on the perception of one or more of such characteristics or based on association with a person who has or is perceived to have any of those characteristics.

- We may adopt non-discriminatory criteria regarding being a member, leader or representative of the organization, or exercising voting privileges, such as regular attendance at group meetings, participation in group events, participation in the group for a minimum period of time, or participation in orientation or training activities. Membership levels (e.g., voting versus non-voting membership) will not be based on any prohibited discriminatory criteria.

- We shall select our leaders (including officers or other representatives) by a democratic method. [AR 6145.5 (Student Organizations and Equal Access)]

- We shall comply with District and school site policies and regulations as well as all applicable laws, whether on or off campus. Failure to comply with applicable standards may result in the revocation or non-renewal of recognition, loss of privileges, student discipline, or other sanctions.

- We shall not restrict eligibility for membership, attendance, participation, or leadership to any student in violation of the District's nondiscrimination policies.

- We shall not engage in any conduct in violation of the District's anti-hazing policies.

*Id.*

According to Plaintiffs, after losing ASB recognition, Pioneer FCA became a "student interest group," meaning it meets on campus but does not receive the benefits of ASB recognition such as access to ASB bank accounts or being listed in the yearbook. Dkt. No. 102 at 6. Plaintiffs assert that the Leland and Willow Glen FCA chapters, on the other hand, "dissolved completely" after losing ASB recognition. *Id.* at 7.[2]

Plaintiffs allege that Pioneer FCA's application for ASB recognition during the 2019-2020 school year was denied. TAC ¶ 70. During the 2020-2021 school year, Plaintiffs explain, clubs did not meet in person due to the Covid-19 pandemic and all groups were granted conditional approval, including Pioneer FCA. Dkt. No. 102 at 7. Plaintiffs allege that "Pioneer FCA's leaders and members are eager to regain ASB recognition but face insurmountable barriers to receiving it *without* an injunction." Dkt. No. 115 at 15 (emphasis in original). Plaintiffs represent that school officials have said FCA chapters "with the 'same leadership requirements' as at the time of derecognition are ineligible for recognition." Dkt. No. 102 at 11. Additionally, Plaintiffs argue that they cannot apply for ASB recognition without abdicating their rights because the application involves signing the ASB Affirmation Form. *See* Dkt. No. 115 at 15. At the preliminary injunction hearing, Plaintiffs' counsel represented that Pioneer FCA continues to meet and that the group recently met on campus, albeit without the benefit of ASB recognition.

## II. LEGAL STANDARD

A preliminary injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). "A plaintiff seeking preliminary

---

[2] There is no allegation that the Leland and Willow Glen FCA Chapters could not have similarly met as a student interest group. Defendants contend that the Leland and Willow Glen FCA Chapters were permitted to meet as student interest groups, but that the groups became defunct after student leaders graduated. Dkt. No. 111 at 3-4.

5

injunctive relief must establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Id.* at 20.  Alternatively, an injunction may issue where "the likelihood of success is such that serious questions going to the merits were raised and the balance of hardships tips sharply in [the plaintiff's] favor," provided that the plaintiff can also demonstrate the other two *Winter* factors.  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–32 (9th Cir. 2011) (citation and internal quotation marks omitted).  Under either standard, Plaintiffs bear the burden of making a clear showing that they are entitled to this extraordinary remedy.  *Earth Island Inst. v. Carlton*, 626 F.3d 462, 469 (9th Cir. 2010).  The most important *Winter* factor is likelihood of success on the merits.  *See Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017).

There are two types of injunctions.  "A mandatory injunction orders a responsible party to take action, while a prohibitory injunction prohibits a party from taking action and preserves the status quo pending a final resolution on the merits."  *Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1060 (9th Cir.2014) (internal quotations and citations omitted).  Mandatory preliminary relief "goes well beyond simply maintaining the status quo" and is "particularly disfavored."  *Anderson v. U.S.*, 612 F.2d 1112, 1114 (9th Cir. 1979).  "When a mandatory preliminary injunction is requested, the district court should deny such relief unless the facts and law clearly favor the moving party."  *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994) (internal quotations and citations omitted).

## III.    ANALYSIS

Plaintiffs seek an injunction requiring Defendants to recognize student chapters affiliated with the FCA, including Pioneer FCA, as official ASB clubs.  Plaintiffs allege that the District de-recognized the FCA clubs at District high schools Pioneer, Willow Glen, and Leland in May 2019.  TAC ¶ 65.  Plaintiffs brought this case in April 2020, *see* Dkt. No. 1, at which time no FCA groups had ASB club status at any District school.  Thus, the status quo is that the District has no ASB-recognized FCA clubs, and Plaintiffs are asking to change this current state by requiring the District to extend ASB recognition to FCA groups.  Because Plaintiffs ask the Court to order

6

1    Defendants to take action, they must meet the "heightened standard" required for issuance of a

2    mandatory preliminary injunction and show that the "facts and law clearly favor" Plaintiffs.  *See*

3    *Katie A., ex rel. Ludlin v. Los Angeles Cty*, 481 F.3d 1150, 1156 (9th Cir. 2007) (citing *Stanley v.*

4    *Univ. of S. Cal.*, 13 F.3d at 1320).

5         **A.    Likelihood of Success**

6         Plaintiffs allege that the District's non-discrimination policy, and its enforcement as to

7    them, violate their rights under the Constitution and the EAA.  The District's non-discrimination

8    policy (the "Policy") is set out in Board Policies 0410 and 5145.3 and the ASB Affirmation Form.

9    It prohibits discrimination based on any "classification protected by law" including

10   "discrimination based on . . . religion . . . [or] sexual orientation."  Board Policy 0410; *see also*

11   Board Policy 5145.3 ("All district programs and activities . . . shall be free from discrimination . . .

12   with respect to the actual or perceived ethnic group, religion, gender, gender identity, gender

13   expression, color, race, ancestry, national origin, and physical or mental disability, age or sexual

14   orientation.").  As explained in the ASB Affirmation Form, ASB clubs must "allow any currently

15   enrolled student at the school to participate in, become a member of, and seek or hold leadership

16   positions in the organization, regardless of his or her status or beliefs," but the clubs can adopt

17   "non-discriminatory" membership or leadership criteria so long as the clubs do not exclude "any

18   student based on gender, gender identity . . ., race, . . . national origin, immigration status, ethnic

19   group, pregnancy, marital or parental status, physical or mental disability, [or] sexual orientation .

20   . . ."  TAC Ex. H.

21         In their motion for preliminary injunction, Plaintiffs raise arguments attacking both the

22   validity of the Policy as written and the District's practices in enforcing the Policy.  Judge Koh, to

23   whom this case was originally assigned, already dismissed with prejudice Plaintiffs' facial

24   invalidity claims.[3]  As she noted, the District's Policy, on its face, is permissible under Ninth

25   Circuit precedent, namely *Alpha Delta Chi-Delta Chapter v. Reed*, 648 F.3d 790 (9th Cir. 2011),

26   and *Truth v. Kent School Dist.*, 542 F.3d 634 (9th Cir. 2008), which ratified similar school policies

27

28   _____
     [3] On January 21, 2022, the case was reassigned to the undersigned.  *See* Dkt. No. 152.

United States District Court
Northern District of California

United States District Court
Northern District of California

1  prohibiting discrimination on the basis of enumerated classifications.  Even if Plaintiffs' claims

2  had not been dismissed with prejudice, this Court agrees that the Policy as written is constitutional

3  and does not violate the EAA.

4      Regarding the District's enforcement of the Policy, Plaintiffs fail to show that the facts and

5  law clearly favor their argument that the Policy has not been generally applied.  Contrary to

6  Plaintiffs' assertions, District officials are not formally empowered to allow clubs to discriminate

7  on the basis of religion, sexual orientation, or other protected basis.  And Plaintiffs fail to show

8  that District officials have actually given any clubs permission to discriminate in violation of the

9  Policy.

10        **i.**    **Plaintiffs Fail to Show That the Law and Facts Clearly Favor Their Argument That the Policy, as Written, Is Unconstitutional**

12          **a.**   <u>Plaintiffs Have Not Clearly Shown That the Policy Violates Their Rights to Free Speech and Freedom of Expressive Association</u>

13     "When a [school] excludes a student organization from official recognition for refusing to

14  comply with the school's nondiscrimination policy, both freedom of speech and freedom of

15  expressive association challenges are properly analyzed under the limited-public-forum doctrine."

16  *Alpha Delta*, 648 F.3d at 797 (citing *Christian Legal Society v. Martinez*, 561 U.S. 661, 679-683

17  (2010)).  The state may reserve limited public forums for certain groups and "[a]pplication of the

18  less restrictive limited-public-forum analysis better accounts for the fact that" schools, through

19  their student club programs, are "dangling the carrot of subsidy, not wielding the stick of

20  prohibition." *Christian Legal Society*, 561 U.S. at 683.  "In a limited public forum, the

21  government may impose restrictions that are 'reasonable in light of the purpose served by the

22  forum,' so long as the government does not discriminate against speech on the basis of its

23  viewpoint." *Alpha Delta*, 648 F.3d at 797 (citation omitted).  "[A] regulation that serves purposes

24  unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some

25  speakers or messages but not others." *Christian Legal Society*, 561 U.S. at 695 (citation omitted).

26     Plaintiffs' arguments that the Policy violates their First Amendment rights to free speech

27

28

and freedom of expressive association must be assessed under the limited-public-forum doctrine.[4]

First, the District's Policy, which forbids exclusion of students based on a protected characteristic, is reasonable in light of the ASB program's purpose to engender a "positive feeling going to campus" and a feeling of connectedness among students by uniting them around common interests.  *See* Dkt. No. 102-2 (Mayhew Depo. Tr.) at 35:20-36:4.[5]  In her deposition, the Activities Director at Pioneer High School described the ASB program as an opportunity for clubs "to really engage students and to have the students feel connected to school."  *Id.* at 35:20-22.  The District could reasonably determine that students cannot engage in the school community if they are prohibited from joining clubs or holding leadership positions because of their race, gender, religion, national origin, or other protected characteristic.

The second prong of the inquiry is whether the Policy is "neutral as to content and viewpoint."  *See Alpha Delta*, 648 F.3d at 802.  The Ninth Circuit found a similar non-discrimination policy content and viewpoint neutral in *Alpha Delta*.  In that case, a state university denied a Christian fraternity and sorority school recognition because the groups violated the school's non-discrimination policy, which prohibited restricting membership or eligibility to hold officer positions "on the basis of race, sex, color, age, religion, national origin, marital status,

_____

[4] Plaintiffs argue that under *Boy Scouts of America v. Dale*, 530 U.S. 640, 654 (2000), forcing Pioneer FCA "to accept as leaders students who reject FCA's religious beliefs would force FCA 'to propound a point of view contrary to its beliefs,' . . . which burdens its expression and triggers strict scrutiny." Dkt. No. 102 at 23.  The Supreme Court rejected this argument in *Christian Legal Society*. 561 U.S. at 682.  As the Court explained, where a student group is "seeking what is effectively a state subsidy, [it] faces only indirect pressure to modify its membership policy; [the student group] may exclude any person for any reason if it forgoes the benefits of official recognition." *Id.*  The Supreme Court therefore analyzed the student group's expressive association arguments under the limited-public-forum doctrine, and did not rely on expressive association cases like *Boy Scouts of America*, in which groups were compelled to include unwanted members. *Id.*

[5] In determining reasonableness, the Supreme Court in *Christian Legal Society* and the Ninth Circuit in *Alpha Delta* found it important to note that although the student groups there had been denied official recognition, they still had "alternative avenues of communication besides the forum from which they [had] been excluded." *Alpha Delta*, 463 F.3d at 799; *see also Christian Legal Society v. Martinez*, 561 U.S. 661, 691 (2010) ("But when access barriers are viewpoint neutral, our decisions have counted it significant that other available avenues for the group to exercise its First Amendment rights lessen the burden created by those barriers.").  Just like those student groups, Pioneer FCA is still allowed to meet on campus as a student interest group and can advertise through "non-university electronic resources." *See Alpha Delta*, 463 F.3d at 799; Dkt. No. 111 at 3.

sexual orientation, physical or mental handicap, ancestry, or medical condition, except as explicitly exempted under federal law." *Id.* at 796. The Court found the school's policy to be neutral because it served a purpose other than targeting speech on the basis of its content. *Id.* at 801. Instead, it served "to remove access barriers imposed against groups that have historically been excluded." *Id.* As the Court further explained, "antidiscrimination laws intended to ensure equal access to the benefits of society serve goals 'unrelated to the suppression of expression' and are neutral as to both content and viewpoint." *Id.*

Here too, the Policy is "neutral as to content and viewpoint" because it serves a purpose unrelated to the suppression of expression. *See Alpha Delta*, 648 F.3d at 802. The Board Policies existed prior to the 2019 dispute, and Plaintiffs point to no evidence that those Board Policies were implemented for the *purpose* of suppressing Plaintiffs' viewpoint. *See id.* at 801.[6] And as the Ninth Circuit noted, policies meant "to ensure that the school's resources are open to all interested students without regard to special protected classifications" are similar to the antidiscrimination laws intended to ensure equal access that the Supreme Court has concluded are viewpoint and content neutral. *Id.* (internal quotation omitted) (citing *Roberts v. U.S. Jaycees*, 468 U.S. 609, 623-24 (1984)). The fact that the Policy allows clubs to set "non-discriminatory criteria" but not criteria based on religion, sexual orientation, or other protected classifications does not mean the Policy aims at the suppression of speech. *Roberts v. U.S. Jaycees*, 468 U.S. at 623-24 (holding that a state law prohibiting discrimination on the basis of race, color, creed, religion, disability, national origin, or sex "does not aim at the suppression of speech [and] does not distinguish between prohibited and permitted activity on the basis of viewpoint").

The District's Policy is reasonable in light of the ASB program's purposes and is viewpoint and content neutral. Therefore, Plaintiffs are unlikely to prevail on their claims that the Policy, as written, violates their Free Speech and Expressive Association rights.

      b.  <u>Plaintiffs Have Not Clearly Shown That the Policy Violates Their Right to Free Exercise of Religion</u>

---

[6] The District's non-discrimination policy, in the form of Board Policies 0410 and 5145.3, existed well before April 2019, even if the ASB Affirmation Form, which cites the pre-existing policies, was not written until later.

10

United States District Court
Northern District of California

1    As the Supreme Court has explained, the right of free exercise does not relieve an

2   individual of the obligation to comply with a "valid and neutral law of general applicability on the

3   ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)."

4   *Employment Div., Dept. of Human Resources of Oregon v. Smith*, 494 U.S. 872, 879 (1990).  In

5   other words, while the government may not impose special disabilities on the basis of religious

6   views or religious status, "the Free Exercise Clause does not inhibit enforcement of otherwise

7   valid regulations of general application that incidentally burden religious conduct."  *Alpha Delta*,

8   648 F.3d at 804 (quoting *Christian Legal Society*, 561 U.S. at 697 n.27).

9    Plaintiffs have not shown that the Policy, as written, clearly violates their right to free

10   exercise of their religion.  The District's Policy applies to all ASB student clubs.  It does not

11   "impose special disabilities" on Plaintiffs or other religious groups, but instead affects those

12   groups in ways incidental to the general application of the Policy.  *See Alpha Delta*, 648 F.3d at

13   804.[7]

14    Plaintiffs urge that because the Policy allows for groups to exclude students based on

15   "secular criteria," like club attendance and competitive skill, under *Tandon v. Newsom*, 141 S. Ct.

16   1294 (2021), the Policy triggers strict scrutiny.  This argument is unpersuasive.  The Policy does

17   not treat comparable secular activity more favorably than religious exercise.  In *Alpha Delta*, the

18   Ninth Circuit examined a very similar non-discrimination policy that also barred discrimination on

19   a number of grounds, including religion, and found that the policy did not target religious belief

20   and did not impose special disabilities on religious groups.  *Alpha Delta*, 638 F.3d at 804-05; *see*

21   *also Christian Legal Society*, 561 U.S. at 693 (approving of a policy that allowed groups to

22   "condition eligibility for membership and leadership on attendance, the payment of dues, or other

23

24   ───────────────

25   [7] Plaintiffs argue that the Policy is not one of general application because it is tantamount to a
"heckler's veto."  A statute cannot "allow or disallow speech depending on the reaction of the
audience."  *Center for Bio-Ethical Reform, Inc. v. Los Angeles County Sheriff Department*, 533

26   F.3d 780, 787 (9th Cir. 2008).  However, the District's Policy does not prohibit discrimination
only if someone complains: it flatly prohibits discrimination based on any of the listed

27   characteristics.  The District also now requires *all* ASB clubs to affirm their commitment to the
District's non-discrimination policy.  *See* Dkt. No. 111 at 17.  Plaintiffs have not shown that the

28   facts and law clearly favor their argument that Defendants allow or disallow speech based on the
reaction of the audience.  *See also infra* Section III.A.iv.

United States District Court
Northern District of California

1    neutral requirements designed to ensure that students join because of their commitment to a

2    group's vitality, not its demise").

3        Plaintiffs also rely on a Second Circuit case, *Hsu v. Roslyn Union Free School Dist.*, 85

4    F.3d 839 (2d Cir. 1996), to argue that student leaders of religious student groups are critical to the

5    expression of the group's religious message, and therefore groups should be allowed to consider

6    religious views in setting criteria for those who lead the group's ministry.  However, Plaintiffs'

7    reliance on *Hsu* is unpersuasive, as the Second Circuit case was decided before *Christian Legal*

8    *Society*, a Supreme Court case, and *Alpha Delta*, a Ninth Circuit case, both of which upheld school

9    non-discrimination policies that applied to student club members and leaders.[8]

10       Because the Policy is generally applicable, Plaintiffs are unlikely to prevail on their claims

11   that the Policy violates their Free Exercise rights.

12            c.   Plaintiffs Have Not Clearly Shown That the Policy Violates Their Rights
                   Under the Equal Protection Clause

13       The Fourteenth Amendment requires that "all persons similarly situated should be treated

14   alike."  *Alpha Delta*, 648 F.3d at 804 (citation omitted).  "A showing that a group 'was singled out

15   for unequal treatment on the basis of religion' may support a valid equal protection argument."  *Id.*

16       Plaintiffs have failed to show that the Policy, as written, violates the Equal Protection

17   Clause.  The fact that the Policy prohibits discrimination on certain grounds, one of which is

18   religion, does not mean that Plaintiffs have been treated differently because of their religious

19   status.  *See id.* at 804-05.  Like the policy at issue in *Alpha Delta*, where the Ninth Circuit found

20   that the written policy did not violate the Equal Protection Clause, the Policy here is one of

21   general application, and while it incidentally burdens Plaintiffs, it does not single them out for

22   unequal treatment on the basis of religion.  *See id.*

23       ii.   **Plaintiffs Fail to Show That the Law and Facts Clearly Favor Their**
               **Argument That the Policy, as Written, Violates the EAA**

24

25   _____

26   [8] Plaintiffs also argue that "[i]nserting District officials into religious leadership decisions violates
     FCA's right to internal religious autonomy."  Dkt. No. 102 at 24.  However, the Supreme Court

27   case Plaintiffs cite concerned the autonomy of "religious institutions."  *See Our Lady of*
     *Guadalupe Sch. v. Morrissey-Berru*, 140 S.Ct. 2049 (2020).  Nothing in the record suggests that

28   the Christian athlete student-led group at Pioneer High School organized within the school's ASB
     program is a religious institution akin to a private Catholic school.

1    "Under the Equal Access Act, a public secondary school with a 'limited open forum' is

2    prohibited from discriminating against students who wish to conduct a meeting within that forum

3    on the basis of the 'religious, political, philosophical, or other content of the speech at such

4    meetings.'"  *Board of Educ. of Westside Comm. Schools v. Mergens*, 496 U.S. 226, 235 (1990)

5    (citations omitted).  "A 'limited open forum' exists whenever a public secondary school 'grants an

6    offering to or opportunity for one or more noncurriculum related student groups to meet on school

7    premises during noninstructional time.'"  *See id.* (citations omitted).  A school violates the EAA

8    when it (1) denies equal access, denies fair opportunity, or discriminates (2) based on the "content

9    of the speech" at a group's meetings.  *Truth v. Kent School Dist.*, 542 F.3d 634, 645 (9th Cir.

10   2008).  The Ninth Circuit has noted that the EAA "clearly allows exclusions that are not 'content'-

11   based."  *Id.* at 646.  A "restriction on expressive activity is content-netural if it is . . . based on a

12   non-pretextual reason divorced from the content of the message attempted to be conveyed."  *Id.* at

13   645-46 (citation omitted).[9]

14          Here, Defendants do not contest that the EAA applies to District high schools, but argue

15   that the Policy is content-neutral.  Given the Policy's similarity to the policy at issue in *Truth*, the

16   Court agrees with Defendants.  In *Truth*, a high school declined to recognize a Bible study group

17   because the group's requirement that members be Christian violated the school's non-

18   discrimination policy, which required that equal opportunity and treatment be provided to all

19   students "without regard to race, creed, color, national origin, sex, marital status, previous arrest, .

20   . . incarceration, or . . . disabilities."  *Id.* at 639.  The Ninth Circuit held that the high school's non-

21   discrimination policy was content-neutral, and thus did not violate the EAA, because the policy

22   did not "preclude or discriminate against religious speech," but rather proscribed discriminatory

23   conduct.  *Id.* at 645-46.

24

25   [9] Plaintiffs argue that content neutrality for purposes of the EAA cannot be measured using First
26   Amendment precedent, but they ignore that the Ninth Circuit in *Truth* relied on First Amendment
     cases to guide its analysis because "[c]ontent neutrality for purposes of the Equal Access Act is
27   identical to content neutrality for First Amendment claims."  *Alpha Delta*, 648 F.3d at 802 n.5.  As
     the Ninth Circuit explained, both lines of cases inform content and viewpoint neutrality analysis
28   "because the Equal Access Act, like the First Amendment, forbids 'denial of equal access, or fair
     opportunity, or discrimination' based on the content (or viewpoint) of a group's speech."  *See id.*

United States District Court
Northern District of California

United States District Court
Northern District of California

Although *Truth* dealt with membership restrictions and this case concerns alleged leadership restrictions, the District's Policy is content-neutral because it does not preclude religious speech but rather prohibits acts of discrimination. *See* TAC Ex. H ("Neither the District, the ASB, nor any ASB recognized student groups shall discriminate . . ."). The Policy also has a "non-pretextual" purpose divorced from the content of the message attempted to be conveyed: "The Governing Board desires to provide a safe school environment that allows all students equal access to District programs and activities regardless of actual or perceived ethnicity, religion, gender, gender identity, gender expression, color, race, ancestry, nation origin, physical or mental disability, sexual orientation, or any other classification protected by law." Board Policy 5145.3.

Given the clear Ninth Circuit precedent, Plaintiffs are unlikely to prevail on their claim that the Policy, as written, violates the EAA.

### iii.   Plaintiffs Fail to Show That the Law and Facts Clearly Favor Their Argument That the Policy Allows For Discretionary Exceptions

Plaintiffs also argue that the Policy impermissibly gives the District the power to grant exemptions. Where policies have a "formal mechanism for granting exceptions," it "renders [the] policy not generally applicable, regardless [of] whether any exceptions have been given." *Fulton v. City of Philadelphia, Pennsylvania*, 141 S.Ct. 1868, 1879 (2021). For example, in *Fulton*, a city's contract with foster care agencies did not allow the agencies to reject foster parents based on their sexual orientation "unless an exception is granted by the Commissioner." *Id.* at 1878. The Supreme Court found that the non-discrimination requirement in the contract was not generally applicable because it included "a formal system of entirely discretionary exceptions." *Id.* at 1878. This formal mechanism for granting exceptions invited "the government to decide which reasons for not complying with the policy [were] worthy of solicitude," and therefore the policy was not neutral and generally applicable. *See id.* at 1879.

Plaintiffs rely on *Fulton* to argue that the District's Policy impermissibly allows District officials to decide whether and how student clubs can discriminate. Given the text of the Board Policies and the ASB Affirmation Form, Plaintiffs are unlikely to succeed on this argument. The Board Policies prohibit discrimination with respect to a student's "actual or perceived ethnic

14

United States District Court
Northern District of California

group, religion, gender, gender identity, gender expression, color, race, ancestry, national origin, and physical or mental disability, age or sexual orientation."  Board Policy 5145.3; *see also* Board Policy 0410.  Neither Board Policy reserves for the District the power to allow exceptions.  The ASB Affirmation Form says that no ASB group "shall discriminate against any student or group of students or any other person on any unlawful basis" and repeats the list of protected classifications.  TAC Ex. H.  According to the ASB Affirmation Form, student groups "may adopt non-discriminatory criteria," but in no way does the Form suggest that a District official may allow groups to discriminate based on a protected characteristic.  *See id.*  Unlike the policy in *Fulton*, which allowed officials to grant exceptions to allow discrimination based on sexual orientation, the Policy here does not say that the District can grant exceptions allowing an ASB club to discriminate based on religion, sexual orientation, or any of the other protected characteristics.

Plaintiffs argue that allowing student groups to adopt "non-discriminatory criteria" gives District officials an impermissible degree of discretion.  A plain reading of the Board Policies and the ASB Affirmation Form, however, shows that discriminatory criteria are enumerated in the list of protected characteristics, so non-discriminatory criteria must be criteria not based on those characteristics.  Requiring District officials to enforce a mandate not to allow discrimination based on race, gender, religion, sexual orientation, or other unlawful basis is not unfettered discretion.

For these reasons, Plaintiffs have failed to clearly show that the Policy creates a formal mechanism for granting exceptions as discussed in *Fulton*.

### iv. Plaintiffs Fail to Show That the Law and Facts Clearly Favor Their Argument That the Policy Has Been Selectively Enforced in Violation of the Constitution and EAA

In both *Alpha Delta* and *Truth*, the Ninth Circuit remanded on the factual question of whether the defendants in practice allowed certain groups to operate in violation of the non-discrimination policies.  *Alpha Delta*, 648 F.3d at 803-804; *Truth*, 542 F.3d at 648.  The Ninth Circuit reasoned that enforcing the non-discrimination policy against some groups but not others raises a question as to whether the religious group was refused an exemption because of its religious viewpoint.  *Alpha Delta*, 648 F.3d at 804; *Truth* 542 F.3d at 648 ("If indeed the District

United States District Court
Northern District of California

1   has a policy of enforcing the non-discrimination policy only against religious groups, this policy

2   would of course violate the [EAA].")  Further fact development was necessary because "it [was]

3   possible that [the other] groups were approved inadvertently because of administrative oversight,

4   or that [the other] groups have, despite the language in their applications, agreed to abide by the

5   nondiscrimination policy." *Alpha Delta*, 648 F.3d at 804.

6          Here, Plaintiffs similarly argue that Defendants have, in practice, selectively enforced the

7   Policy, allowing some clubs to discriminate while strictly enforcing the Policy as to others.[10]

8   Importantly, the question here is whether Defendants have granted some groups *exemptions* to the

9   Policy, or, in other words, whether Defendants have allowed other student groups to act in

10  violation of the Policy.  The District's interactions with a number of the student groups Plaintiffs

11  cite as proof of unequal treatment did not involve any "exemptions" to the Policy, as those groups'

12  membership and leadership criteria do not use impermissible "discriminatory criteria" as defined

13  by the Policy.  For example, Plaintiffs object that the National Honor Society requires members to

14  have a minimum GPA and can disqualify applicants who are "unworthy citizen[s]."  Dkt. No. 115

15  at 8.  However, neither of those criteria are disallowed under the Board Policies or precluded by

16  the ASB Affirmation Form.  On the other hand, requiring leaders to swear that their religious

17  beliefs are the same as those described in the FCA's Statement of Faith and further requiring them

18  to comply with the Sexual Purity Statement that says sex can only occur between a married man

19  and woman does violate the Policy's prohibition on "leadership criteria that excludes any student

20  based on . . . religion . . . [or] sexual orientation."  *See* TAC Ex. H.

21         That said, Plaintiffs also allege that the District "has approved numerous student group

22

23  [10] The Court limits its analysis to student groups seeking ASB recognition, as those are the groups

24  similarly situated to Plaintiffs.  Plaintiffs argue that the school has improperly restricted their
    speech and religious exercise rights within the limited public forum and limited open forum

25  created by the school.  District programs, such as school sports teams, are not "student groups"
    that are a part of the limited public forum or that trigger the EAA.  *See* 20 USC § 4071(c) ("A

26  public secondary school has a limited open forum whenever such school grants an offering to or
    opportunity for one or more noncurriculum related *student groups* to meet on school premises

27  during noninstructional time.") (emphasis added); *see also* Cal. Code Regs. tit. 5, § 4910
    (California state regulation regarding nondiscrimination in schools that distinguishes between

28  clubs, defined as a "group of students which meets on school property and which is student
    initiated, student operated and not sponsored by the educational institution," and extracurricular
    activities, defined as "an activity that is sponsored" by the district).

United States District Court
Northern District of California

1   applications that discriminate on one or more of the criteria listed in its non-discrimination

2   policy." Dkt. No. 102 at 4.  As examples, Plaintiffs allege that the Girls Who Code club, the Big

3   Sister/Little Sister club, the Girls Circle club, and the Simone club "have been allowed to select

4   members and leaders based on sex." *Id.* at 4, 17.  But the evidence regarding these examples does

5   not support Plaintiffs' argument.  In her deposition, the Activities Director for Pioneer High

6   School said that Girls Who Code could limit their membership to students who identify as female,

7   but an email from a Girls Who Code organization manager to the Associate Superintendent of the

8   District says that "GWC strives to close the gender gap; however all interested students may

9   participate." *See* Dkt. No. 102-2 (Mayhew Depo. Tr.) at 35:20-36:4; Dkt. No. 102-5 (Blomberg

10  Decl.) Ex. GG.  Moreover, Defendants say that male students do participate in and lead Girls Who

11  Code.  *See* Dkt. No. 111 at 14; Dkt. No. 111-1 (Mayhew Decl.) ¶ 25; Dkt. No. 111-4 (Glasser

12  Depo. Tr.) at 182:8-183:2.  In his deposition, Principal Espiritu said that if a male student wanted

13  to join the Big Sister/Little Sister club, the group would need "to be inclusive and consider it."

14  Dkt. No. 102-1 (Expiritu Depo. Tr.) at 135:6-9.  The District also represents that neither the Girls

15  Circle nor the "Simone Club" were approved as ASB clubs.  The Girls Circle is a school

16  counseling group run by school staff, and the District says it has no record of a Simone Club ever

17  applying for ASB recognition. Dkt. No. 111 at 14, 20 n.11; Dkt. No. 111-1 (Mayhew Decl.) ¶¶

18  26, 31.  These examples do not show that the District has, in the past, knowingly allowed ASB

19  clubs to violate the Policy.

20         And even if Plaintiffs were able to show clear past selective enforcement, the District

21  represents that it has implemented new procedures to ensure Policy compliance.  *See id.* at 17.  As

22  Plaintiffs' supplement to the record shows, ASB clubs are now adopting constitutions based on a

23  San Jose Unified School District template.  *See* Dkt. No. 177-3.[11]  The new club constitutions

---

[11] The Court **GRANTS** Plaintiffs' Administrative Motion for Leave to Supplement the
Preliminary Injunction Record, filed as docket number 177.  Defendants agree that these materials
were not available when the preliminary injunction motion was originally filed and briefed.  Dkt.
No. 178 at 2.  The Court finds that these materials are relevant and properly considered as part of
the motion for preliminary injunction record.  *Herb Reed Enterprises, LLC v. Florida
Entertainment Management*, 736 F.3d 1239, 1250 n.5 (9th Cir. 2013) (explaining that "the rules of
evidence do not apply strictly to preliminary injunction proceedings" and that it is "within the
discretion of the district court to accept . . . hearsay for purposes of deciding whether to issue the

include verbiage similar to the ASB Affirmation Form, including:

> "The club shall not discriminate against any student or group of students or any other person on any unlawful basis, including on the basis of gender, gender identity and/or expression, race, . . . . color, religion, ancestry, national origin, immigration status, ethnic group, pregnancy, marital or parental status, physical or mental disability, sexual orientation, or the perception of one or more of such characteristics . . . ."

*Id.* at 17. The form language also states that "[t]he club shall not adopt or enforce any membership, attendance, participation, or leadership criteria that excludes any student on any of the foregoing grounds." *See id.*

The 2021-2022 school year applications Plaintiffs offer as proof of selective enforcement also fail to demonstrate that the District enforces the Policy as to some student groups but not others. The club constitution for Senior Women, which includes the above-described non-discrimination provisions, says that its members are "students who are seniors who identify as female," but it also says that "[a]ny currently enrolled student in the School shall be eligible for membership." Dkt. No. 177-3 at 67. While there is arguably some tension in these statements, on the current record there is not clear proof that the District allows the club to violate the Policy. Similarly, while a spreadsheet produced by Defendants and submitted by Plaintiffs says the proposed South Asian Heritage club "will prioritize south asian acceptance," it also says the group will have "[n]o cap on members" and it is "fine with non south asians joining." Dkt. No. 177-3 at 13. None of the statements that Plaintiffs highlight are clear evidence that any club discriminates in violation of the Policy. As the Ninth Circuit noted in *Alpha Delta*, evidence that groups were "approved inadvertently because of administrative oversight" or "have, despite the language in their applications, agreed to abide by the nondiscrimination policy," does not necessarily establish that a school refused to grant an exception because of a group's religious viewpoint. *See Alpha Delta*, 648 F.3d at 803-04.

And across the board, the District requires all ASB clubs to confirm their commitment to

---

preliminary injunction") (citation omitted). The Court also **OVERRULES** Defendants' evidentiary objections, docket number 112, to exhibits included in Plaintiff's Motion for Preliminary Injunction, docket number 102, because the materials are relevant and properly considered as part of the motion for preliminary injunction record. *See id.* Plaintiffs' Motion to Strike, docket number 114, is **TERMINATED AS MOOT**.

United States District Court
Northern District of California

the non-discrimination policy.  There is no indication in the record that any club other than Pioneer FCA has refused to sign the ASB Affirmation Form.  *See* Dkt. No. 115 at 15.  This is another way that Plaintiffs fail to show that like entities are being treated differently.

In summary, Plaintiffs have failed to meet their burden to show that the facts and law clearly favor their position that the District in practice selectively enforces the Policy.

### B.   Irreparable Injury

The Supreme Court has stated that "[t]he loss of First Amendment freedoms, for even minimal periods of time unquestionably constitutes irreparable injury."  *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see also CTIA – The Wireless Association v. City of Berkeley, California*, 928 F.3d 832, 851 (9th Cir. 2019) ("[A] party seeking preliminary injunctive relief in a First Amendment context can establish irreparable injury . . . by demonstrating the existence of a colorable First Amendment claim." (citation omitted)).  Building on this logic, other courts have similarly found that violations of the Equal Access Act inflict irreparable injury because the Act protects "expressive liberties."  *Colin ex rel. Colin v. Orange Unified School Dist.*, 83 F. Supp. 2d 1135, 1149 (C.D. Cal. 2000); *see also Hsu v. Roslyn Union Free School Dist.*, 85 F.3d 839, 872 (2d. Cir. 1996).

Plaintiffs argue that the Policy, as written, and the District's uneven enforcement of the Policy violates their rights, thereby causing them injury.  FCA chapters within the District can meet and hold events on campus, which Pioneer FCA has done.  *See* Dkt. No. 111 at 3.  However, they do not have ASB recognition, which carries with it various benefits such as being listed in the yearbook, and, if the District is found to have violated the Constitution and the EAA, the denial of ASB recognition can amount to an injury.  *See Board of Educ. of the Westside Comm. Schools v. Mergens, et al.*, 496 U.S. 226, 246-47 (1990) (holding that refusing to recognize a Christian club denied the club "equal access" under the Equal Access Act and noting that "[o]fficial recognition allows student clubs to be a part of the student activities program and carries with it access" to various publication systems); *Elrod v. Burns*, 427 U.S. 347, 373 (1976).  If, as Plaintiffs assert, the Policy as written violates their rights or they are being singled out because of the religious content of their speech, that would constitute an injury based on the deprivation of their "expressive

19

liberties" as protected by the Constitution and the EAA.

### C.    Balance of Equities and Public Interest

When the government is a party to a case, the balance of equities and the public interest factors merge.  *Drake Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).  Here, both sides assert important interests.  Plaintiffs argue that because they have raised First Amendment questions, the balance of hardships and public interest are in their favor.  *See American Beverage Ass'n v. City and Cty of San Francisco*, 916 F.3d 749, 758 (9th Cir. 2019) ("The fact that the plaintiffs have raised serious First Amendment questions compels a finding that there exists the potential for irreparable injury, or that at the very least the balance of hardships tips sharply in [the plaintiffs'] favor." (citation and internal quotation marks omitted)).

Defendants, on the other hand, argue that the balance of equities and public interest does not weigh in Plaintiffs' favor because "[e]xempting Pioneer FCA from the Policy would unfairly shift the burden and stigma of discrimination to other students."  Dkt. No. 111 at 24.  As the Supreme Court explained in *Christian Legal Society*:

> "Exclusion, after all, has two sides.  [The school], caught in the crossfire between a group's desire to exclude and students' demand for equal access, may reasonably draw a line in the sand permitting *all* organizations to express what they wish but *no* group to discriminate in membership."

561 U.S. at 694.  In adopting its non-discrimination policy, the District had to weigh the interests of students who seek to exclude, the interests of students who face exclusion in the absence of a non-discrimination policy, and the educational costs and benefits of striking a particular balance between them.

The balance between these competing, and weighty, interests does not tip so sharply in Plaintiffs' favor so as to justify a mandatory preliminary injunction.

## IV.    CONCLUSION

The Court **DENIES** Plaintiffs' motion for a preliminary injunction.  Because the Court **OVERRULES** Dkt. No. 112, Defendants' evidentiary objections, it **TERMINATES AS MOOT** Dkt. No. 114, Plaintiffs' motion to strike.  The Court also **DENIES** Dkt. No. 119, Defendants' administrative motion to file supplemental declarations and evidence in support of its opposition

United States District Court
Northern District of California

United States District Court
Northern District of California

to Plaintiffs' motion for a preliminary injunction; Dkt. No. 125, Plaintiffs' motion for leave to supplement the preliminary injunction record; and Dkt. No. 192, Plaintiffs' administrative motion for leave to supplement the preliminary injunction record.  The Court **GRANTS** Dkt. No. 177, Plaintiffs' administrative motion for leave to supplement the preliminary injunction record.

**IT IS SO ORDERED.**

Dated:  6/1/2022

HAYWOOD S. GILLIAM, JR.
United States District Judge